IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD C. JEFFERSON,         )<br>                              )<br>           Plaintiff,         )<br>                              )<br>      V.                      )<br>                              )<br>Superintendent WILLIAM WOLFE; )<br>SECRETARY JEFFREY A. BEARD;   )<br>GLENN McQUOWN; PATRICIA       )<br>GAMBLE; MICHAEL SNYDER;       )<br>PATRICIA McKISSOCK; UNIT      )<br>MANAGER TIMOTHY HAMETZ;       )<br>CHIEF GRIEVANCE CORD. THOMAS  )<br>L. JAMES; SHARON M. BURKS;    )<br>BARRY LOBDELL; C.O. CLEMENT;  )<br>IVORY BARNETT; ZACHARY        )<br>MOSLAK,                       )<br>                              )<br>           Defendants.        ) | Civil Action No. 04-044E<br><br>Judge Sean J. McLaughlin<br>Mag. Judge Susan Paradise Baxter<br><br><br><br><br><br>Electronically filed |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT**

**I. STATEMENT OF THE CASE**

Plaintiff, Leonard C. Jefferson, inmate number CL-4135, is a pro se prisoner currently in the custody of the Pennsylvania Department of Corrections (DOC) in the State Correctional Institution at Albion (SCI-Albion). Plaintiff brings the instant action pursuant to 42 U.S.C. §1983, against several individuals employed by the DOC: William Wolfe, Jeffrey A. Beard, Glenn McQuown, Patricia Gamble, Michael Snyder, Patricia McKissock, Timothy Hametz, Thomas L. James, Sharon M. Burks, Barry Lobdell, C.O. Clement, Ivory Barnett, and Zachary Moslak.

Plaintiff raises these claims pursuant to the First and Fourteenth Amendments of the United States Constitution. (*See* Third Amended Complaint, at III). With regard to the First

Amendment claims, Plaintiff contends that his First Amendment right to free speech was violated when he was fired from his prison job, and later issued false misconduct reports, in retaliation for writing two poems (*id*., at ¶¶ 1-19; 23; 35; 41; 55-59); that his First Amendment right to the free exercise of religion was violated by the enforcement of the DOC's prescriptive programs policy (*id*., at ¶¶ 24-32); and that the DOC violated the religious anti-establishment clause of the First Amendment by the promulgation and enforcement of said policy (*id*., at ¶¶ 24-32).

With regard to Plaintiff's Fourteenth Amendment claims, Plaintiff contends that he was issued a false misconduct report, which led to a raise in his custody level and corresponding unit transfer, in violation of the due process and equal protection clauses. *Id*., at ¶¶ 33-49).

Upon motion dated February 17, 2004, Plaintiff was granted permission to proceed *in forma pauperis* status, and filed his original Complaint on February 25, 2004. (*See* Docket # 1-3). With defendants' first Motion to Dismiss still pending (*see* Doc. # 13; 14), Plaintiff moved on November 19, 2004 to amend his complaint. (*See* Doc. #17). Permission to so amend was granted by Order of Court dated December 6, 2004, thereby mooting defendants' first Motion to Dismiss. (*See* Doc. #21).

Just two weeks later, on December 21, 2004, Plaintiff moved to amend his complaint a second time. (*See* Doc. #23). Defendants filed a Second Motion to dismiss with supporting brief on January 10, 2005 in response to Plaintiff's First Amended Complaint (*see* Doc. # 26; 27), and filed a Third Motion to dismiss with supporting brief on January 24, 2005 with regard to Plaintiff's Second Amended Complaint (*see* Doc. # 30; 31). With defendants' motions still pending, Plaintiff moved, and was granted, permission to amend his claims for the time (*see*

2

Doc. #38), submitting his Third Amended Complaint on March 30, 2005 (*see* Doc. #39). The instant motion is in filed in response to Plaintiff's Third Amended Complaint[1].

## II. STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. Rule 12(b)(6), a motion to dismiss cannot be granted unless the court is satisfied that "no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976).

## III. ARGUMENT

**A.   Plaintiff's First Amendment free exercise, religious anti-establishment clause, and 2002 retaliatory misconduct claims are barred by the applicable statute of limitations.**

"In actions under 42 U.S.C. §1983, federal courts apply the state's statute of limitations for personal injury." Sameric Corporation of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998). Pennsylvania's statute of limitations for personal injury is two years, thus

---

[1] Interestingly, Plaintiff's third amendment to his claims has actually shortened the length of Plaintiff's complaint. Plaintiff's original Complaint was comprised of paragraphs 1-49. (*See* Doc. #3). By his First Amended Complaint, Plaintiff incorporated paragraphs 1-49, and added paragraphs 50-60. (*See* Doc. #17). Similarly, in his Second Amended Complaint, Plaintiff incorporated paragraphs 1-60, and added paragraphs 61-87. (*See* Doc. #23). Plaintiff's Third Amended Complaint has broken with this pattern. In his Third Amended Complaint, Plaintiff incorporates paragraphs 1-60, slightly adjusting the language of two paragraphs, and omits paragraphs 61-87. (*See* Doc. #39). As such, the instant motion addresses Plaintiff's claims, as set forth in paragraphs 1-60 of his Third Amended Complaint.

the applicable statute of limitations for §1983 claims in Pennsylvania is two years. *See* Sameric, 142 F.3d at 599.

"A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which the action is based." Moiles v. Marple Newtown School District, 2002 U.S.Dist.LEXIS 15769, *9-10 (E.D.Pa. 2002). In determining the date upon which a prisoner's pleading is filed, Pennsylvania applies the prison mailbox rule. *See* Commonwealth v. Castro, 766 A.2d 1283 (Pa.Super. 2001). Under the prison mailbox rule, the "date of delivery of [the pleading] by the [inmate] to the proper prison authority or to a prison mailbox is considered the date of filing of the petition." Castro, 766 A.2d at 1287, *citing* Commonwealth v. Little, 716 A.2d 1287 (Pa.Super. 1998).

In the instant case, Plaintiff's original Complaint was dated February 11, 2004, and was officially filed by the Court on February 25, 2004. (*See* Doc. #3). Even if February 11, 2004 is used as the official filing date, giving Plaintiff the benefit of the doubt in light of the prison mailbox rule, all claims accruing prior to February 12, 2002 would be barred by the applicable two year statute of limitations. Indeed, given these facts, several of Plaintiff's claims are time-barred.

Plaintiff contends that the basis for his First Amendment free exercise and religious anti-establishment clause claims was a conversation he had with defendant Gamble in December, 2001. (*See* Third Amended Complaint, at ¶30). Given the February 12, 2002 statute of limitations cut-off described above, these claims are time-barred and should be dismissed accordingly.

As discussed briefly in section I above, Plaintiff raises numerous retaliation claims. *Id*., at ¶¶ 23; 35; 41; 55-59. One such claim relates to an allegedly false misconduct issued to

4

Plaintiff by defendant Clement in retaliation for Plaintiff's poetry writing. *Id*., at ¶¶ 35; 41. Plaintiff states that this allegedly false misconduct was issued to him "in February, 2002," but does not specify a particular date. *Id*., at ¶33. To the extent that this allegedly retaliatory misconduct report was issued to Plaintiff prior to February 12, 2002, Plaintiff's claims in relation thereto are also barred by the applicable statute of limitations.

Finally, although seemingly not the real bases for Plaintiff's instant claims, Plaintiff repeatedly makes reference to dates far before February 12, 2002. For example, noting that he had good job performance evaluations from November 12, 2000 to October 24, 2002 (*id*., at ¶1); that he had been on a particular medication regimen since July, 1994 (*id*., at ¶36); that he had been on "Honor Block" since August 22, 2000 (*id*., at ¶38); and that he had grieved a job reassignment in September, 2000 (*id*., at ¶39). To extent that Plaintiff attempts to assert a constitutional claim vis-à-vis this running commentary, Plaintiff is time-barred.

In sum, all claims raised by Plaintiff that accrued prior to February 12, 2002 – including, in particular, Plaintiff's First Amendment free exercise and religious anti-establishment clause claims and 2002 retaliatory misconduct report claim – are barred by the applicable two-year statute of limitations and should therefore be dismissed.

**B.  Plaintiff has failed to state a cognizable First Amendment religious anti-establishment clause claim upon which relief can be granted. [2]**

Plaintiff contends that, by providing prescriptive programs such as Alcoholics Anonymous and Narcotics Anonymous, and encouraging inmate participation therein, the DOC has violated the First Amendment religious anti-establishment clause. (*See* Third Amended

---

[2] Arguments B, C, and D are made in the alternative to the statute of limitations argument set forth in section A, above.

5

Complaint, at ¶¶ 24-32). Plaintiff's claims in this regard are confusingly articulated, and without merit.

Aside from the blanket assertion that the DOC prescriptive programs amount to the creation of a state-sponsored religion, Plaintiff makes no effort to explain the basis of this claim. *Id*., at ¶¶ 24-32. Even when viewed in the light most favorable to Plaintiff, as is required at the motion to dismiss stage, this conclusory allegation need not be considered by the Court. *See* Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997) (the court is not "required to accept as true unsupported conclusions and unwarranted inferences."). *See also* Violanti v. Emery Worldwide, 847 F.Supp. 1251, 1255 (M.D.Pa. 1994) ("conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true.").

Plaintiff's First Amendment religious anti-establishment clause claim is also facially without merit, as discussed below in conjunction with his free exercise claim, and, in any event, should be dismissed.

### C.  Plaintiff has failed to state a cognizable First Amendment free exercise claim upon which relief can be granted.

Plaintiff asserts that the establishment of a state-sponsored religion, through the DOC's promulgation of prescriptive programs, as described above, has unlawfully infringed upon his right to freely exercise his own Muslim religion. (*See* Third Amended Complaint, at ¶¶ 24-32). The basis of this contention is Plaintiff's belief that his non-participation in these prescriptive programs has resulted in the elevation of his security level and has otherwise been looked upon unfavorably by the DOC. *Id*. Though meritless, Plaintiff's assertions are not unique.

A very similar case, Searcy v. Simmons, 299 F.3d 1220 (10th Cir. 2002), was decided by the Tenth Circuit. In that case, Searcy, the *pro se* prisoner-plaintiff, refused to participate in a

6

prescriptive sex offender program because participation was predicated on the participant's admission of guilt. *See* Searcy, 299 F.3d at 1227-29. Individuals who refused to participate in the program were denied good time credits. *Id.* Searcy argued that, in his case, admission of guilt would violate his religious prohibition against lying. *Id.* Just as in the instant case, Searcy argued that the sex offender program was therefore violative of the free exercise and establishment clauses of the First Amendment. *Id.*

The Tenth Circuit court held that the prescriptive sex offender program did not violate either provision of the First Amendment because, despite the denial of good time credits if an inmate refused to participate, the program was voluntary. *Id.* The court then turned to the reasonableness test articulated by the Supreme Court in Turner v. Safely, 482 U.S. 78 (1987) to resolve the parameters of its determination. *Id.*

In proceeding, as the Tenth Circuit did in Searcy, it is important to note that prisoners have a First Amendment right to practice their religion while incarcerated, but that right is not absolute. *See* Bell v. Wolfish, 441 U.S. 520, 544 (1979); O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safely, 482 U.S. 78 (1987). "The mere assertion of a religious belief [by a prisoner] does not automatically trigger First Amendment protections... [o]nly those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." Dehart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000); Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981) ("A court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature...").

One permissible curtailment on religions is when it threatens the "order and security" of the institution. *See* Fraise v. Terhune, 283 F.3d 506, 516 (3d Cir. 2002). This is because "the very object of imprisonment is confinement." Overton v. Bazzetta, 123 S.Ct. 2162, 2167 (2003).

7

Hence, "a lawfully incarcerated inmate can have his right [to free exercise] limited or withdrawn (Price v. Johnston, 334 U.S. 266, 285 (1948)) due to both his incarceration and 'valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security.'" Hammer v. King, 1990 U.S.Dist.LEXIS 10481, *14 (E.D.Wa. 1990), *quoting* O'Lone, 482 U.S. at 348.

When a prisoner alleges the violation of his First Amendment right to free exercise of religion, the application of a 'reasonableness' test is triggered to balance those asserted rights with the institution's penological objectives. *See* Turner, *supra.* This 'reasonableness' test was set forth by the Supreme Court in Turner as requiring a four part analysis: (1) whether there is a legitimate rational connection between the prison regulation and the government interest; (2) whether the prisoners have alternative means of exercising the constitutional right in question; (3) the impact that accommodation of the constitution right would have on other prisoners, guards, and prison resources in general, and (4) the availability of alternatives to the regulation. *See* Turner, 482 U.S. at 89-90.

Most recently, in Sutton v. Rasheed, 323 F.3d 236 (3d Cir. 2003), the Third Circuit applied the Turner test as described above. In reference to the first Turner prong, the Sutton court said that the Third Circuit "accord[s] great deference to the judgments of prison officials 'charged with the formidable task of running a prison.'" Sutton, 323 F.3d at 235, *quoting* O'Lone, 482 U.S. at 353. The Third Circuit interpretation of prong one requires this Honorable Court to "determine whether the government objectives underlying the regulations at issue are

8

legitimate and neutral, and that the regulations are rationally related to that objective." Sutton, 232 F.3d at 253, *quoting* Thornburgh v. Abbott, 490 U.S. 401, 414-15 (1989).[3]

The Third Circuit has interpreted the second prong of the Turner test to require an assessment of "whether the inmates retain alternative means of exercising the circumscribed right." Sutton, 323 F.3d at 254, *quoting* Fraise, 283 F.3d at 518. In the context of free exercise cases, the Third Circuit has focused this consideration on "whether the inmate has alternative means of practicing his or her religion generally, not whether [the] inmate has alternative means of engaging in [any] particular practice." DeHart v. Horn, 227 F.3d 47, 55 (3d Cir. 2000). *See also* Sutton, 323 F.3d at 255.

When applied to the instant case, the first two prongs of the Turner test favor Defendants. As a matter of law, the rehabilitative purposes by the DOC's prescriptive programs advance valid penological objectives. *See* Hammer, 1990 U.S.Dist.LEXIS 10481, *14 (E.D.Wa. 1990), *quoting* O'Lone, 482 U.S. at 348. Moreover, Plaintiff has failed to establish how the provision of these programs has curtailed his ability to practice his purported Islamic faith. In fact, very much to the contrary, Plaintiff provides an extensive list of religious programs offered by the DOC expressly for its Muslim inmates. (*See* Third Amended Complaint, at ¶26). Plaintiff does not contend that he was prevented from participating in these programs whatsoever. *Id*.

---

[3] In light of the first Turner prong, it is also important to note that the DOC does not have a policy designed to forbid an inmate from practicing his religion. In fact, "the Administrative Directive, DC-ADM 819 provides that its purpose is to administer policy which 'shall permit each inmate to satisfy the needs of his religious life consistent with the security needs and orderly administration of the institution.'" Sunni Community v. Larkins, 1990 U.S.Dist.LEXIS 10616, *5 (M.D.Pa. 1990). Perhaps more to the point, Plaintiff admits that Muslim inmates, like himself, were provided access to a long list of faith-specific religious services at SCI-Albion. (*See* Third Amended Complaint, at ¶26).

9

Application of the final two prongs of the Turner test is not warranted by Plaintiff's claims. With regard to prong three, Plaintiff has not made clear what accommodation, if any, he requests of the DOC. (*See* Third Amended Complaint, *generally*). With regard to prong four, the availability of alternatives to the regulation is not an issue since Plaintiff does not challenge a specific regulation. *Id*. Plaintiff does not contend that he received misconducts for the violation of any specific regulation, nor does Plaintiff establish that participation in these prescriptive programs is mandatory. *Id*. As such, it appears as though the ready alternative to these allegedly violative programs is the alternative currently exercised by Plaintiff – simple non-participation. *Id*.

In sum, Plaintiff's First Amendment rights were not impinged upon by the DOC. The programs challenged by Plaintiff are voluntary, and in any event, are reasonably related to the legitimate penological interest of rehabilitation. Therefore, Plaintiff's First Amendment religious claims should be dismissed.

**D.  Plaintiff has failed to state a cognizable retaliation claim upon which relief can be granted.**

Plaintiff alleges that he was fired from his prison job (*see* Third Amended Complaint, at ¶23), and issued two false misconducts (*id*, at ¶¶ 35; 41; 55-59) in retaliation for his writing poetry about the "racial injustice in the courts" (*id*., at ¶¶ 1-19).

Undoubtedly, retaliation is a violation of a prisoner's constitutionally protected rights. *See* Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, mere allegations of retaliation are insufficient to show a constitutional violation.

A proper retaliation claim must contain a showing of three factors by the plaintiff: (1) that he was engaged in a constitutionally protected activity; (2) that he was subjected to adverse

actions; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse actions. *See* Rauser, 241 F.3d at 334; *adopting* Mt. Healthy City Board of Educ. v. Doyle, 429 U.S. 274, 287 (1977). "Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id*.

Even if the first prong of this test is conceded for the purposes of this motion, Plaintiff has failed to state a cognizable retaliation claim. Plaintiff states that on October 24, 2002, the two problematic poems were discovered on the back of a newspaper article Plaintiff had given a member of the prison staff to copy. (*See* Third Amended Complaint, at ¶¶ 4-12). Plaintiff avers that these two poems "addressed the subject of racial injustice in the courts." *Id*., at ¶6. Whatever Plaintiff's alleged intentions, these poems were perceived by DOC officials as racially inciteful. *Id*., at ¶22. Plaintiff alleges that because of these two poems, his prison job was reassigned, effecting a demotion from his $.42/hr. Chapel Clerk position to an $.18/hr. General Labor Pool position. *Id*, at ¶16.

Based on these contentions, Plaintiff has failed to meet the requirements of prong-two, as described above, inasmuch as he has not demonstrated that he was subjected to adverse actions. As a matter of law, Plaintiff does not have a right to be employed while in prison. *See* Rhodes v. Chapman, 452 U.S. 337, 348 (1981); James v. Quinlan, 866 F.2d 627, 630 (3d Cir. 1989); Lentz v. Vaughn, 2004 U.S.Dist.LEXIS 4838, *8 n.2 (E.D.Pa. 2004). As such, Plaintiff was not subject to adverse action when his prison job was reassigned.

Plaintiff has also failed to meet the requirements of prong three of the retaliation test in relation to the above-described retaliatory job reassignment, and the allegedly retaliatory misconducts he complains of. In addition to the reassignment of his prison job, Plaintiff contends that he was issued two false misconduct reports in retaliation for his poetry writing. (*See* Third Amended Complaint, at ¶¶ 35; 41; 55-59). Specifically, Plaintiff alleges that defendant Clement issued him a false misconduct report in February, 2002 (*id*., at ¶¶ 35; 41), and that defendant Lobdell issued him a false misconduct report in May, 2004 (*id*., at ¶¶ 55-59). Plaintiff argues that both defendants Clement and Lobdell issued these misconducts in retaliation for the two poems described above. *Id*., at ¶¶ 35; 41; 55-59. Plaintiff's argument stops there. Plaintiff does nothing to establish the requisite causal connection between the discovery of the poems, and the issuance of these misconducts by individuals entirely uninvolved with the situation and with Plaintiff's prison-employment.[4]

As such, Plaintiff's retaliation claims should be dismissed.

### E. Plaintiff has failed to state a cognizable Fourteenth Amendment claim upon which relief can be granted.

Plaintiff asserts that defendants have violated his Constitutional rights under the due process and equal protection clauses of the Fourteenth Amendment. (*See* Third Amended Complaint, at III). It is unclear as to what facts Plaintiff relates his equal protection claim.[5] *Id*. It would appear from Plaintiff's Third Amended Complaint, that he raises a due process claim in

---

[4] Because the Plaintiff failed to carry the burden of establishing a prima face case of retaliation, as required by the rule in Rauser, examination of the DOC defendants' legitimate penological objectives is unnecessary. See Rauser, 241 F.3d at 334.

[5] In order to state a claim for equal protection, a Plaintiff must show that he has been discriminated against because of his membership to a particular class. See Bohen v. City of East Chicago, 799 F.2d 1180, 1187 (7th Cir. 1986) *citing* Adickes v. Kress & Co., 398 U.S. 144, 152 (1970). Since Plaintiff has failed to articulate an equal protection claim in his Complaint, no argument in that regard is currently possible.

12

relation to his position as a Chapel Clerk being terminated, his security level being increased, and to the extent that his non-participation in the prescriptive programs has otherwise affected the status of his sentence. *Id*. Assuming arguendo that this is the manner in which Plaintiff raises his Fourteenth Amendment claims, Plaintiff claims are without merit.

The safeguards of the Due Process Clause are triggered only when a Fourteenth Amendment protected liberty interest is at stake. *See* Meachum v. Fano, 424 U.S. 215, 223-24 (1976). "Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). "The Due Process Clause itself confers only a very limited range of protected liberty on inmates lawfully convicted and confined in prison. Its substantive protection extends only to punishment and conditions of confinement not contemplated by the original sentence." Berrier v. Allen, 951 F.2d 622, 624 (4th Cir. 1991), *citing* Vitek v. Jones, 445 U.S. 480, 493 (1980).

As discussed in conjunction with the argument in section D above, Plaintiff does not have a right to be employed while in prison. *See* Rhodes, 452 U.S. at 348; James, 866 F.2d at 630; Lentz, 2004 U.S.Dist.LEXIS at *8 n.2. As such, no liberty interest was triggered when Plaintiff's employment as a Chapel Clerk was terminated and Plaintiff was returned to the general labor pool. *Id*.

Inasmuch as Plaintiff asserts a Due Process claim related to the increase in his security level or some collateral effect on his chances for parole, etc., Plaintiff again fails to state a cognizable claim. Plaintiff has no protected liberty interest in a certain level of custody. *See* Hewitt v. Helms, 459 U.S. 460, 566 (1983) (stating that even administrative segregation is "the sort of confinement that inmates should anticipate receiving at some point in their incarceration," so there is no protected liberty interest triggered). Similarly, Plaintiff does not have an absolute

13

right to be released from prison on parole. *See* Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 9 (1979). Parole is not a protected liberty interest in Pennsylvania. *See* Rause v. Vaughn, 79 F.Supp. 550, 552 (E.D.Pa. 2000); Burkett v. Love, 89 F.3d 135, 139 (3d Cir. 1996).

For these reasons, Plaintiff's Fourteenth Amendment claims should also be dismissed.

### F.     Plaintiff has failed to allege personal involvement against defendants Wolfe, Beard, McKissock, Hametz, James, Burks, Moslak, and Barnett.

A defendant must be shown by the allegations contained in the Complaint to have been personally involved or have actual knowledge of and acquiesced in the commission of the wrong. *See* Rizzo v. Goode, 423 U.S. 362 (1976). Liability can only be imposed if that official played an "affirmative part" in the complained of misconduct. *See* Chincello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

The requirements for establishing supervisory liability are even more stringent. The supervisory official's misconduct cannot be merely a failure to act. *See* Commonwealth of Pennsylvania v. Porter, 659 F.2d 306, 336 (3d Cir. 1981), *cert. denied*, 458 U.S. 1121 (1982). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), *cert. denied*, 111 S.Ct. 2827 (1991). The supervisor must be personally involved in the alleged misconduct. *See* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). To impose liability on a supervisory official there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate."

14

Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989).  Section 1983 liability cannot be predicated solely on *respondeat superior*. *See* Rizzo v. Good, 423 U.S. 362 (1972).

In the instant action, individuals eight have been named solely in their supervisory capacities: Wolfe has been named in his capacity as Superintendent; Beard has been named in his capacity as DOC Secretary; McKissock and Hametz have been named in their capacities as Unit Managers; James and Burks have been named in their capacities as Chief Grievance Coordinators; and Barnett and Moslak have been named in their capacities as Hearing Examiners.  (*See* Docket, *generally*).  Plaintiff does not allege that any of these eight individuals participated in the alleged constitutional violations he presents, nor that any of these individuals had actual knowledge of and gave their acquiescence to any violative conduct.  In fact, Plaintiff's Third Amended Complaint makes absolutely no reference to defendants Beard, James, Burks, Moslak, and Barnett.  (*See* Third Amended Complaint, *generally*).  As such, Plaintiff's claims against these individuals should be dismissed.

Plaintiff's sole allegations against defendants Wolfe, McKissock, and Hametz, is that they responded to grievances and/or inmate requests to staff in a manner viewed by Plaintiff as unfavorable.  *Id*., at ¶¶ 46; 48; 60.  In this regard, it must be noted that "prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." Wilson v. Horn, 971 F.Supp. 943, 947 (E.D.Pa. 1997), *affirmed* 142 F.3d 430 (3d Cir. 1998) (Table), *citing* McGuire v. Foor, Civil Action No. 94-6884, 1996 WL 131130 at *1 (E.D.Pa. 1996), *affirmed*, 101 F.3d 691 (3d Cir. 1996).  It has specifically been held by the Third Circuit that the filing of a grievance was not sufficient to show the actual knowledge necessary for personal involvement.  *See* Rode v. Dellarciprete, 845

F.2d 1195, 1208 (3d Cir. 1988). Similarly, it has been found by other federal courts of this Circuit that concurrence in an administrative appeal process is not sufficient for personal involvement, Watkins v. Horn, 1997 WL 566080, *4 (E.D.Pa. 1997).

Hence, Plaintiff has also failed to allege personal involvement against defendants Wolfe, McKissock, and Hametz, and his claims against these individuals should be dismissed accordingly.

## IV.  CONCLUSION

WHEREFORE, it is respectfully requested Plaintiff's Third Amended Complaint be dismissed in favor of the defendants.

Respectfully submitted,

**Thomas W. Corbett, Jr.**
Attorney General

BY:   Christian D. Bareford
CHRISTIAN D. BAREFORD
Deputy Attorney General
PA I.D. No. 83982

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief Litigation Section

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

(412) 565-7680

Date:   October 24, 2005