IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,
       Plaintiff,

V.                                    C.A. NO. 04-44 ERIE

WILLIAM WOLFE, the superintendent of
SCI-Albion; JEFFREY A. BEARD, Secretary
of Pennsylvania Department of Corrections;
GLENN MCQUOWN, then Facility Chapel Program
Director; ROBERT BOEH, then Inmate Program
Manager; PATRICIA GAMBLE, Unit Counselor;
MICHAEL SNYDER, Unit Counselor; PATRICIA
MCKISSOCK, Unit Manager; TIMOTHY HAMETZ,
then Unit Manager; THOMAS L. JAMES, then
Chief Grievance Coordinator in the Secretary's
Office; SHARON M. BURKS, Chief Grievance
Coordinator in the Secretary's Office; BARRY
LOBDELL, Correctional Officer; C.O. CLEMENT;
IVORY BARNETT, then Misconduct Hearing Examiner;
and, ZACHARY MOSLAK, then Misconduct Hearing
Examiner,
       Defendants

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION OPPOSING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

I. STATEMENT OF THE CASE

Plaintiff, Leonard C. Jefferson, CL-4135 is a pro se prisoner current-

ly in custody of the Pennsylvania Department of Corrections (PA DOC) in the

State Correctional Institution at Albion (SCI-Albion). Plaintiff brings the in-

stant action pursuant to 42 U.S.C. §§ 1981, 1983 & 1985 against the fourteen (14)

following named individuals who were, at all relevant times, employees of the PA

DOC: (1) William Wolfe, (2) Jeffrey A. Beard, (3) Glenn McQuown, (4) Robert Boeh,

(5) Patricia Gamble, (6) Michael Snyder, (7) Patricia McKissock, (8) Timothy

Hametz, (9) Thomas L. James, (10) Sharon M. Burks, (11) Barry Lobdell, (12) C.O.

Clement, (13) Ivory Barnett, and (14) Zachary Moslak.

On 02/16/05 Plaintiff filed a Motion For Leave To File An Amended Complaint (Doc # 35) seeking, among other things, permission from the Court to "restate his claims...in a more organized fashion." On 03/30/05 the Court issued an ORDER (Doc # 38) wherein the Court granted Plaintiff leave to file the Third Amended Complaint (Doc # 39), and the Court stated "...the proposed amended complaint does present plaintiff's claims in a more orderly fashion, which should relieve some of defendants' burden of having to file an additional response."

The Brief In Support Of Defendants' Motion To Dismiss Plaintiff's Third Amended Complaint (Doc # 68)(Defendants' Brief) does not address or respond to Plaintiff's claims as they are presented in the Third Amended Complaint (Doc # 39). Defendants' Brief makes references, on thirty-three (33) occasions, to certain paragraphs alleged to be in the Third Amended Complaint. Thirty-one (31) of said references direct the reader to paragraphs of the Third Amended Complaint which are not relevant to defense counsel's instant argument. The two (2) instances wherein Defendant's Brief (Doc # 68) refers to/cites the relevant and intended parts of the Third Amended Complaint (Doc # 39) appear on pages 10 & 15 of Defendants' Brief where defense counsel has stated: "(See Third Amended Complaint, generally)." In each of the thirty-one (31) instances where Defendants' Brief identifies specific numbered paragraphs of the Third Amended Complaint, the relevant paragraph is not at that ¶ in the Third Amended Complaint, but will be found in either the Original or First Amended Complaint (Doc ## 3 & 17 respectively) at the number cited in Defendants' Brief. Similarly, Defendants' Brief repeatedly mis-states, misrepresents and presents distorted descriptions of the clearly articulated claims which are set forth in the Third Amended Complaint. Plaintiff's intent, in the following pages of this Brief In Support of Plaintiff's Motion Opposing Defendants' Motion To Dismiss Plaintiff's Third Amended Complaint (Doc #    )(Plaintiff's Brief), is to (a) identify each of Defendants'

mis-statements, misrepresentations and distortions of his claims which Defendants have set forth in their brief (Doc # 68), and (b) to focus the Court's attention on Plaintiff's claims as they actually appear in his Third Amended Complaint.

Plaintiff respectfully ask the Court to note that Plaintiff's claims, in section "IV. FACTS" of the Third Amended Complaint are stated in four (4) separate and distinct groupings as follows:

**A. THE 2002 MISCONDUCT REPORT** (¶¶ 19 -31)

**B. RETALIATION** (¶¶ 32 - 61)

**C. THE 2004 FABRICATED/RETALIATORY MISCONDUCT REPORT** (¶¶ 62 - 74), and

**D. THE ESTABLISHMENT CLAUSE AND FREE EXERCISE CLAUSE CLAIMS** (¶¶ 75 - 94).

Plaintiff asks the Court to note that each one of these claims states a claim upon which relief, pursuant to Fed. R. Civ. P. Rule 12 (b)(6), can be granted.

On page 1 of Defendants' Brief (Doc # 68) defense counsel erroneously states: "Plaintiff brings this action pursuant to 42 U.S.C. § 1983..." in the face of the fact that ¶ 1 of the Third Amended Complaint (Doc # 39) states: "This is a civil action authorized by 42 U.S.C. §§ 1981, 1983 & 1985..."

Next, on page 1 of Defendants' Brief, defense counsel has written: "Plaintiff raises these claims pursuant to the First and Fourteenth Amendments of the United States Constitution. (See Third Amended Complaint, at III)." When, as stated in the preceding paragraph, the Third Amended Complaint presents its claims pursuant to 42 U.S.C. §§ 1981, 1983 & 1985. Additionally, Defendants' reference, to "(See Third Amended Complaint, at III)", is erroneous. It appears defense counsel may have argued that Plaintiff raised this claims pursuant to the First and Fourteenth Amendments after a corrupted reading of the Original Complaint (Doc # 3) at section III where the court supplied § 1983 Forms ask the question: "What Federal law do you claim was violated?" to which Plaintiff re-

sponded: "First Amendment rights to freedom of speech, Free Exercise of Religion

and the Establishment Clause: Fourteenth Amendment Equal Protection and Due Pro-

cess Clauses." None of the Complaints which Plaintiff has filed in this actions

make a claim, as Defendants' Motion (Doc # 68) asserts, that "Plaintiff raises

these claims pursuant to the First and Fourteenth Amendments..."

Defendants' Brief, at the bottom of page 1 continuing on to page 2,

mis-characterizes and distorts Plaintiff's Free Speech claims where defense Coun-

sel asserts:

> "Plaintiff contends that his First Amendment right to Free
> speech was violated when he was fired form his prison job,
> and later issued false misconduct reports, in retaliation for
> writing two poems (id., at ¶¶ 1 - 19; 23; 35; 41; 55-59); that
> his First Amendment right to free exercise of religion was violated
> by the enforcement of the DOC's prescriptive program policy (id., at
> ¶¶ 24 -32); and that the DOC violated the religious anti-establishment
> clause of the First Amendment by the promulgation and enforcement
> of said policy (id., at ¶¶ 24 - 32)."

In responding to the first clause of the preceding sentence, Plaintiff must agree

that his Third Amended Complaint (Doc # 39) does present facts which support his

claim that his Free Speech rights were violated when he was fired from his prison

job (See ¶¶ 33 - 61 of Third Amended Complaint); but defense counsel's use of the

plural "reports", indicating Plaintiff claims he was issued more than one false/

retaliatory misconduct, is a false statement. As stated above in this brief, the

title of section IV., C of the Third Amended Complaint is "The 2004 Fabricated/

Retaliatory Misconduct Report" wherein ¶¶ 62 - 74 state facts which relate exclu-

sively to a single fabricated/retaliatory Misconduct Report; that being the May

12, 2004 Misconduct Report which was written by defendant Lobdell. (See ¶ 65 of

the Third Amended Complaint). Similarly, Defendants' assertion that Plaintiff

contends he was fired "in retaliation for writing two poems" is a distorted and

unacceptable characterization of the claim which Plaintiff has set forth, in ¶¶

43 - 56 of the Third Amended Complaint, wherein Plaintiff actually stated a group

4

of the defendants who considered the poetry to be "distasteful and unflattering" (id., at ¶ 43) conspired amongst themselves and fabricated pretexts -- including one pretext (presented 21 days after Defendants acquired the poetry) that Plaintiff may have intended to distribute his poetry to other inmates (see ¶¶ 50; 51 and Exhibits "B" & "C", id.), and a second pretext (presented, for the first time, some 130 days after Defendants acquired the poetry) that Plaintiff had actually distributed racially inciteful (sic) poetry (see ¶¶ 53 - 56 & Exhibit "D", id.) -- which must appear as aberrations in light of the allegations of ¶ 54 of the Third Amended Complaint which indicate Defendants neither issued Plaintiff a misconduct for "possession of items, which in the hands of an inmate represent a threat...to the security of the institution" (quoting PA DOC DC-ADM 801, Inmate Discipline, VI., A., 8.) nor confiscated any poetry, racially inciteful or benign, from Plaintiff. As such these facts indicate normal procedures were not followed. If prison officials had actually believed, thought or had the slightest hint of a suspicion that Plaintiff, on 10/24/02 (¶¶ 50 - 56 of Third Amended Complaint), had represented a threat to the security of and/or the orderly operation of the jail due to a plan to distribute, or pass, racially inciteful (sic) poetry among other inmates, prison officials would have immediately exercised their authority with the proverbial Iron Fist. All of the allegedly racially inciteful (sic) poetry would have been confiscated, a Misconduct Report would have been issued, and, Plaintiff would have been immediately placed in the Hole. ¶ 54 of the Third Amended Complaint (Doc # 39) asserts the facts that (a) no Misconduct Report was written upon the discovery of the poetry, and (b) no racially inciteful (sic) poetry has ever been confiscated from Plaintiff. The facts stated in ¶¶ 32 - 61 clearly state a claim that a group of the defendants conspired and then acted in retaliation against Plaintiff, by firing him from a prison job which he had always performed with excellence (¶¶ 32 - 35, Third Amended Complaint), for

5

reasons which were not related to any legitimate penological objective. Plaintiff
asserts, in ¶ 43 of the Third Amended Complaint, that Defendants "Conspired to
retaliate against Plaintiff for expressing views in his poetry which did not vio-
late any PA DOC rule, but which Caucasian secretary and administrators found dis-
tasteful and unflattering." Additionally, in the final two (2) clauses of the
sentence composed by defense counsel, Defendants assert Plaintiff contends:

> "...that his First Amendment right to Free Exercise of religion
> was violated by the enforcement of the DOC's prescriptive program
> policy (id., at ¶¶ 24 -32); and that the DOC violated the religious
> anti-establishment clause of the First Amendment by promulgation and
> enforcement of said policy (id., at ¶¶ 24 -32)."

Said assertion by Defendants does not accurate state Plaintiff's Free Exercise
and Establishment Clause claims. The theories, supported by the facts stated in
in the Third Amended Complaint for violations of Plaintiff's right to Free Exer-
cise include, among others, conditioning Plaintiff's continued residence on an
Honor Block upon his abandoning his sincerely held religious beliefs (¶¶ 83
- 94 of Third Amended Complaint), conditioning Plaintiff's minimum security
custody level upon his abandoning his sincerely held religious beliefs (id.) and
Defendants' insistence that Plaintiff participate in religious and secular pro-
gams which offended his Islamic beliefs where and when Defendants could have eas-
ily fulfilled whatever they believed Plaintiff's prescriptive programming need
to be via the Islamic programs which exist at SCI-Albion. (¶ 85, id.) The Third
Amended Complaint (Doc # 39) does not allege that a violation of the Establish-
ment Clause occurred as a result of Defendants promulgation of the DOC Policy
which governs inmates prescriptive/rehabilitative programs; the facts of the
Third Amended Complaint assert a claim that the effect of the policy, as the poli-
cy was applied to/enforced upon Plaintiff after Plaintiff made his religious ob-
jections to said non-Islamic programs known to prison officials at SCI-Albion
and in the Office of the Secretary of the PA DOC (¶¶ 75 -94 of Third Amended Com-

plaint), presents an undeniable violation of the letter of the Establishment

Clause as has previously been            established by relatively recent rulings

in State and Federal Court cases in this Circuit against the PA DOC. The claims

of the Third Amended Complaint also assert that Defendants' implementation of its

prescriptive program policy, in such a way that Defendants have selected and sup-

ported certain religions while simultaneously rejecting the religion of Al-Islam

(¶¶ 83 - 85 of Third Amended Complaint), "...have established a de facto State/DOC

sponsored religion..." (¶ 84, id.) which Defendants' Mission Statement/Credo

claims will "provide...values necessary to become productive law abiding citi-

zens;" (¶¶ 79; 84. id.).

        Defendants' Brief (Doc # 68), at page 2, also presents an erroneous and

misleading assessment of Plaintiff's Fourteenth Amendment claims via defense

counsel's written statement that:

            "With regard to Plaintiff's Fourteenth Amendment claims,
            Plaintiff contends that he was issued a false misconduct report,
            which led to a raise in his custody level and corresponding unit
            transfer, in violation of the Due Process and Equal Protection
            Clauses."

The facts stated in the Third Amended Complaint support claims that Defendants

have (a) violated Procedural Due Process when Plaintiff's request to present wit-

nesses at the 2004 Misconduct Hearing was denied (¶¶ 69 - 70); and in the 2002

incident wherein Plaintiff was issued a Misconduct Report, was found guilty and

served fifteen (15) days cell restriction for allegedly violating an unwritten and

un-publicized prison rule (¶¶ 19 - 31, id.); and when the 2002 Misconduct was

cited as a cause for raising Plaintiff's custody level and his transfer from a

minimum security unit to a medium security unit (¶¶ 31; 88; Exhibit "G"; and

¶ 89, id.) and, (b) Defendants have violated the Equal Protection Clause when they

imposed punitive measures upon Plaintiff for the views expressed in his poetry

but did not impose punitive measures upon other inmates who wrote and published

similar poetry in at least one book produced by the PA DOC (¶¶ 46 – 48, id.) and by rewarding those who embrace and participate in certain State/DOC sponsored religious activities while imposing punitive measures upon Plaintiff for asserting his Constitutional Right to not participate in programs which are offensive to his Islamic religious beliefs (¶ 83, id.); and when the 2004 Misconduct Report was issued against Plaintiff for allegedly being in the Lobby Area in the face of the fact that no Misconduct Report(s) have been written against any of the other Chapel Clerks who sit, read, and type in said Lobby Area (¶¶ 65; 68; 69, id.).

This Court's ORDER, of 03/30/05 (Doc. # 38), granted Plaintiff leave to file his Third Amended Complaint (Doc. # 39) and also instructed Plaintiff to serve a copy of the Third Amended Complaint upon each of the original and additional defendants, or their legal counsel, on or before April 18, 2005, and to file a Certificate of Service with the Court verifying such service. Plaintiff, attempting to comply with the court's instructions, on 04/12/05, mailed a letter to defense counsel, Deputy Attorney General Bareford, seeking to ascertain which, if any, of the twelve (12) additional defendants he was representing so plaintiff could determine whether or not service of his Third Amended Complaint could be completed upon the two (2) original and the twelve (12) additional defendants by serving a single copy of the Third Amended Complaint upon Dept. Bareford; and stated Plaintiff's belief that he had fulfilled his obligation to properly serve all fourteen (14) defendants on 02/07/05 by sending a copy of the Third Amended Complaint to Dept. Bareford via first-class mail. The Court should find a copy of said letter on file in the Clerk's Office. Dept. Bareford did not respond to Plaintiff's 04/12/05 letter. However, on 05/09/05, Dept. Bareford filed a Response To Plaintiff's Second Declaration Of Default (Doc. # 41) wherein he (1) complained that Plaintiff had not accomplished service upon each original and additional defendant, (2) "The rules of civil procedure require the plaintiff, and not counsel, to noti-

8

fy newly added parties of the fact a civil action has been initiated against them,
either by delivering a copy of the complaint to the new party, or by way of ser-
vice through the U.S. Marshals." (¶ 4, id.), and (3) Dept. Bareford acknowledged
the fact that he "did anticipate that some number of the newly added defendants
would be represented by" his office (¶ 5, id.) but he did not specify which
additional defendants he would represent and thus Plaintiff remained uncertain
as to who he needed to serve to comply with the 03/30/05 ORDER (Doc # 38). Plain-
tiff, being indigent and having been granted leave to proceed in forma pauperis
pursuant to 28 U.S.C. § 1915 (b) as amended on April 26, 1996, on 07/06/05 filed
a Motion Of Indigent Plaintiff For Court To Serve Copies Of plaintiff's Third
Amended Complaint Upon The Twelve (12) Newly Named Defendants In This Action
(Doc # 44) wherein Plaintiff stated:

> "Plaintiff asserts that his extremely limited resources — combined
> with defense counsel's indirect and vague response as to which of
> the twelve (12) additional defendants he would be representing
> along with defense counsels insistence that Plaintiff serve a copy
> of the Third Amended Complaint upon each original and additional
> defendant; which would clearly be redundant service upon those
> defendants whom defense counsel presently knows he will represent
> in this action — leave Plaintiff with no option to accomplish
> service...except to ask this court, pursuant to 28 U.S.C. § 1915
> (c), to perfect service of the Third Amended Complaint upon each
> original and additional defendant or upon counsel for said defendants."
> (¶ 5, id.).

On 07/28/05 the Court issued an ORDER (Doc # 45) which, among other things,
ordered the U.S. Marshals "to mail copies of the complaint and amended complaint,
notice of lawsuit and request for waiver of service of summons, and waiver and
this order to each defendant as directed by Plaintiff. Cost shall be advanced
by the United States."; and "that Plaintiff provide the...Marshals a separate
'Process Receipt and Return' form (USM-285) for each defendant..." On 08/14/05,
after requesting and receiving the USM-285s from the Marshals, Plaintiff mailed
two (2) Form USM-285s, for service upon defendants Wolfe and Beard, addressed

to Dept. Bareford. On 08/16/05 Plaintiff mailed twelve (12) Form USM-285s, one addressed to each of the twelve additional defendants, to the Marshals for service in compliance with the 07/28/05 ORDER (Doc # 45). On 08/29/05 Plaintiff received, via U.S. Mail from the Marshals, the Form USM-285 addressed to Robert Boeh, which Plaintiff had mailed on 08/16/05 in the same envelope with one Form USM-285 addressed to each of the 11 other additional defendants. The Marshals informed Plaintiff, via an un-signed handwritten note, that "Robert Boeh is not listed as a defendant on the court docket sheet." On 08/29/05 Plaintiff return mailed the Form USM-285 addressed to Robert Boeh along with a letter to the Marshals (with a copy going to Judge Baxter) which asked the Marshals to:

> "Please note that the name Robert Boeh appears in the caption —
> and again on page 2 in section III (DEFENDANTS) in ¶ 7 of the
> Amended Complaint...and [to] (1) amend/correct the court docket sheet
> by including Robert Boeh as a defendant in this action, and (2) serve
> the enclosed FORM USM-285 upon Robert Boeh along with the other docu-
> ments specified in Judge Baxter's 07/28/05 ORDER in this action."

On 09/01/05 Plaintiff filed the Certificate of Service, with the Clerk, certifying Plaintiff had mailed to the Marshals one Form USM-285 for each original and additional defendant as specified in the 07/28/05 ORDER (Doc # 45). On 10/24/05 Plaintiff received, via U.S. Mail from the Marshals, a copy of one Form USM-285 addressed to each of the twelve (12) additional defendants; each of these Forms bore the comment: "RETURNED TO COURT UNEXECUTED-NO RESPONSE TO WAIVER BY MAIL." Notwithstanding the facts that: (1) none of the twelve additional defendants have been served with a copy of the complaint, and (2) Dept. Bareford's demand, in Defendants' Response To Plaintiff's Second Declaration Of Default (Doc # 41), that each one of the additional defendants be served by Plaintiff or the Marshals as specified in Rule 4 of the Fed. R. Civ. P., Defendants' Motion To Dismiss Plaintiff's Third Amended Complaint (Doc # 67) and its Brief In Support (Doc # 68) both indicate that Dept. Bareford is presently serving as defense counsel for all of the additional defendants named in the caption of the Third Amended Complaint

10

(Doc # 39) with the exception of Robert Boeh, whom Dept. Bareford has omitted

from the captions of his most recently filed documents, including the documents

(## 67 & 68) which the Court is reviewing instantly.

Defendants erroneously assert, in the final sentence of the STATEMENT OF

THE CASE section of their brief (Doc # 68), that:

> "The instant motion is filed in response to
> Plaintiff's Third Amended Complaint."

and, in a footnote to this sentence, Defendants present the following half-truth:

> "In his Third Amended Complaint, Plaintiff incorporates paragraphs
> 1 - 60, slightly adjusting the language of two paragraphs, and
> omits paragraphs 61 - 87 (See Doc # 39). As such, the instant
> motion addresses plaintiff's claims, as set forth in paragraphs
> 1 - 60 of his Third Amended Complaint."

Plaintiff asks the Court to note that ¶ 97, in a section of the Third Amended

Complaint titled: VI. LEGAL CLAIMS/CAUSES OF ACTION (page 13 of Third Amended

Complaint, Doc # 39), Plaintiff "realleges and incorporates by reference ¶¶ 1 -

94" of the Third Amended Complaint. Considering the thirty-one (31) above-mentioned

incorrect numerical references, to paragraphs of the Third Amended Complaint,

presented in/by Defendants' Brief (Doc # 68), Defendants' footnote should inform

this Court that the Defendants' Brief (Doc # 68) is actually a response to Plain-

tiff's claims as those claims are stated in the Original and First Amended Com-

plaints (Doc ## 3 & 17 respectively). Defendants' Brief (Doc # 68) does not re-

spond to Plaintiff's claims, as he has presented them — in what this Court

described as being a "...more orderly fashion, which should relieve some of de-

fendants' burden of having to file an additional response." (quoting the 03/30/05

ORDER, Doc # 38) — in his Third Amended Complaint.

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. Rule 12(b)(6), an motion to dismiss cannot

be granted unless the court is satisfied that "No relief could be granted under

any set of facts that could be proved consistent with the allegation." Hishon v.
King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, (1957).
Plaintiff's complaint "should not be dismissed for failure to state a claim unless
it appears beyond doubt that the plaintiff can prove no set of facts in support
of his claim which would entitle him to relief." Cruz v. Beto, 405 U.S. 319, 322
(1972). The issue is not whether plaintiff will prevail at the end but only
whether he should be entitled to offer evidence to support his claim. Neitzke v.
Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The
complaint must be read in the light most favorable to plaintiff and all well-
plead, material allegations in the complaint must be taken as true. Estelle v.
Gamble, 429 U.S. 97 (1976).


### III. ARGUMENT

#### A. NONE OF THE CLAIMS PRESENTED IN
#### PLAINTIFF'S THIRD AMENDED COMPLAINT
#### ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

Plaintiff asks the Court to note the erroneous characterization of one
of Plaintiff's claims, in the heading of Section III., A. of Defendants' Brief
(Doc. # 68), where Defendants characterize Plaintiff's 2002 Misconduct Report
(see ¶¶ 19 - 31 of Third Amended Complaint, Doc. # 39) as being "retaliatory
misconduct claims". The Third Amended Complaint does not allege the February,
2002 Misconduct Report was written as an act of retaliation. The Third Amended
Complaint, (at ¶¶ 35 - 61) identifies prison officials discovery of his
poetry, some eight (8) months after C.O. Clement wrote the 02/02 Misconduct Re-
port, as the spark which ignited the retaliatory fire storm.

Defendants' Brief presents a more specific, but equally erroneous, ex-
ample of Plaintiff's claims where defense counsel has written: "One such claim
relates to an allegedly false misconduct issued to Plaintiff by Defendant Cle-

ment in retaliation for Plaintiff's poetry writing." (See Defendants' Brief at

the bottom of page 4) when, in fact, ¶¶ 65 - 74 of the Third Amended Complaint

present the fact that it was Defendant Lobdell who wrote the false misconduct

as a result of the "animosity generated by Plaintiff's poetry" (quoting ¶ 67 of

Third Amended Complaint).

Defendants continue mixing truth with falsehood in their assertion at

page 5 of Defendants' Brief (Doc. # 68) in the statement:

> "Plaintiff states that this alleged false misconduct was issued to
> him in 'February 2002',but does not specify a particular date. id.,
> at ¶ 33. To the extent that this allegedly retaliatory misconduct
> report was issued to plaintiff prior to February 12, 2002, Plaintiff's
> claims in relation thereto are also barred by the applicable statute
> of limitations."

Notwithstanding Defendants repeated insertion of the adjective "false", as in

"false misconduct", into its description of plaintiff's claims pertaining to the

February, 2002 Misconduct; this Court will find the word "false" does not appear

one time in ¶¶ 19 - 31 of the Third Amended Complaint wherein Plaintiff has set

forth the facts pertaining to the February, 2002 Misconduct; exclusively.

Defendants' statement: Plaintiff states the alleged false misconduct was issued

to him in 'February, 2002' but does not specify a particular date" would be 100%

accurate if it did not contain the words "alleged false". Defendants use of the

word "retaliatory", as in "allegedly retaliatory misconduct report", by Defend-

ants is inappropriate as the Court will note that in presenting his claims rela-

tive to the 2002 Misconduct, in ¶¶ 19 - 31 of the Third Amended Complaint, the

word retaliatory has not been used nor even hinted at. And, pertaining to Defend-

ants' assertions that the claims flowing from the 2002 Misconduct are barred by

the statute of limitations, Plaintiff assert that official PA DOC documents show

the Misconduct Report at issue was not written before the 12th day of February,

and, therefore Plaintiff's claims flowing from the 2002 Misconduct Report are

13

not barred by the statute of limitations.

Defense Counsel correctly states the obvious fact that the repeated references, in the Third Amended Complaint, to dates far before February 12, 2002 are "not the real basis for Plaintiff's instant claims." (Quoting Defendants Brief at Page 5). However, Defendants' assertion that Plaintiff has mentioned pre-02/12/02 dates and events in an attempt "to assert a constitutional claim vis-a-vis this running commentary" (id.) is an erroneous assertion.

Defendants assert: "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which the action is based." citing Moiles V. Marple Newton School District, 2002 U.S. Dist. LEXIS 15769 * 9-10 (E.D. Pa. 2002) at page 4 of their brief (Doc. # 68) as the basis of their arguments that Plaintiff's Free Exercise and Establishment Clause claims are barred by the statute of limitations in light of Plaintiff's allegations at ¶¶ 80 - 82 and Exhibit "F" of the Third Amended Complaint (Doc. # 39) that on 12/06/01 Defendant Gamble informed Plaintiff he was required to attend certain DOC programs notwithstanding his religious objections to said programs. On its surface this may appear to be a black and white issue wherein, pursuant to the case cited by Defendants, Plaintiff's religious claims are, as Defendants assert, barred by the statute of limitations. Beneath the surface, however, this issue is as grey as gray can be in light of Defendants' failure to allege Plaintiff knew, or should have known, Defendant Gamble's words on 12/06/01 injured Plaintiff's rights pursuant to the religious clauses of the First Amendment.

Prisoners, such as Plaintiff, are required to do many things which most human beings would be repulsed by. For example: prisoners are required to eat food that is not properly prepared, and often makes one ill, or starve; required to submit to humiliating body cavity searches; required to spend years in a

small cell with another prisoner with whom he/she is not compatible with; requir-
ed to give blood DNA and urine samples against his will; required to wear ill-
fitting drab clothes and shoes which hurt his/her feet; required to work for as
little as 19¢ per hour; required to be separated from his family and loved ones;
required to take drugs which cause his/her mind to be in a chemical straight
jacket; required to remain silent at times when he/she really needs to talk; re-
quired to walk, not run, though pouring freezing rain without any rain gear and
if he/she should run, in an attempt to quickly seek refuge from the storm, he/she
will be required to walk back to the spot where he/she began running and then to
walk to his/her original destination; required to defecate in an inadequately
ventilated cell in the presence of his/her cellmate, who cannot move more that a
few feet away from the toilet, and is getting angry and expressing disgust at
the odor; required to share a small cell with a person known to be afflicted with
one or more of the communicable diseases which are rampant in U.S. prisons, such
as HIV/AIDS, staph infections, mysterious skin rashes, viruses and an alphabet
soup of hepatitis strains. In light of the facts that some of these indignities of
prison-life are life threatening and that all, as disgusting as they are, are
deemed to be constitutional, Plaintiff, who had not studied civil law, would not
immediately see a red flag waving to inform him that defendant Gamble had viola-
ted Plaintiff's rights, under both of the First Amendment's religious clauses,
in early December, 2001 when she merely "informed Plaintiff that Plaintiff was
required to participate in certain religious and so-called secular programs."
(¶ 80 of the Third Amended Complaint, Doc. # 39).

  The Third Amended Complaint does not, as Defendants assert on page 4 of
their Brief (Doc. # 68), contend that the basis for his First Amendment Free
Exercise and religious anti-establishment clause claims was a conversation he had
with Defendant Gamble in December, 2001." Plaintiff has identified early December

2001 as the date of the first (not the only nor the most recent) of many identical injuries and then established the time frame for the basis of his religious claims as being "ongoing" by stating in ¶ 83 of the Third Amended Complaint that:

> "Plaintiff has observed the ongoing overt discriminatory practices of the PA DOC — in establishing a State/DOC-sponsored religion, which it compels its prisoners to adopt in order to obtain favorable parole reports, coveted housing assignments, lower custody levels, etc. — wherein prisoners who participate in religious programs ...such as A/A & N/A and others, are rewarded for their participation in religious programs where and when Plaintiff has been punished (with an increase in his custody level and removal from the Honor Block) for asserting his constitutional right to Free Exercise of religion..." (id.)

If it is true, as Defendants have argued, that Defendant Gamble violated Plaintiff's Free Exercise rights in early December, 2001, then PA DOC documents will show the ongoing identical injuries to Plaintiff's First Amendment religious rights inflicted a second time by Defendant Gamble at Plaintiff's Yearly Classification Review on 07/20/02, and inflicted again by Defendant Snyder at Plaintiff's Yearly Classification Review on 07/11/03, and inflicted again by Defendant Gamble at Plaintiff's Yearly Classification Review on 08/08/05, which, according to the case law cited by Defendants, indicates the applicable statute of limitations will not expire until 08/08/07; or two years from the date upon which the Defendants return to the scene of the crime and repeat   the injury. In light of the fact that Plaintiff filed his religious claims on 02/11/04, said religious claims are not barred by the statute of limitations.

### B. PLAINTIFF'S THIRD AMENDED COMPLAINT STATES COGNIZABLE FREE EXERCISE CLAUSE AND ESTABLISHMENT CLAUSE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

Before attempting to address Defendants' arguments against his religious claims Plaintiff seeks to restore, to their true form, the following statements which appear in twisted and distorted forms in Defendants' Brief Doc. # 68).

Defendants' Brief, at Page 5, asserts: "Plaintiff contends that, by

16

providing prescriptive programs such as Alcoholics Anonymous and Narcotics Anony-
mous, and encouraging inmate participation therein, the DOC has violated the
First Amendment religious anti-establishment clause." when, in fact, ¶ 80 of the
Third Amended Complaint (Doc. # 39) states: Defendant Gamble "informed Plaintiff
that Plaintiff was Required to participate..." and, similarly, at ¶ 83 (id.)
where Plaintiff has stated the PA DOC "compels its prisoners to" participate.

Defendants' Brief, at page 6, asserts: Plaintiff makes no attempt to
explain the basis of this [Establishment Clause] claim." when Plaintiff has, in
fact, set forth his Establishment Clause claims, his Free Exercise claims, and
the inherent violations of the Equal Protection Clause claims with sufficient
detail and clarity, in ¶¶ 75 - 94 of the Third Amended Complaint; which prevents
Plaintiff's religious claims from being mere "conclusory allegations" or "facial-
ly without merit" as portrayed by Defendants at page 6 of their brief (Doc. # 68).

Defendants' Brief, at page 6, also misrepresents Plaintiff's claim via
Defendants' statement that: "Plaintiff assert that the establishment of a state-
sponsored religion, through the DOC's Promulgation of prescriptive programs...
has unlawfully infringed upon his right to freely exercise his own Muslim
religion." when the Third Amended Complaint neither contains the word "promulga-
ted" nor asserts such a theory (i.e., that the promulgation of the policy in-
fringed upon his rights). It is, as stated in ¶ 83 of the Third Amended Complaint,
"the ongoing discriminatory practices of the of the PA DOC"  -- including
Defendants' refusal or failure to utilize the existing Islamic Chaplain and
the existing Islamic programs at SCI-Albion "to fulfill any so-called 'prescript-
ive programming' needs the PA DOC may deem to be appropriate [for plaintiff] in
a manner which neither opposes nor offends Plaintiff's Islamic beliefs," (Quoting
¶ 85, id.) -- that continue to unnecessarily violate plaintiff's rights under the
religious clauses of the First Amendment and the Equal Protection Clause of the

17

Fourteenth Amendment.

As previously stated, Defendants assert that "Plaintiff contends that, by providing prescriptive programs such as Alcoholics Anonymous and Narcotics Anonymous, and underlined(encouraging) inmate participation therein, the DOC has violated the First Amendment religious anti-establishment clause." (Defendants' Brief at page 5). Additionally, at page 10 of Defendants' Brief, Defendants assert: "Plaintiff does not contend that he received misconducts for violating any specific regulation, nor does Plaintiff establish that participation in these prescriptive programs is mandatory. Id. As such, it appears as though the ready alternative to the allegedly violative programs is the alternative currently exercised by Plaintiff — simple non-participation.", and, "The programs challenged by Plaintiff are voluntary,..."  Pursuant to the standard presented in Estelle V. Gamble, 420 U.S. 97 (1976) the Third Amended Complaint must be read in the light most favorable to Plaintiff and all well-plead material allegations in the complaint must be taken as true; including the material allegations at ¶ 80 of the Third Amended Complaint (Doc. # 39) that: "In December, 2001 Defendant Gamble...informed Plaintiff that Plaintiff was underlined(required) to participate in certain religious ...programs." There are indicators, beyond Plaintiff's allegations, presently before this Court which tend to support/prove the truth of plaintiff's allegations that he was required to participate — and that the "simple non-participation" suggested by Defendants has caused Plaintiff to suffer "adverse actions/consequences" — such as Defendant Gamble's statements:

> "You are underlined(not) program compliant... We are done discussing this issue. I commend that you are committed to your religious practices and beliefs, however this committment (sic) does not replace institutional programs."

(See Exhibit "F" of the Third Amended Complaint). And, similarly, Defendant McKissock's statement that "the issue of your refusal to complete any programming" is a factor that caused your custody level to be raised. (See Exhibit "G" of the

Third Amended Complaint).

The First Amendment forbids not just laws "respecting an establishment of religion, but also those prohibiting the free exercise thereof." Yet laws that coerce non-adherents to "support or participate in any religion or its exercise," County of Allegheny, 109 S.Ct. 3136 (opinion of Kennedy, J.) would virtually by definition violate their right to free exercise. Lee V. Weisman, 112 S.Ct. 2649, 2673, 505 U.S. 577, 120 L. Ed. 2d 467 (1992).

It is a tenet of the First Amendment that a state cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance to state sponsored religious practice. Lee V. Weisman, 112 S.Ct. 2649, 505 U.S. 577,  120 L. Ed. 2d 467 (1992).

A principle at the heart of the Establishment Clause [is] that government should not prefer one religion to another, or religion to irreligion. Board of Education of Kiryas Joel Village School District V. Grumet, 512 U.S. 687, 703, 114 S.Ct. 2481, 129 L. Ed. 2d 546 (1994).

In the prison context, the Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless the unequal treatment bears a rational relation to a legitimate penal interest. Hudson V. Palmer, 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L. Ed. 2d 393 (1984).

The Equal Protection Clause prohibits arbitrary and irrational discrimination even if no suspect class or fundamental right is implicated. Muller V. Costello, 187 F.3d 298 (C.A. 2 (N.Y.) 1999).

A class of one is likely to be the most vulnerable of all, and we do not understand therefore why it should be denied the protection of the Equal protection Clause. Esmail V. Macrane, 53 F.3d 176, 179 (7th Cir. 1995).

The Third Amended Complaint (Doc. # 39) alleges facts, at ¶¶ 75 - 94, which indicate the PA DOC has: (1) attempted to coerce Plaintiff into attending religious programs notwithstanding Plaintiff's repeated objections that said programs offended and violated his religious beliefs, (2) preferred one religion (e.g. A/A and N/A) over another religion (e.g. al-Islam), (3) has preferred religion to irreligion and irreligion to religion, and (4) caused Plaintiff to forfeit rights and privileges as the price of resisting conformance to State/DOC-sponsored religious practice; and, thus Plaintiff's allegations, at ¶¶ 75 -94 of his Third Amended Complaint (Doc. # 39), sufficiently states cognizable claims

19

of violations of the Free Exercise and Establishment Clauses of the First
Amendment.

Defendants, in support of their argument, that Plaintiff has failed to
state a cognizable Free Exercise claim, argue that Searcy V. Simmons, 299 F.3d
1220 (10th Cir. 2002) is very similar to Plaintiff's case. Plaintiff believes
this Courts review of Searcy, Supra will inform the court that Searcy, Supra is
inapposite due to certain distinguishing features such as the fact that Mr. Searcy
did not present an Establishment Clause claim, and that the Tenth Circuit -- in
ruling that the withdrawal of good time credits from an inmate who cited his re-
ligious beliefs as the reason he refused to comply with the requirements of a
Sexual Abuse Treatment Program (SATP) did not violate the inmate's rights under
the Free Exercise Clause -- noted: "Mr. Searcy's participation in SATP was
voluntary." (299 F.3d at 1228). While participation in the SATP was voluntary,
Mr. Searcy indicated his willingness to participate in the SATP by signing an
Inmate Program plan which stated:

> "I acknowledge that I have been afforded an opportunity to
> enter into a program plan. I understand that such a program plan is
> optional but that failure to participate in or successfully complete
> recommended programs shall result in the withholding of good time
> credits which affect my date of release." (299 F.3d at 1222).

Mr. Searcy was "afforded an opportunity to enter into a program plan", Plaintiff
was not. Paragraph "E" on page 14 of the PA DOC INMATE HANDBOOK 2002 EDITION
states:

> "Correctional planning begins when you enter the DOC. Since the major-
> ity of inmates will eventually return to the community, all correction-
> al plans will focus on reentry into the community. Various counseling,
> psychological, and other types of treatment service are available. You
> must participate in the completion of a Correctional Plan, which out-
> lines various areas you should work on while you are in the DOC. Your
> Counselor will meet with you, at least once a year, to review your
> Correctional Plan and to advise you how to involve yourself in recom-
> mended programs and services. Following your Correctional Plan is im-
> portant, as staff will use it when considering you for Custody Level
> advances, special programs, and parole."

Defendants' statement in paragraph "E", that: "You must participate in the completion of a Correctional Plan," clearly indicates Defendants use of force to compel Plaintiff to participate in religious and so-called secular programs when Plaintiff, on 12/05/01, informed Defendant Gamble of his religious objections to the programs verbally  and (in writing the first time Defendant Gamble mentioned the programs) at every Yearly Classification Review since 07/20/02, and Defendant Gamble responded to the 12/05/01 written objection as follows:

> "I have discussed this with the unit mgmt team... you are not program compliant...We are done discussing this issue." (see Exhibit "F" and ¶¶ 80 - 84 of the Third Amended Complaint)

Plaintiff must argue that Defendants Brief (Doc. # 68) does not make any allegation that Plaintiff has either agreed to, or signed any document indicating his consent to, participate in DOC programs. Mr. Searcy, on the other hand, signed the contract and participated in the SATP until he was required to provide certain facts about his sexual history, and, in a way of speaking, he attempted to switch horses in the middle of the race by claiming a religious objection against lying as the basis for his Free Exercise claim because, as he alleged, he would have to lie to provide details of a sexual history that would acknowledge guilt for the crime of which he claimed he was innocent. Plaintiff asserts, first that he is not a sex offender, and second that the fact situation in Searcy, Supra, is not similar to nor comparable with Plaintiff's claims herein.

Plaintiff argues that Defendants use of force in an attempt to compel Plaintiff to participate in religious and so-called secular programs which opposed and offended his religious beliefs is a clear violation of Plaintiff's right to Free Exercise of Religion in keeping with the edicts of the U.S. Supreme Court, that laws that coerce non-adherents to "support or participate in any religion or its exercise," County of Allegheny, 109 S.Ct. 3136 (opinion of Kennedy, J.) would virtually by definition violate their right to free exercise, in Lee V.

21

Weisman, 112 S.Ct. 2649, 2673 (1992); and also on the principle stated in Lee,

Supra, that a state cannot require one of its citizens to forfeit his or her

rights or benefits as the price of resisting conformance to state sponsored re-

ligious practice.

Plaintiff believes this Court will find the following cases, wherein

the plaintiffs stated claims similar to the religious claims set forth in the

Third Amended Complaint (Doc. # 39), which stated cognizable claims upon which

relief could be granted, to be more appropriate than Searcy, supra.

Rauser v. Horn, 241 F.3d 330 (3d Cir. (2001) (free exercise claim de-
nied because the A A / N A requirement violated the establishment
clause as a matter of law.); Nausbaum v. Tarangi, 210 F. Supp. 2d 748
(E.D. Va. 2002) (prison officials violated establishment clause by
limiting availability of good time credits to inmates attending "Ther-
aputic Community Program" that impliedly espoused religion and, while
attendance was voluntary, inmates were coerced into attending due to
lack of alternatives for acquiring good time credits.); Alexander v.
Schenk, 118 F. Supp. 2d 298 (N.D.N.Y. 2000) (inmate was coerced into
attending prison's alcohol and substance abuse treatment programs, in
violation of the establishment clause, when inmate objected to attend-
ing program meetings at his initial interview about program enrollment,
constantly complained about his enrollment in the program, refused to
sign enrollment contract, raised aspects of the programs religious as-
pects with prison officials, and was ordered to return to program's
group session despite officials'knowledge that he objected to them on
religious grounds.); Kerr v. Farrey, 95 F. 3d 472 (7th Cir. 1996) (un-
der establishment clause, inmate could not be forced, under threat of
being rated a higher security risk and suffering adverse effects for
parole eligibility, to attend meetings of organization for narcotics
rehabilitation whose program referred to "God, as we understand Him.")
Lee v. Weisman, 112 S.Ct. 2649, 505 U.S. 577, 120 L. Ed. 2d (1992)
(laws that coerce non-adherents to "support or participate in any re-
ligion or its exercise," (cite omitted) would virtually by definition
violate their right to free exercise.) Murphy v. Carrol, 202 F. Supp.
2d 421 (D. Md. 2002) (denying Jewish prisoner a cell cleaning day
other than Saturday violates right to free exercise of religion.)

Defendants are fully aware that their practice, of not providing exemp-

tions from and/or suitable substitutes for programs which prisoners object to on

religious grounds, violates the religious clauses of the First Amendment. In at

least two (2) cases the Commonwealth Court of Pennsylvania has informed State of-

ficials that practices, almost identical to those alleged in the Third Amended

Complaint (Doc. # 39), violate the Constitution. In McGill V. Dept. of Health, 758 A. 2d 268 (Pa. Cmwlth. 2000), wherein plaintiff McGill alleged that the Board of Probation and Parole is requiring that he complete the TC Program before he can be released on parole, the Commonwealth Court cited Ross V. Keeling, 2 F.Supp. 2d 810 (E.D. Va. 1998) wherein that court "held that a state correctional institution violates the establishment clause when it conditions an earlier release from prison on participating in a theraputic community treatment program that involves religion. The Commonwealth Court wrote: "McGill seeks only to take part in a treatment program that is not based on religion: therefore, McGill has stated a cause of action in mandamus under the establishment clause." Whereas, instantly, Plaintiff only seeks to take part in a program "which neither opposes nor offends Plaintiff's Islamic Beliefs." (¶ 85 of the Third Amended Complaint). In footnote 12 of McGill, Supra, at 758 A. 2d at page 275, states the following about its previous decision in Weaver V. Board of Probation and Parole, 68 A. 2d 766, 774-75 (Pa. Cmwlth. 1997):

> "this court stated that, where a prisoner claims that the parole board violated his or her First Amendment rights by denying parole for failure to complete a '12-step rehabilitation program offered by the corrections facility that was permeated with references to God,' the prisoner would be entitled to an order directing prison officials to implement a new program or change the existing program."

As previously mentioned, Plaintiff does not present any challenge to the promulgation of the PA DOC's prescriptive program policy; Plaintiff seeks only to participate in programs which are not offensive to his religious beliefs. (See ¶¶ 85 & 121-24 of the Third Amended Complaint.

Plaintiff disagrees with Defendants' assertion that the reasonableness test stated in Turner V. Safley, 482 U.S. 78, 79, 107 S.Ct. 2254 (1987) is the appropriate standard for reviewing his Free Exercise and/or Establishment Clause claims; Plaintiff believes the appropriate standard for reviewing his claims is

the compelling governmental interest/least restrictive means test enunciated in

the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C.A.

§ 2000cc-1, which states:

> No Government shall impose a substantial burden on a person's
> religious exercise unless it demonstrates that burden is in further-
> ance of a compelling governmental interest and it is the least restrict-
> ive means of furthering that compelling governmental interest.

In the event this court finds the Turner reasonableness test to be the appropri-

ate standard of review the Court will subsequently find that, under the particu-

lar facts of Plaintiff's claims, Defendants cannot provide any reason that is

"reasonably related to a legitimate penological interest," 482 U.S. at 89, for

Defendants' failure/refusal to use the existing Islamic programs at SCI-Albion to

fulfill Plaintiff's prescriptive programming needs in a manner that is not offen-

sive to his religious beliefs and thus Defendants, being unable to pass the first

prong of the test, can claim no support from Turner, Supra. And similarly, in the

event the Court agrees with Plaintiff and finds the RLUIPA's compelling govern-

mental interest/least restrictive means test to be the appropriate standard of

review, the Court will subsequently find Defendants are unable to provide any

evidence of a compelling governmental interest which requires Defendants to in-

sist Plaintiff participates in programs which offend and violate the tenets and

traditions of his religion rather than using the existing Islamic programs to

meet and fulfill his prescriptive programming needs in a manner that agrees with

his religious beliefs. Pursuant to either standard, Defendants will not be able

to show they have not infringed upon Plaintiff's rights pursuant to the Free Ex-

ercise and Establishment Clauses.

Considering the foregoing, Plaintiff's Third Amended Complaint has

stated cognizable religious claims upon which relief can be granted.

## C. PLAINTIFF'S THIRD AMENDED COMPLAINT
## STATES COGNIZABLE RETALIATION CLAIMS
## UPON WHICH RELIEF CAN BE GRANTED

Plaintiff must begin by identifying the distorted characterizations of his retaliation claims as presented by Defendants in this section of their Brief (Doc. # 68), and, then re-state the distorted claim in the form that it has been presented in the Third Amended Complaint (Doc. # 39).

On page 10 of Defendants' Brief, Defendants assert:

> "Plaintiff alleges that he was fired from his prison job (see Third Amended Complaint, at ¶ 23), and issued two false misconducts (id, at ¶¶ 35; 41; 55-59) in retaliation for his writing poetry about 'racial injustice in the courts.'(id., at ¶¶ 1-19)."

Plaintiff has previously, at page 4 herein, identified the fact that the Third Amended Complaint does not contain any assertion that more than one (1) false/retaliatory misconduct was issued to Plaintiff. (See ¶¶ 19 -31; 62 - 74 of the Third Amended Complaint). Similarly, at page 4 herein, Plaintiff has previously identified the fact that Defendants' assertion that: "Plaintiff alleges that he was...issued...misconducts in retaliation for writing poetry..." is a false assertion in light of the allegations contained in ¶¶ 43 - 56 of the Third Amended Complaint wherein Plaintiff has alleged that a group of the Defendants who considered the poetry to be "distasteful and unflattering" (id., at ¶ 43) conspired among themselves and fabricated pretexts — including one pretext (presented 21 days after defendants acquired the poetry) that Plaintiff may have intended to distribute his poetry to other inmates (see ¶¶ 50; 51 and Exhibits "B" & "C", id.), and a second pretext (presented some 130 days after Defendants acquired the poetry) that Plaintiff had actually distributed racially inciteful (sic) poetry (see ¶¶ 53 - 56 & Exhibit "D", id.) — which must appear as aberrations in light of the allegations in ¶ 54 of the Third Amended Complaint which indicate no misconduct report was issued and prison officials did not make any attempt to confiscate any so-called racially inciteful (sic) poetry from Plaintiff.

25

Plaintiff believes he has stated, in ¶¶ 32 - 61 of the Third Amended Complaint, a cognizable retaliation claim which is, for all practical purposes, identical to the retaliation claim discussed in Rauser V. Horn, 241 F. 3d 330 (3d Cir. 2001). Plaintiff agrees with defendants that a proper retaliation claim must contain a showing of three factors by the plaintiff:

(1) that he was engaged in a constitutionally protected activity (such as Mr. Rauser's assertion of his First Amendment right to refuse to participate in a religious program; and Plaintiff Jefferson's assertion of his First Amendment right to write poetry which expresses the injustices he has experienced as an African-American defendant in Pennsylvania's courts (see ¶ 45 of the Third Amended Complaint)),

(2) that he was subjected to adverse actions (such as Mr. Rauser being transferred from SCI-Camp Hill to SCI-Waynesburg, having his pay reduced from $.41 cent per hour to $.18 per hour, and receiving a negative parole recommendation which was based upon his failure to complete the offensive religious programs; and Plaintiff Jefferson's assertion that prison officials transferred him from a minimum security honor unit to a medium security non-honor unit, fired him from his job and thus reduced his pay from $.42 per hour to $.18 per hour, based their decision to raise his custody level partially upon the fact of his continual refusal to participate in specific religious programs and partially upon the fact that he had been fired from his job because prison officials were annoyed by his poetry which did not pose any threat to the security of the jail, and also subjected him to a false/retaliatory misconduct report which caused him to be fired from the same job for a second time and thus reduced his pay from $.33 per hour to $.18 per hour and caused him to languish in the hole for thirty-five (35) days),

26

(3) that the protected activity was a substantial motivating fac-
tor in the state actor's decision to take adverse action (such as the
fact that prison officials based their decision to deny Mr. Rauser a
favorable recommendation for parole upon his failure to complete the
offensive religious programs; and the verbal and written statements of
prison officials which indicate Plaintiff Jefferson's poetry is the
basis for their decision to take adverse action against him (see ¶¶ 43;
50 - 54 and Exhibits "B","C" & "D" of the Third Amended Complaint) not-
withstanding the fact that, in the real world where actions speak louder
than words, other actions of these same prison officials indicate the
poetry did not pose any threat to security. (See ¶ 54, id.).

Notwithstanding Defendants' assertions to the contrary, Plaintiff be-
lieves the facts alleged in the Third Amended Complaint (Doc. # 39), as summerized
in the three (3) preceding sub-paragraphs, meet and exceed the threshold require-
ments for a retaliatory claim as set forth in Rauser, Supra, and, thus the burden
now shifts to Defendants who must "prove by a preponderance of the evidence that
it would have taken the same disciplinary action even in the absence of the pro-
tected activity" (quoting Rauser, 241 F.3d at 333 adopting the burden-shifting
framework of Mt. Healthy City Board of Education V. Doyle, 429 U.S. 274, 287
(1977)).

Defendants' assertion that Plaintiff has failed to meet the requirements
of the second prong, based upon the line of cases cited by Defendants indicating
that prisoners, including Plaintiff, have no right to be employed while in prison,
is like a bridge to nowhere in the face of fact that Plaintiff is a prisoner
litigating a retaliation claim and "the law of this circuit is clear that a pri-
soner litigating a retaliation claim need not prove that he had an independent
liberty interest in the privileges he was denied." Rauser, 241 F.3d at 333. The

Third Circuit Court has also held that "government actions, which standing alone do not violate the constitution may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right. (quoting Thaddeus V. Blatter, 175 F.3d 378, 386 (6th Cir. 1999)(en banc)." (id.). Clearly, Plaintiff Jefferson has suffered adverse actions, at the hands of prison officials, that "was sufficient to deter a person of ordinary firmness from exercising his (constitutional) right." Allah V. Sieverling, 229 F.3d 220, 225 (3d Cir. 2000). Instantly, Plaintiff has alleged the adverse actions which he has suffered at the hands of retaliating prison officials include: being transferred from a minimum security honor housing unit to a medium security non-honor housing unit, being fired from his job, having his pay reduced from the highest possible rate ($.42 per hour) to the lowest rate ($.18 per hour), having his custody level raised, being the victim of a falsified/retaliatory Misconduct Report which caused him to be fired from the same job a second time and caused his pay to be reduced from $.33 per hour to $.18 per hour and also caused him to languish in the Hole (solitary confinement) for thirty-five (35) days. Plaintiff believes these facts establish that he has suffered a degree of adverse actions, at the hands of retaliating prison officials, to meet and exceed the threshold of the second prong.

Notwithstanding the evidence presently before this Court — which causes Defendants to appear, literally, with the highly desired proverbial "smoking gun" in hand — Defendants contend that plaintiff has not established the requisite causal connection between the discovery of the poems and the adverse actions (i.e., being fired and having his pay reduced from $.42 per hour to $.18 per hour, see ¶¶ 48 - 51) inflicted upon him in retaliation by prison officials and therefore, according to Defendants, Plaintiff has failed to meet the requirements of prong three of the retaliation test. Defendants' argument on this issue

is without merit and logic.

Additionally, in their attempt to build their argument (i.e., that

Plaintiff has failed to satisfy the third prong) Defendants have presented the

following distorted statements of Plaintiff's claims at page 12 if their Brief

(Doc. # 68) where Defendants state:

> "Plaintiff has also failed to meet the requirement of prong three
> of the retaliation test in relation to the...allegedly retaliatory mis-
> conducts he complains of..., Plaintiff contends he was issued two false
> misconduct reports in retaliation for his poetry writing... Plaintiff
> alleges that defendant Clement issued him a false misconduct report
> in February, 2002...Plaintiffs argues that both defendants Clement and
> Lobdell issued these misconducts in retaliation for the two poems des-
> cribed above."

This Court will find that none of the of the just quoted theories will be found

in the paragraphs of the Third Amended Complaint (Doc. # 39).

Taking those distorted claims one by one; ¶¶ 19 - 31 (which discuss the

2002 Misconduct Report issued by defendant Clement) & ¶¶ 62 - 74 (which discuss

the 2004 Misconduct Report written by defendant Lobdell) indicate Plaintiff com-

plained of one (1), not two (2) as Defendants assert, false/retaliatory misconduct

report; that being the 2004 Misconduct issued by defendant Lobdell (see ¶¶ 65 -

68). Additionally, ¶¶ 19 - 31 (id.), which discuss the Misconduct report issued

by defendant Clement in 2002, do not contain any language that can be stretched

to imply, as Defendants contend, that Plaintiff contends the 2002 Misconduct Re-

port was written in retaliation for writing poetry. No paragraph nor any words of

the Third Amended Complaint imply Plaintiff contends "poetry writing" was/is the

action which triggered prison officials' retaliatory acts; Plaintiff has clearly

stated, in ¶ 43 (id.), (1) there is no DOC policy which prohibits writing poetry,

and (2) certain defendants "conspired to retaliate against plaintiff for express-

ing views... which Caucasian secretary and administrators found distasteful and

unflattering." (id.).

Next, Defendants assert, at page 12 of their Brief (Doc. # 68), that:

> "Plaintiff does nothing to establish the requisite causal connect-
> ion between discovery of the poems, and the issuance of these miscon-
> ducts by individuals entirely uninvolved with the situation and with
> Plaintiff's prison-employment."

Plaintiff maintains the third Amended Complaint does, in fact, allege a causal

connection, between the animosity generated by the discovery of the poetry and

the 2004 false/retaliatory Misconduct Report, via the words of ¶¶ 65 - 68 of the

Third Amended Complaint (Doc. # 39), and, Plaintiff is prepared to prove this

causal connection, at the appropriate time, with evidence which will: (1) inform

the finder-of-fact of certain aberrations within the Misconduct Report itself,

and (2) of the fact that other Chapel Clerks have not, and do not, receive Mis-

conduct Reports for engaging in the behavior which defendant Lobdell has cited

as requiring the issuance of the 2004 Misconduct Report to Plaintiff; this evi-

dence points to the illegitimate, corrupt and retaliatory motive that led to the

issuance of said Misconduct.

Returning to the proverbial "smoking gun". Plaintiff respectfully asks

the Court to note that Defendants have not called for Plaintiff to meet the third

prong of the retaliatory test as it relates to Plaintiff asserting/proving a

causal link between the poetry and prison officials' decision to fire him from the

Chapel Clerk job in November of 2002. Plaintiff asserts Defendants have not made

this demand because they realize prison officials handed over the "smoking gun"

by actually admitting, in writing, that the views expressed in the poetry are the

factor that caused them to fire Plaintiff in 2002. (See ¶¶ 62 - 74 and Exhibits

"B", "C" & "D" of the Third Amended Complaint).

In <u>Brooks V. Andolina</u>, 826 F.2d 1266 (3d Cir. 1987), which contains a

Free Speech retaliatory claim that is identical to the Free Speech retaliatory

claim presented in this action be plaintiff Jefferson on the following points:

(1) plaintiff Brooks wrote a letter which annoyed prison officials but which did

not pose any threat to the security of the jail, (2) prison officials, annoyed by
the views expressed in the letter, retaliated, without any legitimate penological
justification by taking adverse action against Brooks, and (3) Brooks asserted,
and — most importantly — the Magistrate Judge and the Third Circuit Court held,
"that the security concerns raised by defendants are merely a belated attempt to
justify their actions." 826 F.2d at 1268. In light of the similarities between
the facts stated in Brooks, Supra and the facts stated in the Third Amended Com-
plaint, it is clear that Plaintiff has stated a cognizable retaliation claim
upon which relief can be granted; and it is equally clear that defendants' Motion
to Dismiss said cognizable claim should be denied.

### D. PLAINTIFF HAS STATED COGNIZABLE
### FOURTEENTH AMENDMENT CLAIMS
### UPON WHICH RELIEF CAN BE GRANTED

The Third Amended Complaint (Doc. # 39) states cognizable claims based
upon prison officials' violations of Plaintiff's rights to Procedural Due Process,
under the Fourteenth Amendment, when they: (1) issue Plaintiff a Misconduct in
2002 for an alleged violation of an unwritten prison rule which Plaintiff had not
been informed of, (2) found Plaintiff guilty at the Hearing on the alleged viola-
tion of the unwritten rule, and (3) refused to allow Plaintiff to present witness-
es in his defense at the 2004 Misconduct Hearing. Similarly, the third Amended
Complaint states cognizable claims based upon prison officials' violations of
Plaintiff's rights to Equal Protection, under the Fourteenth Amendment, when they:
(1) took adverse actions in retaliation against Plaintiff for the views expressed
in his poetry when other African-American prisoners who expressed similar views
in their poetry, which the PA DOC published in book form, were not subjected to
any adverse actions for expressing similar views in their poetry, and (2) supplied

31

favorable recommendations (for parole, custody level reductions, transfers to
prisons closer to one's home and family, preferred jobs and coveted housing as-
signments) based upon one's participation in N/A and A/A religious programs but
did not, and do not, provide favorable recommendations based upon one's partici-
pation in Islamic religious programs.

Plaintiff does not present any claim in the Third Amended Complaint
(Doc. # 39) that his rights under the Fourteenth Amendment were violated via any
of the theories which are presented via Defendants' Brief (Doc. # 68).

### STANDARD FOR ANALYZING PROCEDURAL DUE PROCESS
### VIOLATIONS IN PLAINTIFF'S CLAIMS RELATING TO THE 2002 MISCONDUCT

The Third Amended Complaint, at ¶¶ 19 - 32, presents a claim that Defen-
dant Clement, in February of 2002, issued a Misconduct report to Plaintiff for
attempting to attend the 0715 medication Line when — due to the absence of any
written DOC policy, and/or notification from any prison official that Plaintiff
was not authorized to attend the 0715 Medication Line — Plaintiff had no way of
knowing he was prohibited from doing so. Defendant Barnett found Plaintiff guilty
of the Misconduct and sentenced Plaintiff to 15 days cell restriction. Defendant
Wolfe, and the Chief Hearing Examiner, affirmed Defendant Barnett's decision.
Plaintiff asserts a claim that, pursuant to the following case law, Defendants
Clement, Barnett and Wolfe violated Plaintiff's right to Procedural Due Process
in this instance. The U.S. District Court, for the Eastern District of Pennsyl-
vania, has stated:

"...the court finds instructive the analysis in cases addressing
the question of when a prison may constitutionally punish a prisoner for
violating prison regulations alleged to be vague. The basic principle
articulated in this line of cases is that prisoners must be given notice
that conduct is prohibited and will be punished. See Newell V. Sauser, 79
F.3d 115 (9th Cir. 1996)(holding that insufficient notice to inmate
that creation of legal papers for other inmates on computer was prohi-
bited, when inmate was authorized to possess computer and to help other
inmates with legal papers). Inmates should not be punished for conduct
that they could not reasonably forsee would lead to sanctions, unless
that conduct was so unforseeable that prison officials could not have

crafted guidelines for such conduct. See Rios V. Lane, 812 F.2d 1032,
1038 (7th Cir.) cert. denied 483 U.S. 1001, 107 S.Ct. 3222, 97 L. Ed.
2d 729 (1987)("[w]here prohibited conduct does not carry with it its
own indicia of wrongdoing the need for clearly drawn prison regulations
is particularly acute."); See also Adams V. Gunnell, 729 F.2d 362, 396
(5th Cir. 1984)." Castle V. Clymer, 15 F. Supp, 2d 640, 663 (E.D. Pa.
1998).

In the "INMATE HANDBOOK SUPPLEMENT" (for SCI-Albion)(revised November 1999) at

page 12, the following instructions/information appears under the heading,

"Medication Lines:"

      6:30 a.m.     Insulin Line
                    This is an assigned line to be used only by those who
                    require insulin.

      7:15 a.m.     Main AM Medication Line
                    All refills for self-administered medication packs will be
                    done at this line. They will not be distributed at any
                    other medication line.

        (emphasis in original)

Plaintiff has alleged that "the PA DOC has provided plaintiff with a 30-day sup-

ply of blood pressure pills once a month every since July, 1994, and from 1996

when plaintiff began working in the Stained Glass Shop until July of 1998 when he

was transferred from SCI-Albion to SRCF-Mercer plaintiff was required to obtain

his blood pressure medication at the 7:15 med Line." (¶ 21 of the Third Amended

Complaint, Doc # 39)(emphasis in original). Plaintiff's statement that he has

received 30-day supplies of blood pressure pills once a month indicates Plaintiff

was receiving the "self-administered medication packs" specified in the above-

mentioned Medication Line schedule and, thus, PA DOC Policy instructed Plaintiff,

and required Plaintiff, to attend the 7:15 Medication Line. Notwithstanding the

fact that Plaintiff was complying with said PA DOC Policy by attending the 7:15

medication Line to receive his "self-administered medication packs", "defendant

Clement stopped plaintiff on the walkway, informed plaintiff that he was in an

unauthorized area, and wrote the misconduct report mentioned above in ¶ 19." (¶ 25

of the Third Amended Complaint). Clearly, the facts alleged in ¶¶ 19 - 31 of the

Third Amended Complaint when viewed through the lens of the legal principles cited

above in Castle, Supra indicate that Plaintiff Jefferson has stated a cognizable

Procedural Due Process claim upon which relief can be granted.

Similarly, Plaintiff has stated a cognizable Procedural Due Process

claim related to the facts stated in ¶¶ 62 - 74 of the Third Amended Complaint

(Doc. # 39) wherein it is alleged that, after Defendant Lobdell issued the false/

retaliatory Misconduct Report in 2004, Defendant Moslak:

> "....,performing his duties as a Misconduct Hearing Examiner, denied
> plaintiff's request to present testimony (from defendant McQuown and
> two inmate Chapel Clerks) at the Hearing on Misconduct Report no.
> A453158, when and where (1) allowing these witnesses to testify at the
> hearing would not have presented any threat to security, and (2) testi-
> mony from these witnesses was essential to plaintiff's defense to show
> that (a) defendant Lobdell knew plaintiff was authorized to sit in the
> Lobby and read his Qur'an, and (b) that in light of the fact that defen-
> dant Lobdell never interfered with either of the other two Chapel Clerk/
> witnesses where and when they had sat in the Lobby area reading, writing
> and/or typing, it was clear that, on 05/12/04, defendant Lobdell had
> singled plaintiff out for special, retaliatory, punishment when plain-
> tiff had not violated any prison rule." (¶ 69, id.).

The U.S. Supreme Court in Wolff V. McDonnell, 418 U.S. 539 (1974) held

that "the inmate facing disciplinary proceedings should be allowed to call wit-

nesses and present documentary evidence when permitting him to do so will not be

unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566;

and PA DOC's DC-ADM 801, INMATE DISCIPLINE, VI., Procedures, E., Misconduct Hear-

ing, 7., Witnesses (DC-ADM 801, VI.,E.,7,a,) states:

> "The hearing examiner may approve the presence of any staff member or
> witness, only if the staff member or witness has knowledge of the inci-
> dent, is present on facility grounds, and only if the testimony is
> needed to establish guilt or innocence of the inmate."

After denying Plaintiff's request to present witnesses, including the Facility

Chapel Program Director (defendant McQuown), all of whom would have established

Plaintiff's innocence of the misconduct by showing the improper basis/corrupted

motive which caused  defendant Lobdell to issue the misconduct Report to Plaintiff

for conduct which (1) Plaintiff and all other Chapel Clerks were authorized to engage in, and (2) that when, on numerous occasions, defendant Lobdell had observed other Chapel Clerks engaged in the same conduct he did not issue any warning, threat or a Misconduct Report; "Defendant Moslak did not have any evidence to support his guilty verdict at this hearing other than, as he has written on Form DC-141 Part 2B: the Hearing Examiner 'believes C O l Lobdell's report over Jefferson's denial...'" (¶ 71 of the Third Amended Complaint).

Plaintiff asserts that Defendant Moslak failed to meet the standard, set in DC-ADM 801, VI.,I., Disposition of Charges, which states, in pertinent part:

> "the Hearing Examiner shall determine based on evidence obtained in the hearing process... whether the inmate is guilty of the misconduct charge based on preponderance of evidence that the inmate committed the misconduct charge or charges."

due to the fact that the hearing consisted of Defendant Moslak reading the Misconduct Report to Plaintiff, asking Plaintiff for his version and then finding Plaintiff guilty, saying he believed Lobdell's report over Plaintiff's denial. Plaintiff asserts Defendant Moslak's denial, of his request to present witnesses who would have given the Hearing Examiner cause to find Plaintiff was not guilty as the Misconduct Report charged, was not related to prison security or other legitimate correctional goal and, therefore, Plaintiff has stated a cognizable claim, that his Procedural Due Process rights were violated, similar to the cognizable claims stated in Moran V. Farrier, 924 F.2d 134, 137 (8th Cir. 1991)(refusal to call staff chaplain involved in misconduct incident violated due process); Patterson V. Coughlin, 905 F.2d 564, 570 (2d. Cir. 1990)(prisoner denied due process when not allowed to call inmate witness to fight); and Brooks V Andolina, 826 F.2d 1266, 1269 (3d. Cir. 1987)(where witnesses would not have impaired security, refusal violated due process). Additionally, Plaintiff also asserts, Defendant Moslak's boilerplate statement of his rationale for finding Plaintiff

35

guilty of the misconduct, i.e., the hearing Examiner "believes C O 1 Lobdell's report over Jefferson's denial..", is so vague that it constitutes a violation of the minimum requirements of DC-ADM 801, VI., I., 4 which states, in pertinent part: "If the inmate is found guilty, a written summary of the hearing will be prepared that will include the facts relied upon by the Hearing Examiner to reach the decision, and the reason for the decision. The summary shall also include findings of fact concerning the testimony of each witness presented" and also violates the holding of the Third Circuit Court, in Dyson V. Kocik, 689 F.2d 466 (3d Cir. 1982) wherein the Court held that where the inmate was found guilty of possessing contraband and issued a written statement indicating "inmate is guilty of misconduct as written" 689 F.2d at 468 "the rationale which supports the finding is so vague that the verdict constitutes a violation of the minimum requirements of due process." 689 F.2d at 468. See also Redding V. Fairman, 717 F.2d 1105, 1116 (7th Cir. 1983); Hayes V. Walker, 555 F.2d 625, 633 (7th Cir. 1977) ("Rather than pointing out the essential facts upon which inferences were based, the committee merely incorporated the violation report and the special investigator's report. This general finding does not ensure that prison officials will act fairly.).

Plaintiff, in support of his claims that Defendants have violated his rights to Equal Protection, under the Fourteenth Amendment, cites the following cases which indicate the facts stated in the Third Amended Complaint, at ¶¶ 48; and 83 - 85 sufficiently state a cognizable Equal Protection claim upon which relief can be granted.

The U.S. Supreme Court has consistently made clear that:

"[t]he purpose of the Equal Protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through its duly constituted agents." Village of Willowbrrook V. Olech, 120 S.Ct. 1073, 1074-75 (2000)(quoting Sioux City Bridge Co. V. Dakota County, 260 U.S. 441, 445, 43 S.Ct. 190, 67 L. Ed. 340 (1923)).

The Equal Protection Clause of the Fourteenth Amendment mandates that no state "shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This provision creates no substantive rights, See Vacco V. Quill, 521 U.S. 793, 799 (1997). Instead, it "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas V. Cleburne Living Center, 473 U.S. 432, 439 (1985); see also Vacco, 521 U.S. at 799 (equal protection clause "embodies a general rule that states must treat like cases alike but may treat unlike cases accordingly.")

In the prison context the equal protection clause of the Fourteenth Amendment requires inmates to be treated equally, unless the unequal treatment bears a rational relationship to a legitimate penal interest. Hudson V. Palmer, 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed. 2d 393 (1984).

Federal Courts have held:

The Equal Protection Clause prohibits arbitrary and irrational discrimination even if no suspect class or fundamental right is implicated. Muller V. Costello, 187 F.3d 298 (C.A. 2 (N.Y.) 1999).

A class of one is likely to be the most vulnerable of all, and we do not understand therefore why it should be denied the protection of the Equal Protection Clause. Esmail V. Macrane, 53 F.3d 176, 179 (7th Cir. 1995).

In light of the legal principles pronounced in the above-mentioned

Equal Protection Clause cases Plaintiff asserts that: (1) the facts presented in

¶ 48 of the Third Amended Complaint (Doc. # 39)(i.e., that other PA DOC prisoners

who wrote poetry — which the PA DOC published in a special book — similar to

Plaintiff's poetry were not subjected to retaliatory adverse actions such as

Plaintiff has been subjected to for the views expressed in his poetry), (2) the

facts presented in ¶ 83 (id.)(i.e., that participants of PA DOC religious pro-

grams such as A/A and N/A are rewarded for participating in said religious pro-

grams while Defendants refuse to provide Plaintiff with any reward for participa-

ting in Islamic religious programs), and (3) the facts presented in ¶¶ 83 - 85

(id.)(that prison officials refused to use existing Islamic religious programs at

SCI-Albion, which do not offend Plaintiff's religious sensibilities, to satisfy

Plaintiff's prescriptive programming needs in the same way that prison officials

use A/A and N/A religious programs to meet the prescriptive programming needs

of prisoners who embrace the religious doctrine of A/A and N/A) state cognizable

claims of violations of the Equal protection Clause upon which relief can be

granted, and, therefore Defendants' Motion to Dismiss Plaintiff's Equal

Protection claims should be denied.


### E. PLAINTIFF HAS ALLEGED SUFFICIENT FACTS IN THE THIRD AMENDED COMPLAINT TO CAUSE ALL OF THE DEFENDANTS NAMED IN THE CAPTION OF THIS DOCUMENT TO BE LIABLE IN THIS ACTION

Plaintiff must begin addressing this issue by identifying, and correct-

ing, the erroneous statements and distorted characterizations of Plaintiff's case

which are present in the arguments on this issue in Defendants' Brief (Doc. # 68).

Defendants begin by asserting:

"In the instant action, individuals eight (sic) have been named
solely in their supervisory capacities: Wolfe has been named in his
capacity as Superintendent; Beard has been named in his capacity as
DOC Secretary; McKissock and Hametz have been named in their capaci-
ties as Unit Managers; James and Burks have been named in their capa-
cities as Chief Grievance Coordinators; and Barnett and Moslak have
been named in their capacities as Hearing Examiners. (See Docket,
generally)." (Defendants' Brief at page 15, Doc. # 68).

Plaintiff asks the Court to note that ¶ 18 of the Third Amended Complaint states:

"each defendant is sued individually and in his or her official capacity. At all

times mentioned in this complaint each defendant acted under color of state law."

Therefore, notwithstanding Defendants' statement to the contrary, the eight (8)

defendants mentioned in defense counsel's argument have not been named solely in

their supervisory capacities.

Defendants also assert:

"Plaintiff does not allege that any of these eight individuals participated in the alleged constitutional violations he presents, nor that any of these individuals had actual knowledge of and gave their acquiescence to any violative conduct. In fact, Plaintiff's Third Amended Complaint makes absolutely no reference to defendants Beard, James, Burks, Moslak and Barnett. (See Third Amended Complaint, generally). As such, Plaintiff's claims against these individuals should be dismissed." (Defendant's Brief at page 15, Doc. # 68).

Plaintiff respectfully asserts that this Courts reading of the Third Amended Complaint (Doc. # 39) has informed the Court that said complaint sufficiently alleges that all of the defendants named in the caption of this document, including the eight (8) mentioned in the instant argument of defense counsel: (1) participated in the constitutional violations, (2) had actual knowledge of the constitutional violations, (3) gave their acquiescence to the violative conduct, and (4) that the Third Amended Complaint (Doc. # 39), notwithstanding Defendants' statements to the contrary, mentions these individual defendants by their names, their offices and by their unconstitutional actions at ¶¶ 4 - 17; 29; 56; 57; 60; 61; 69 - 71; 73; 88; 90; 92; 93; 98 - 101; 104; 105; 108; 109; & 110 - 115 and, therefore, Defendants' request to dismiss Plaintiff's claims against these Defendants must be rejected and denied.

Defendants also assert:

"Plaintiff's sole allegation against defendants Wolfe, McKissock and Hametz is that they responded to grievances and/or inmate request to staff in a manner viewed by Plaintiff as unfavorable." (Defendants' Brief at page 15, Doc. # 68).

In reading the Third Amended Complaint (Doc. # 39) this Court has become acquainted with the fact that Plaintiff has described the defendants responses to his grievances and inmate requests to staff to be "unconstitutional", and not "unfavorable" as defense counsel asserts, an that, notwithstanding defendants' baseless assertion that Plaintiff's only allegation against defendants Wolfe, McKissock and

Hametz pertains to their unfavorable responses to plaintiff's inmate requests and grievances, the Third Amended Complaint actually alleges defendant Wolfe: (1) denied Plaintiff's appeal and thereby violated Plaintiff's right to Procedural Due Process in the February, 2002 Misconduct wherein Plaintiff had received a Misconduct Report and a Misconduct Sanction for allegedly violating an unwritten prison rule. (See ¶ 30, id.); (2) was among those superintendents, administrators and department heads who received a copy of Plaintiff's poems in late October, 2002 and joined the conspiracy to retaliate against Plaintiff for the views expressed in the poetry. (See ¶ 40, id.); (3) actually participated in advancing the conspiracy when he denied Plaintiff's Appeal in grievance # 41961, wherein Plaintiff had asserted his rights to Free Speech under the First Amendment. (See ¶ 55 - 56, id.); (4) actively participated in advancing the conspiracy to retaliate against Plaintiff for the views expressed in his poetry when he affirmed defendant Moslak's finding against Plaintiff when (a) said finding violated Plaintiff's right to Procedural Due Process and DC-ADM 801, and (b) he could not have been unaware that Lobdell had fabricated the Misconduct Report at issue. (See ¶ 73, id.); (5) encouraged, ratified and knowingly acquiesced in the actions of defendants McQuown, Boeh, Gamble and Snyder as described in ¶¶ 32 - 61 of the Third Amended Complaint, and did so with bad faith disregard of plaintiff's constitutional right to free speech. (See ¶ 98, id,); (6) had the power to prevent or aid in preventing said wrongs and knowingly, recklessly or with deliberate indifference and callous disregard of plaintiff's rights and failed or refused to do so.(See ¶ 99, id.); (7) directly or indirectly, under color of state law, approved or ratified the unlawful deliberate, malicious, reckless and wanton conduct of defendants McQuown, Boeh, Gamble, Snyder, McKissock, Hametz, Barnett and Moslak. (See ¶ 101, id.); and (8) acting under color of state law with total disregard for plaintiff's rights, after being informed that plaintiff objected to participating in certain programs

40

on religious grounds, violated the Establishment Clause of the First Amendment when he supported and condoned the punitive measures imposed upon plaintiff for his refusal to participate in religious programs which offended his religious beliefs. (See ¶ 113, id.). Similarly, the Third Amended Complaint actually alleges defendant McKissock: (1) was informed of, and discussed, plaintiff's religious objections to participating in DOC programs that were offensive to his beliefs with defendant Gamble and others for the first time in early December of 2001. (See ¶ 82, id.); and (2) with full knowledge of plaintiff's religious objections to said prescriptive programs defendant McKissock partially based her decision to raise plaintiff's custody level upon his religious objections to and his refusal to participate in said prescriptive programs and, thus, violated the Establishment Clause. (See ¶¶ 88; 104; 112; 113 & Exhibit "G". id.). And the Third Amended Complaint (Doc.# 39) actually alleges that defendant Hametz: (1) refused to acknowledge plaintiff's rights, pursuant to the First Amendment, to refuse to participate in religious and/or secular programs which were offensive to plaintiff's religious beliefs, when he affirmed the decision of defendant McKissock (to remove plaintiff from the honor block for refusing to participate in programs notwithstanding his well-known religious objections to said programs) in grievance # 58644 on 08/06/03. And, as is apparent from the facts presented within this paragraph, Defendants' assertion that: "Plaintiff's sole allegation against defendants Wolfe, McKissock and Hametz, is that they responded to grievances and/or inmate request to staff in a manner viewed by Plaintiff as unfavorable." is a false allegation which Plaintiff respectfully urges this Court to ignore.

Defendants also assert, "It has specifically been held by the Third Circuit that the filing of a grievance was not sufficient to show actual knowledge for personal involvement." (Defendants' Brief at page 15, Doc. # 68). Plaintiff asks the Court to note that more than the mere filing of a grievance

41

has been alleged instantly. Plaintiff's allegations, at ¶¶ 53 & 90, are that de-
fendant Boeh [in grievance # 41961 wherein defendant Boeh fabricated a response
to advance the conspiracy against Plaintiff in violation of Plaintiff's Free
Speech rights pursuant to 42 U.S.C.A. §§ 1981, 1983 & 1985] and defendant Hametz
[in grievance # 58644 wherein defendant Hametz ignored and/or abrogated Plaintiff's
First Amendment right to refuse to participate in State/DOC sponsored religious
programs] filed responses to each grievance which necessarily means they reviewed
the underlying claims of constitutional violations presented by Plaintiff and then
rejected the validity of said constitutional claims. Plaintiff does not dispute
Defendants' argument, pursuant to Rode V. Dellarciprete, 845 F.2d 1195, 1207 (3d
Cir. 1988), that "a defendant in a civil rights action must have personal involve-
ment in the alleged wrongs; liability cannot be predicated solely on the opera-
tion of respondeat superior." Plaintiff, however, has not attempted to hold or to
make any defendant in this action liable based solely on the theory of respondeat
superior. Plaintiff believes all of the defendants named in the caption of this
document are liable in this action due to Plaintiff's claims in the Third Amended
Complaint (Doc. # 39) which show the personal involvement of all fourteen (14) of
the defendants named in this action via Plaintiff's allegations which indicate
that: (1) the defendant participated directly in the alleged constitutional viola-
tion, (2) the defendant, after being informed of the violation through a report or
appeal, failed to remedy the wrong, (3) the defendant created a policy or custom
under which the unconstitutional practices occurred, or allowed the continuance
of such a policy or custom, (4) the defendant was grossly negligent in supervising
subordinates who committed the wrongful acts, or (5) the defendant exhibited de-
liberate indifference to Plaintiff's rights by failing to act on information in-
dicating that unconstitutional acts were occurring.

Accordingly, Plaintiff's claims in ¶¶ 19 - 31; 98; 99; 105; 107 & 109

of the Third Amended Complaint, related to the 2002 Misconduct Report, cause defendants Clement, Barnett and Wolfe to be liable, for violations of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment, under 42 U.S.C.A. § 1983.

Plaintiff's claims in ¶¶ 32 - 61; 98 - 103; 105, 106; 108 & 110 of the Third Amended Complaint, related to the conspiracy to retaliate against Plaintiff because of the views expressed in his poetry; and in ¶¶ 62 - 74 (id.), related to the 2004 Fabricated/Retaliatory Misconduct Report, cause defendants Gamble, Snyder, McQuown, Boeh, Wolfe, James, Beard, Lobdell and Moslak to be liable, for violations of Plaintiff's First Amendment Right to Free Speech and/or his Fourteenth Amendment Rights to Due Process and Equal Protection, pursuant to 42 U.S.C.A. §§ 1981, 1983 & 1985.

Plaintiff's claims in ¶¶ 75 - 94; 99 - 101; 104; 105 & 111 - 115 of the Third Amended Complaint, related to PA DOC's prescriptive programs, cause defendants Gamble, Snyder, McKissock, Hametz, Burks, Wolfe and Beard to be liable, for violations of the Religious Clauses of the First Amendment, pursuant to 42 U.S.C.A. § 1983.

(See Lewis V. Delaware County, 109 F.Supp. 2d 406, 414-15 (E.D. Pa. 2000)(Rode V. Dellarciprete, 845 F.2d 1095 (3d Cir. 1988) allowed non-prison officials to escape liability predicated upon respondeat superior while prison officials personal involvement caused them to be liable under 42 U.S.C.A. §§ 1981, 1983 & 1985).

In light of the fact that Plaintiff's claims in the Third Amended Complaint sufficiently allege the personal involvement of all fourteen (14) of the defendants named in this action, Plaintiff respectfully urges the Court to deny Defendants' request to dismiss Plaintiff's claims against any of said defendants.

## IV. CONCLUSION

WHEREFORE: It is respectfully requested that Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint be denied in favor on Plaintiff.

Respectfully submitted

*Leonard C. Jefferson*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the enclosed

Plaintiff's Motion Opposing Defendants' Motion To Dismiss Plaintiff's Third

Amended Complaint, and, Brief In Support Of Plaintiff's Motion Opposing Defendants'

Motion To Dismiss Plaintiff's Third Amended Complaint have been mailed, via

first-class mail, on this 5th day of December, 2005, addressed to Deputy Attorney

General Christian D. Bareford, Office of Attorney General, 6th Floor, Manor Plaza,

564 Forbes Avenue, Pittsburgh, PA 15219.

*Leonard C. Jefferson*

Leonard C. Jefferson, CL-4135
10745 Rt. 18
Albion, PA 16475-0002