IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,
        Plaintiff,

V.                                        C.A. NO. 04-44 ERIE

WILLIAM WOLFE, et al,
        Defendants.

DEFENDANTS' SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

NOW COMES Plaintiff, LEONARD C. JEFFERSON, pursuant to Rules 33 and 34, Fed.R.Civ.P., and submits the following interrogatories and requests for documents to the Defendants. You are directed to answer each of the interrogatories in writing under oath, and produce each of the requested documents for inspection and copying within 30 days of service.

1. What are the names of the programs that are listed as being "areas of concern" and/or "issues to be addressed" on the Prescriptive Program Plans (DC-43) which were prepared in July of 2002 and 2003 for Plaintiff?
   SEE ATTACHED SHEET FOR RESPONSES.

2. Would you please explain the logic and/or rationale and the valid penological objective behind the decisions to have Plaintiff participate in each of the programs named in the response to the previous question.

3. What are the names of the people or groups who developed each of the programs named in the response to question number 1?

4. What authority does the Pennsylvania Department of Corrections (PA DOC) have to make a determination that the prescriptive programs named in response to question number 1 are more appropriate for meeting Plaintiff's so-called rehabilitative needs than the teachings and practices of the religion of al-Islam?

5. Plaintiff, and more than one and a half billion other people, believe that there is no god other than Allaah and that Allaah revealed the religion of al-Islam to mankind, through the Prophet Muhammad, as the proper code of

conduct, the right and straight way, by which human beings should conduct themselves and their affairs. Will you please explain the rationale of/for the PA DOC's belief, and/or its professional opinion, that the programs named in response to question number 1 are superior, in their power to "rehabilitate," than the code of conduct and morals of the religion of al-Islam.

6. Do any of the people or groups named in your response to question number 3 believe as Plaintiff believes (i.e., that there is no god other than Allaah and that Allaah revealed the religion of al-Islam to mankind, through the Prophet Muhammad, as the proper code of conduct, the right and straight way, by which human beings should conduct themselves and their affairs) or are the people and/or groups who created the programs named in your response to question number 1 influenced by other than Islamic ethics, morals and traditions?

7. Prior to implementing its array of prescriptive programs, did any official from the PA DOC attempt to determine whether or not the persons or groups named in your response to question number 3 had consulted with any Muslims, prior to or while creating and/or designing the rehabilitation programs, to determine if the content of said programs would be deemed offensive by Muslims?

8. Is Civil Action No. 04-44 ERIE the first lawsuit against the PA DOC wherein a Muslim has raised issues related to religious-based objections to PA DOC prescriptive programs?

9. Is it true that, during the past 40 years, the state prison system in Pennsylvania has recognized, and then took steps to accommodate, the religious obligations of its Muslim prisoners by: (a) allowing Holy Qur'ans and other Islamic books and literature to be possessed by prisoners, (b) serving protein substitutes in meals wherein pork is served, (c) establishing observances of

weekly Jumu'ah Prayer Services and bi-annual Eid Prayers and Feasts, (d) facilitating the 30 day long fasting of Ramadaan, (e) allowing Muslims to wear religious head coverings and to possess prayer rugs and prayer beads, and (f) hiring permanent staff, who are Muslim, and who function as Imams to meet the needs of prisoners who happen to be Muslims?

10. Is it true that approximately 1 of every 4, or approximately 10,000 of the 40,000, prisoners in PA DOC custody identify al-Islam as the religion that they follow?

11. Is Defendant Beard willing to concede that it is highly probable that programs -- that were designed and implemented without any considerations of, or adjustments to meet, the unique religious requirements of Muslims -- such as the array or prescriptive programs presently used in the PA DOC, would contain elements, teachings, values and principles which would be offensive to Muslims?

12. Did any PA DOC employee write or file an Unusual Occurrence Report or write a Misconduct Report on 10/24/02 pertaining to Plaintiff?

13. If the answer to question number 12 is yes, please provide the name of the writer(s) of the report(s) and provide Plaintiff a copy of said report(s).

14. If a security captain was notified about Plaintiff's poetry on 10/24/02, please give the captain's name and provide Plaintiff with a copy of any report written by said captain pertaining to Plaintiff's poetry.

15. Name the staff members who were present at and participated in the 11/13/02 Support Team Meeting, whereat the decision was made to fire Plaintiff from the Chapel Clerk job, and provide Plaintiff with a copy of any/all written documents produced by each Support Team member related to Plaintiff's poetry and the Chapel Clerk job.

16. Was a book of prisoners' poetry, entitled IMAGES, produced, copyrighted and published by SCI-Graterford's Educational Program in 1997?

17. Did the Prison Literacy Project receive approval from the PA DOC to provide financial assistance for the publication and distribution of the book of prisoners' poetry described in question number 16?

18. Did the book described in question number 16 contain poetry written by African-American prisoners, who were confined in the PA DOC facility that is known as SCI-Graterford, that addresses the subject of racial injustice in the courts and/or in American society generally?

19. Did SCI-Graterford inmates: David "Rap" Brown, Calibre IIXM, Charles A.M. Coley, Glenn Cooley, John W. Griffin, Robert Hagood, Kevin Saleem Mines, Frank Ross, Richard X. Sutton and Karlester Young, Sr. write and possess the poetry that appeared in the book described in question number 16?

20. Did any of the inmates named in question number 19 receive any Misconduct Report related to writing, possessing or publishing their poetry? If yes, please provide Plaintiff with a copy of the Misconduct Report(s) and the findings of the Hearing Examiner in each Misconduct.

21. If any of the inmates named in question number 19 were employed in Institutional Jobs at the time when the book described in number 16 was published, copyrighted and distributed in 1997; were any of these inmates fired from their Institutional Jobs because of the views expressed in their poetry? If yes, please provide the names of those who were fired and the documents which were produced as a result of their being fired.

22. Please provide Plaintiff with a copy of the book described in question number 16 and explain the difference, if any, between the views expressed by the poetry written by the inmates named in question number 19 and the poetry which Plaintiff possessed on 10/24/02.

23. What is the address of the Prison Literacy Project that is mentioned in question number 17?

WHEREFORE Plaintiff respectfully requests prompt responses to the foregoing interrogatories and prompt receipt of the documents requested herein.

August 2, 2006

*Leonard C. Jefferson*
Leonard C. Jefferson, CL-4135
10745 Rt. 18
Albion, PA 16475-0002

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD C. JEFFERSON, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 04-44 E |
| WILLIAM WOLFE, ET AL., | ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
INTERROGATORIES AND REQUEST FOR PRODUCTION
OF DOCUMENTS**

1. Violence Prevention, Citizenship, Batterers Intervention, Long Term Offender, and Personal Responsibility.

2. All inmates are assessed upon entry into the PA DOC relative to programming needs and to formulate a correctional plan. This plan is reviewed and revised as necessary each year during the annual review. Programming needs are determined based upon a variety of factors such as instant offense, criminal history, nature of offenses, institution behavior, social history, assessed education level, work history, psychological report and interview by staff. The psychological objective being to offer appropriate programs to the individual that will address issues that led to criminal behavior and, thus, reduce the likelihood of further criminal behavior and victimization upon release to the community. This is as much our public safety responsibility as are the fences and walls that hold those committed to our care. Further, research indicates that exposure to appropriate programs can reduce the likelihood of re-offending.

3. All of these programs were developed in-house within the DOC and primarily within the Bureau of Inmate Services (BIS). Many of the employees who initiated, developed and/or

coordinated these programs are retired or no longer employed in Inmate Services or the DOC. The Violence Prevention program was developed by a committee including Joel Barrows, Lois Brown Velkoff, Melissa Cidade, Sara Crawford, Roxanna Dinesen, Elizabeth Eppley, Greg Gaertner, Rex Hildebrand, Barbara Hollibaugh, Eric Johnson, John Johnson, and Bob Wienckoski.

Citizenship is no longer an active program offered by the DOC; the primary staff coordinator for this program was Jim Tice who is no longer employed by the DOC. It was developed by the BIS with Dave Roberts, Geoff Lucas, Paul Thomas, and others (unknown). Prior to 2000 it was piloted at three institutions. In 2001, it was scheduled to begin at all remaining institutions.

The Batterers program is loosely based upon the "Duluth Model"- a program developed by the Domestic Abuse Intervention Project in Duluth MN approximately 20 years ago.

The Long Term Offenders Program was initiated by Harvey Bell after the inmate escapes at SCI-Dallas and SCI-Huntingdon; Mr. Bell oversaw this program until his retirement. The following contributed information for the LTO Pilot Program, which has run since 10/05: Donna Giordano, Joan Mann, Rebecca Bollinger, and Amy Florence.

The responding defendants do not know who developed the Personal Responsibility Program which was never a standardized program within the DOC. It may have been a program that was developed and implemented by a particular State Correctional Institution independently from the BIS programming.

None of the noted programs are faith-based, and therefore it is not likely that any religious group was involved in or with the development of these programs.

4. The PA DOC has a public safety responsibility to offer programs to inmates that are likely to reduce the chance of re-offending. While involvement in religious activities is certainly a positive pursuit supported by staff and may help the individual adopt a more pro-social lifestyle upon release, such activity does not address the criminogenic factors that caused individuals to commit criminal acts. Research indicates that programs and/or activities which do not address these criminogenic factors are less likely to be effective in reducing future criminal behavior.

2

5. See response to number 4 above.

6. The programs referenced in #1 are not faith based, nor based upon any specific religion.

7. No such consultation occurred because no religious teaching was a part of these programs.

8. The responding defendants do not recall and they do not keep records of such information.

9. Yes.

10. This request is Objected to as it is over broad, unduly burdensome and seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence. Moreover, records are not kept in a manner that would make this information readily obtainable.

11. No. As stated, these are not faith based programs. Defendant Beard further objects to plaintiff's mischaracterization of the prescriptive programs identified. There would not have been any purposeful intent to design or implement these programs without any consideration for religious requirements of Muslims or any other faith because the programs are not faith based.

12. No.

13. N/A.

14. A response to this request has not yet been received. As soon the response is received, it will then be provided.

15. Present were Tricia Gamble – counselor, Glenn McQuown – Chaplain, Michael Snider – Acting Unit Manager. The request for the vote sheet is Objected to as seeking information that is privileged and confidential. Providing this document could affect plaintiff's treatment program as the information contained within could be manipulated by the plaintiff.

16. A response to this request has not yet been received. As soon the response is received, it will then be provided.

17. A response to this request has not yet been received. As soon the response is received, it will then be provided.

18. This request is Objected to as seeking information that is irrelevant and not likely to lead to the discovery of admissible information. The book speaks for itself, in any event it appears that the plaintiff has seen or has possession of this publication.

19. This request is Objected to as seeking information that is privileged, confidential, irrelevant and not likely to lead to the discovery of admissible information as this relates to other inmates.

20. See response to number 19 above.

21. See response to number 19 above.

22. This request is Objected to as this seeks a copy of a publication. See also response to number 18 above.

23. A response to this request has not yet been received. As soon the response is received, it will then be provided.

                                                Respectfully submitted,

                                                THOMAS W. CORBETT, JR.
                                                Attorney General

| | |
|---|---|
| Office of Attorney General | Mary L. Friedline<br>Senior Deputy Attorney General |
| 6th Floor, Manor Complex | Attorney I.D. No. 47046 |
| 564 Forbes Ave. | |
| Pittsburgh, PA 15219 | |
| Phone: (412) 565-3520 | Susan J. Forney |
| Fax:   (412) 565-3019 | Chief Deputy Attorney General |

Date: September 19, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD C. JEFFERSON, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 04-44 E |
| WILLIAM WOLFE, ET AL., | ) |
| Defendants. | ) |

**DEFENDANTS' SUPPLEMENTAL RESPONSE TO**
**PLAINTIFF'S INTERROGATORIES AND REQUEST FOR**
**PRODUCTION OF DOCUMENTS**

14. No.

16. The defendants do not recall exactly when this publication was put out or specific information relating to the publication. Defendants do recall that a publication called Images was distributed at SCI Graterford quite some time ago.

17. The defendants do not recall specific information relating to this publication and cannot respond to this request.

23. There is no current address for the Prison Literacy Project. Volunteers are now coordinated though the literacy teacher at SCI Graterford.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

*Mary L. Friedline*
Mary L. Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA 15219
Phone: (412) 565-3520
Fax:    (412) 565-3019

Susan J. Forney
Chief Deputy Attorney General

Date: October 6, 2006

2

Leonard C. Jefferson, CL-4135
10745 Rt. 18
Albion, PA 16475-0002
October 16, 2006

Clerk's Office
U.S. District Court
P.O. Box 1820
Erie, PA 16507

          RE: JEFFERSON V. WOLFE, C.A. NO. 04-44 ERIE

Dear Clerk:

    Would you please file the enclosed:

    Plaintiff's Motion For Order Compelling Disclosure And For Appropriate Sanctions, with its Certification and a copy of Plaintiff's Interrogatories and Defendants' Response and Supplemental Response, and

    Plaintiff's Motion For Leave To Withdraw Plaintiff's Request For (470) Admissions

in the above-captioned matter.

    Thank you for your attention to this request.

                                          Respectfully

                                          Leonard C. Jefferson