IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA



LEONARD C. JEFFERSON,
      Plaintiff,

    V.                      C.A. NO. 04-44 ERIE  '07 JAN 18 AM 26

WILLIAM WOLFE, et al.,
      Defendants.

CLERK
U.S. DISTRICT COURT

<u>PLAINTIFF'S 01/16/07 RULE 37 MOTION</u>

    AND NOW comes plaintiff Leonard C. Jefferson pursuant to Rule 37,
Fed.R.Civ.P., and asserts the following under penalty of perjury.

    1. On 08/02/06 Plaintiff served PLAINTIFF'S INTERROGATORIES AND REQUEST
FOR PRODUCTION OF DOCUMENTS (hereinafter First Request) upon Defendants.

    2. ¶ 15 of the First Request asked Defendants to: "Name the staff members
who were present at and participated in the 11/13/02 Support Team Meeting,
whereat the decision was made to fire plaintiff from the Chapel Clerk job, and
provide Plaintiff with a copy of any/all written documents produced by each
Support Team member related to Plaintiff's poetry and the Chapel Clerk job."

    3. Defendants responded to ¶ 15 on 09/19/06 as follows: "Present were
Tricia Gamble - counselor, Glenn McQuown - Chaplain, Michael Snider - Acting
Unit Manager. The requested vote sheet is objected to as seeking information
that is privileged and confidential. Providing this document could affect
plaintiff's treatment program as the information contained within could be
manipulated by plaintiff."

    4. Where a prisoner's claim (such as Plaintiff's) challenges administra-
tive decision was made for retaliatory purpose is supported by specific and
factual allegations which amount to a persuasive case the prisoner is usually
afforded full discovery. See <u>Flaherty v. Coughlin</u>, 713 F.2d 10 (2nd Cir. 1983)).

    5. Plaintiff believes that the retaliation claim stated at ¶¶ 32 - 61

of his Third Amended Complaint, Doc. # 39, and its Exhibits A, B, C, C-1, D and
E (wherein four (4) different prison officials identify the poetry as the
reason for the actions taken against Plaintiff) amount to and establish a per-
suasive case which entitles Plaintiff to full discovery which includes the
documents sought via ¶ 15 of the First Request.

6. Plaintiff further asserts that these documents, which contain only
reports of Plaintiff's prior conduct cannot be manipulated by Plaintiff in any
way, and, the requested documents are neither privileged nor confidential
since they are present in the PA DOC files where they are accessible to any
and every DOC employee who has access to prisoners' files.

7. Defendant McQuown, on 01/09/07, responded by denying the truth of
Plaintiff's (12/05/06 Request for Admissions) statement number 5, which states:
"Defendant McQuown admits that during the Support Team Meeting, he, Defendant
Gamble and Defendant Snyder each questioned Plaintiff about the poetry, and
nothing else."

8. Plaintiff asserts the documents sought at ¶ 15, which Defendants have
refused to provide, will conclusively demonstrate that the poetry was, in fact,
the only subject discussed during the 11/13/02 Support Team Meeting; and that
this showing is essential to Plaintiff's ability to demonstrate that prison
officials had no other reason for firing Plaintiff from the Chapel Clerk job.

9. On 10/29/06 Plaintiff served a copy of PLAINTIFF'S THIRD INTERROGA-
TORY AND SECOND REQUEST FOR PRODUCTION OF DOCUMENTS (hereinafter Second
Request) on Defendants.

10. In ¶ 2(e) of the Second Request Plaintiff asked for "a copy of each
document generated prior to, during and after the Support Team Meeting con-
ducted by the Chaplaincy Department during the Summer of 2002 concerning
Plaintiff."

11. Defense Counsel's 11/30/06 Response to Plaintiff Second Request contained neither any mention of nor the documents requested in ¶ 2(e).

12. Plaintiff sent a letter to Defense Counsel, Mary L. Friedline, with a copy to Judge Baxter, on 12/05/06 RE: FAILURE TO PRODUCE REQUESTED DOCUMENTS.

13. On 01/09/07 Defense Counsel, Christian D. Bareford, mailed a letter to Plaintiff which, in pertinent part, stated:

> "2(e): requests all documents generated prior to, during and after his Support Team Meeting, there is no additional paperwork to provide."

14. Counsel's use of the word "additional" is inappropriate since it implies some of the requested documents, concerning the Chaplaincy Department's 2002 Support Team Meeting, have been given to Plaintiff.

15. Plaintiff has not received one single document from Defendants related to the request in ¶ 2(e).

16. Notwithstanding the fact that Plaintiff was elevated to "Inmate Peer Leader" status at the Chaplaincy Department's Support Team Meeting during the Summer of 2002, Defendant McQuown, in his 01/09/07 responses to Plaintiff's Request for Admissions #'s 12 and 13, denied the truth of the following statements:

> (11) Defendant McQuown admits that the Support Team members decided Plaintiff's conduct and character was such that it warranted his elevation to "Inmate Peer Leader" status., and

> (12) Defendant McQuown admits the Support Team actually granted Plaintiff "Inmate Peer Leader" status.

17. Plaintiff asserts that the documents requested at ¶ 2(e) are essential to his ability to demonstrate (in the face of Defendants self-serving/ disingenuous conflicting statements) Defendants did, in fact, determine that the excellence of Plaintiff's conduct and character was such that it led prison officials to elevate him to "Inmate Peer Leader" status around ninety (90) days prior to the discovery of his poetry. (See # 4 above).

18. Where a prisoner's claim (such as Plaintiff's) challenges administrative decision was made for retaliatory purpose is supported by specific and factual allegations which amount to a persuasive case the prisoner is usually afforded full discovery. (See ¶¶ 4 and 5 above).

19. On 12/05/06 Plaintiff served his REQUEST FOR ADMISSIONS FROM DEFENDANT BEARD upon Defense Counsel. (See Attachment "A" herein).

20. ¶ 3 of the 12/05/06 request stated:

> "The forty-nine (49) verses of the Holy Qur'an - which Plaintiff attached to his 08/02/06 Request For Judicial Notice as Attachment 3 - indicate a religious prohibition against "believers" listening to and/or following the teachings of "non-believers."

(See Attachment "B" herein).

21. On 01/09/07 Defendant Beard responded to ¶ 3 as follows:

> "This statement is Objected to as an improper admission request. It improperly seeks agreement, not with statements of fact, but with plaintiff's ultimate arguments, conclusions, and interpretations of his religious creed. Further, the documents ... identified by the plaintiff appear to be something typed by the plaintiff and are his versions of the verses of the Holy Qur'an."

(See Attachment "A" herein).

22. The text of the Holy Qur'an in its original form is written in the Arabic Language.

23. It is highly likely that Defense Counsel does not read and/or understand Arabic and would have raised an Objection to verses presented in Arabic.

24. Thus, Plaintiff presented an English translation of the relevant verses.

25. There are numerous English translations of the Holy Qur'an available, including translations by A. Yusef Ali, Muhammad Pickthall, Dr. Kahn, King Fadh, and what Defense Counsel alleges to be Plaintiff's "version of the verses of the Holy Qur'an."

26. Defense Counsel could raise an identical objection to Yusef Ali's

translation based upon the assertion that is Yusef Ali's "version of the verses of the Holy Qur'an," and repeat the objection with the translations of Muhammad Pickthall, Dr. Kahn, King Fadh and/or any/all additional translations.

27. The Court will note that, immediately after the text of each verse typed on Attachment "B", there is a parenthesized citation of chapter and verse(s) which directs Defendants to relevant wordings and their logical meanings in any translation of the Qur'an which Defendants find acceptable.

28. It has long been a fixed star in our constitutional constellation that no government officials, high or petty, have any authority whatsoever to declare orthodoxy in matters of religion. See West Virginia v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628, 1639 (1943).

29. The United States Supreme Court has rejected "the notion that to claim the protection of the Free Exercise Clause, one must be responding to the commands of a particular religious organization." See Frazee v. Illinois Department of Employment Security, 489 U.S. 829, 834 (1989).

30. Other Supreme Court and Third Circuit decisions have likewise held that religious beliefs need not be "orthodox" or "mainstream" to deserve First Amendment recognition.

> See Employment Division v. Smith, 494 U.S. 872, 887 (1990) (it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds); Thomas V. Review Board of Indiana Employment Security Division, 450 U.S. 707, 715 - 716 (1981)(the guarantee of free exercise is not limited to beliefs which are shared by all the members of a religious sect); and, DeHart v. Horn, 227 F.3d 47, 55 (3d Cir.2000)(finding that lower court's inquiry into whether prisoner's religious-based request for a strict vegetarian diet was shared by Buddhist doctrine "is simply unacceptable.")

31. Defendants are not able to show that the forty-nine (49) typed verses are not all but identical, in wording and meaning, to the corresponding verses in the Yusef Ali and King Fadh translations of the Qur'an that the PA DOC make available to prisoners at SCI-Albion.

32. Defendant Beard has Objected to Plaintiff's requests for admissions

at ¶¶ 3, 8, 18, 22, 23, 24, 25, 26, 27, 28 and 29 and seeks to justify and

support his objections as follows:

> "This statement is objected to as an improper admission re-
> quest. It improperly seeks agreement, not with statements of fact
> but with Plaintiff's ultimate arguments, conclusions, and interpreta-
> tions of his religious creed."

(See Attachment "A")

33. Rule 36 of the Fed.R.Civ.P., in pertinent part, states:

> "(a) ... A party may serve ... a written request for the admission
> ... of the truth of any matter within the scope of Rule 26(b)(1) ...
> that relate to statements or opinions of fact or of the application
> of law to facts ..."

> "...A party who considers that a matter of which an admission has
> been requested presents a genuine issue for trial may not, on that
> ground alone, object to the request; ..."

34. Plaintiff asserts that his requests for admissions at ¶¶ 3, 8, 18, 22

23, 24, 25, 26, 27, 28 and 29 are all proper request for admissions pursuant

to Rules 36 and 26(b)(1), and that Defendant Beard's Objections should be over-

ruled.

WHEREFORE in light of the foregoing Plaintiff respectfully request that

this Court issue an Order that: (1) requires defendants to 'provide Plaintiff

with a copy of any/all written documents produced by each Support Team member

related to Plaintiff's poetry and the Chapel Clerk job" in response to Plain-

tiff's request at ¶ 15 of his (08/02/06) First Request; (2) requires Defen-

dants to provide Plaintiff with "a copy of each document generated prior to,

during and after the Support Team Meeting conducted by the Chaplaincy Depart-

ment during the Summer of 2002 concerning Plaintiff" in response to Plaintiff's

request at ¶ 2(a) of his (10/29/06) Second Request; (3) overrules Defendant

Beard's objections to ¶¶ 3, 8, 18, 22, 23, 24, 25, 26, 27, 28 and 29 of Plain-

tiff's 12/05/06 Request For Admissions; and (4) requires Defendant Beard to

either admit or deny the truth of the statements at ¶¶ 3, 8, 18, 22, 23, 24, 25, 26, 27, 28 and 29 of Plaintiff's Request For Admissions.

Respectfully submitted

*Leonard C. Jefferson*

I HEREBY SWEAR UNDER PENALTY OF PERJURY, PURSUANT TO U.S.C.A. § 1746, THAT THE FOREGOING IS TRUE AND CORRECT UPON MY PERSONAL KNOWLEDGE.

*Leonard C. Jefferson*

Dated: 01/16/07

Leonard C. Jefferson, CL-4153
10745 Rt. 18
Albion, PA 16475-0002

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing

PLAINTIFF'S 01/16/07 RULE 37 MOTION was placed in the mailbox on B/B Unit at

SCI-Albion on this 16th day of January, 2007 for delivery via first-class U.S.

Mail to:


Mary L. Friedline
Senior Deputy Attorney General
Office of Attorney General
6th Floor, Manor Plaza
564 Forbes Avenue
Pittsburgh, PA 15219


Dated: 01/16/07

*Leonard C. Jefferson*
Leonard C. Jefferson, CL-4135
10745 Rt. 18
Albion, PA 16475-0002

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,
                PLAINTIFF,

        V.                                      C.A. NO. 04-44 ERIE

WILLIAM WOLFE, ET AL,
                DEFENDANTS

DEFENDANT'S RESPONSE TO
PLAINTIFF'S REQUESTS FOR ADMISSIONS FROM DEFENDANT BEARD

        AND NOW COMES PLAINTIFF LEONARD C. JEFFERSON, PURSUANT TO
FED. R. CIV. P. RULE 36, AND ASKS DEFENDANT BEARD TO EITHER ADMIT OR DENY
EACH OF THE FOLLOWING STATEMENTS UNDER OATH WITHIN THIRTY (30)
DAYS OF SERVICE OF THIS REQUEST.

        DEFENDANT BEARD ADMITS:

        1. THE PA DOC HAS THE RESPONSIBILITY OF MEETING WHATEVER
IT DEEMS PLAINTIFF'S PRESCRIPTIVE PROGRAMMING NEEDS TO BE IN A
MANNER THAT DOES NOT OFFEND HIS RELIGIOUS BELIEFS.
        SEE ATTACHED SHEET FOR RESPONSES.

        2. DEFENDANT ROBERT BOEH WAS RESPONSIBLE FOR IMPLEMENTING
PRESCRIPTIVE PROGRAMS AT SCI-ALBION AT ALL TIMES THAT ARE
RELEVANT TO THIS LAWSUIT.

        3. THE FORTY-NINE (49) VERSES OF THE HOLY QUR'AN

ATTACHMENT "A"

— WHICH PLAINTIFF ATTACHED TO HIS 08/02/06 REQUEST FOR JUDICIAL NOTICE AS ATTACHMENT 3 — INDICATE A RELIGIOUS PROHIBITION AGAINST "BELIEVERS" LISTENING TO AND/OR FOLLOWING THE TEACHINGS OF "NON-BELIEVERS."

4. THE PA DOC DID NOT, AT THE TIMES RELEVANT TO THIS LAWSUIT, OFFER ANY PRESCRIPTIVE PROGRAMS THAT WERE BASED UPON ISLAMIC BELIEFS AND TRADITIONS OR THAT WERE TAUGHT FROM AN ISLAMIC PERSPECTIVE.

5. PLAINTIFF'S RELIGIOUS BELIEFS PROHIBIT HIM FROM PARTICIPATING IN THE PRESCRIPTIVE PROGRAMS LISTED ON HIS DC-43 SINCE NONE OF THE PRESCRIBED PROGRAM ARE PRESENTED BY MUSLIMS OR FROM AN ISLAMIC PERSPECTIVE.

6. THE PA DOC'S PRESCRIPTIVE PROGRAM POLICY, IN 2003, DID NOT CONTAIN ANY PROVISION FOR PROVIDING ALTERNATIVE PROGRAMMING TO PLAINTIFF IN LIGHT OF HIS RELIGIOUS OBJECTIONS TO THE PROGRAMS LISTED ON HIS DC-43.

7. THE OBJECTIVE OF PA DOC PRESCRIPTIVE PROGRAMS IS TO PERMANANTLY ~~PERMANTLY~~ REPLACE THE INMATES' CRIMINAL BEHAVIORS WITH NON-CRIMINAL BEHAVIORS.

ATTACHMENT "A"

8. The criminal behaviors which the PA DOC intends to eliminate via its prescriptive programs are described and identified as sinful behaviors in the Holy Qur'an, in the Holy Bible, and in religious discourse generally.

9. PA DOC policy, at the times relevant to this action, indicated the rehabilitation of Plaintiff must be accomplished via the prescriptive programs listed on his DC-43.

10. PA DOC policy, at the times relevant to this action, implied the rehabilitation of Plaintiff could not be accomplished via the teachings and practices of the Religion of Al-Islam.

11. The essence of Defendants' position on Plaintiff's religious claims is the Defendants' asserted belief that the total rehabilitation of Plaintiff cannot be accomplished by the Religion of Al-Islam but his total rehabilitation can be accomplished by the prescriptive programs listed on his DC-43.

12. The PA DOC endorses non-religious programs, over religious programs, for accomplishing the rehabilitation of prisoners.

13. The PA DOC's denial of Plaintiff's rights to

Attachment "A"

OBSERVE THE TENETS OF HIS FAITH AT ISSUE IS NOT BASED UPON ANY POTENTIAL THREAT TO THE SECURITY AND/OR ORDERLY OPERATION OF THE PRISON.

14. THE CORRECTIONAL GOAL, RELATED TO PLAINTIFF'S RELIGIOUS CLAIMS, CAN EASILY BE FULFILLED BY HAVING THE STATE-EMPLOYED IMAM AT SCI-ALBION ADDRESS (WITH PLAINTIFF) ANY AREA OF CONDUCT WHICH PRISON OFFICIALS PERCEIVE A NEED TO ADDRESS, IN THE SAME MANNER THAT UNACCEPTABLE CONDUCT IS ADDRESSED IN THE EXISTING PA DOC PRESCRIPTIVE PROGRAMS.

15. HE AUTHORIZED THE POLICIES WHICH LED TO PLAINTIFF'S CUSTODY LEVEL BEING RAISED FROM CL-2 TO CL-3 ON 07/18/03.

16. HE AUTHORIZED THE POLICIES WHICH LED TO PLAINTIFF BEING TRANSFERRED FROM HOUSING ON A/A-UNIT TO HOUSING OF F/B-UNIT ON 07/16/03.

17. HE AUTHORIZED THE STATEMENTS ON PAGE 61 OF THE 2005 EDITION OF THE INMATE HANDBOOK THAT INDICATE TO "BE ELIGIBLE TO RECEIVE THE GENERAL LABOR POOL ALLOWANCE ...YOU MUST ... PARTICIPATE IN RECOMMENDED PROGRAMS.

18. PARTICIPATION IN PRESCRIPTIVE PROGRAMS IS, IN FACT

ATTACHMENT "A"

AND IN PRACTICE, MANDATORY SINCE BENEFITS RECEIVED BY THOSE WHO PARTICIPATE CANNOT BE OBTAINED, VIA OTHER MEANS, BY THOSE WHO OBJECT TO PARTICIPATING IN SAID PROGRAMS.

19. PA DOC POLICY COERCED PLAINTIFF TO ATTEND PRESCRIPTIVE PROGRAMS, WHICH ARE OFFENSIVE TO HIS RELIGIOUS BELIEFS, SINCE DEFENDANTS FAILED TO PROVIDE ALTERNATIVE PROGRAMS WHEREBY PLAINTIFF COULD OBTAIN THE SAME BENEFITS THAT ARE AVAILABLE TO THOSE WHOSE RELIGIOUS BELIEFS WERE NOT OFFENDED BY THE OFFERED/PRESCRIBED PROGRAMS.

20. PA DOC POLICY, AS AN UNINTENDED CONSEQUENCE, DISCRIMINATES AGAINST PLAINTIFF BY FAILING TO PROVIDE PRESCRIPTIVE PROGRAMMING THAT DOES NOT OFFEND HIS RELIGIOUS BELIEFS WHILE, SIMULTANEOUSLY, PROVIDING PRESCRIPTIVE PROGRAMMING THAT DOES NOT OFFEND THE RELIGIOUS BELIEFS OF THE PA DOC'S NON-MUSLIM PRISONERS.

21. PA DOC POLICY, AS IT RELATES TO PLAINTIFF'S RE-LIGIOUS CLAIMS, CAUSES PLAINTIFF TO BE TREATED DIFFERENTLY THAN HIS SIMILARLY SITUATED PEERS.

22. PA DOC PRESCRIPTIVE PROGRAMS ADDRESS FUNDA-MENTAL QUESTIONS AND MORAL ISSUES SUCH AS WHAT IS RIGHT AND/OR WRONG.

ATTACHMENT "A"

23. THE FULL ARRAY OF PA DOC PRESCRIPTIVE PROGRAMS IS AIMED AT PROVIDING ANSWERS TO QUESTIONS CONCERNING THE NATURE OF THE INMATE, THE NATURE OF THE WORLD THE INMATE LIVES IN AND MUST INTERACT WITH, AND THE WAY TO A SUCCESSFUL AND PRODUCTIVE LIFE.

24. THE CHAIN OF COMMAND, THE STRUCTURE AND ORGANIZATION, THE UNIFORMS WORN BY CORRECTIONAL OFFICERS, THE PRISON GARB AND STATE SHOES THAT INMATES ARE REQUIRED TO WEAR, DIPLOMAS AND CERTIFICATES, THE FLEET OF DARK BLUE VEHICLES, ISOLATED COMPLEXES OF BUILDINGS, LARGE PLOTS OF FENCED-IN LAND, ALL OF WHICH ARE MARKED WITH THE BOLD LETTERS D.O.C. OR BEAR THE PA DOC LOGO, ARE UNMISTAKABLE EXTERNAL SIGNS OF THE PA DOC.

25. PA DOC POLICY AS IT RELATES TO PRESCRIPTIVE PROGRAMS PROPOGATES THE IDEA (POSSIBLY AS AN UNINTENDED CONSEQUENCE) THAT ONE'S BELIEF IN GOD, AND RELIGIOUS TEACHINGS, IS NOT ENOUGH.

26. THE PA DOC'S PRESCRIPTIVE PROGRAMS ARE BASED UPON A BELIEF SYSTEM WHICH INCLUDES THE BELIEF THAT THE ORIGINA-TORS OF THE PROGRAMS HAVE FOUND THE RIGHT WAY, THE TRUTH, THE STRAIGHT PATH.

27. PLAINTIFF HAS BEEN, AND CONTINUES TO BE, SUBJECTED TO

ATTACHMENT "A"

ADVERSE CONSEQUENCES AS A RESULT OF HIS REFUSAL TO ACCEPT FAITH IN, AND SUBMIT TO THE MORAL TEACHINGS OF, THE MEN AND WOMEN WHO (BELIEVING THEY COULD IMPROVE UPON THE CODE OF CONDUCT AND THE SYSTEM OF MORALS REVEALED BY ALLAAH) CREATED THE PRESCRIPTIVE PROGRAMS THAT ARE LISTED ON PLAINTIFF'S DC-43.
(LISTED)

28. "FAITH IN MAN", AS OPPOSED TO "FAITH IN GOD" IS THE BELIEF SYSTEM FROM WHICH PA DOC PRESCRIPTIVE PROGRAMS FLOW.

29. PLAINTIFF HAS BEEN, AND CONTINUES TO BE, SUBJECTED TO ADVERSE CONSEQUENCES PURSUANT TO PA DOC POLICY AS A RESULT OF HIS REFUSAL TO VIOLATE, OR TO ABANDON, HIS FAITH IN ALLAAH AND HIS MESSENGER MUHAMMAD ﷺ.

30. HE IS NOT FAMILIAR WITH THE SPECIFIC TEACHINGS, PRINCIPLES, PRACTICES AND TRADITIONS OF THE RELIGION OF AL-ISLAM.

31. THAT PRIOR TO ADOPTING AND STATING HIS CONCLUSION — I.E., THAT THE RELIGION OF AL-ISLAM DOES NOT PROHIBIT (1) ENGAGING IN CRIMINAL THINKING, (2) ADOPTING AND/OR MAINTAINING CRIMINAL/ANTI-SOCIAL ATTITUDES, (3) ASSOCIATING WITH PEOPLE WHO ARE ENGAGED IN CRIMINAL CONDUCT, AND (4) POOR DECISION MAKING — HE DID NOT CONSULT WITH ANY UNBIASED MUSLIM WHO POSSESSED A

ATTACHMENT "A"

GOOD WORKING KNOWLEDGE OF THE SPECIFIC TEACHINGS, PRINCIPLES, PRACTICES AND TRADITIONS OF THE RELIGION OF AL-ISLAM THAT ARE RELEVANT TO THE ISSUES OF THIS CASE.

32. THE DOCUMENT, "RE: DC-ADM 804-FINAL REVIEW GRIEVANCE NO. 58644" DATED 10/06/03 (SEE EXHIBIT "I" OF PLAINTIFF'S THIRD AMENDED COMPLAINT, DOC#39), INDICATES PLAINTIFF EXHAUSTED THE ADMINISTRATIVE GRIEVANCE PROCEDURES CONCERNING HIS RELIGIOUS CLAIMS.

33. PA DOC RECORDS INDICATE ISLAM IS THE RELIGION CLAIMED BY PLAINTIFF (I.E., THAT HE IS A MUSLIM).

DECEMBER 5, 2006

Leonard C. Jefferson

LEONARD C. JEFFERSON, CL-4135

10745 RT. 18

ALBION, PA 16475-0002

ATTACHMENT "A"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,               )
                                    )
    Plaintiff,                   )
                                    )
        v.                    )    C.A. No. 04-44 E
                                    )
WILLIAM WOLFE, ET AL.,              )
                                    )
    Defendants.                  )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST
## FOR ADMISSIONS FROM DEFENDANT BEARD

1.  This statement is Denied.

2.  This statement is Denied as stated.  A Corrections Classification Program Manager is responsible for overseeing, implementing and managing treatment and support services in an adult correctional institution.  Defendant Boeh was the CCPM at SCI-Albion during the times at issue in the complaint.

3.  This statement is Objected to as an improper admission request.  It improperly seeks agreement, not with statements of fact, but with plaintiff's ultimate arguments, conclusions, and interpretations of his religious creed.  Further, the documents attached to the Judicial Notice identified by the plaintiff appear to be something typed by the plaintiff and are his version of the verses of the Holy Koran.

4.  This statement is Denied as stated.  The prescriptive programs offered by the DOC are not faith-based, and thus are not developed by or for any particular religious group or faith.

5.  This statement is Denied.

ATTACHMENT "A"

6. This statement is Denied as stated. The programs are not faith-based and thus, plaintiff does not have a valid or reasonable religious objection to his programming.

7. This statement is Denied as stated. The goal of the DOC in delivering its programs is to target and mitigate crime-producing risk and needs factors. The psychological objective in prescriptive programming is to offer appropriate programs that will address issues that led to criminal behavior and thus reduce the likelihood of further criminal behavior and victimization upon release to the community. In this regard, research indicates that exposure to appropriate programs can reduce the likelihood of re-offending.

8. This statement is Objected to as an improper admission request. It improperly seeks agreement, not with statements of fact, but with plaintiff's ultimate arguments, conclusions, and interpretations of his religious creed. Without waiving this objection, it should be noted that generally, some of the criminogenic factors that programs or activities intend to address with respect to plaintiff would include criminal thinking, anti-social attitudes, association with other offenders, and poor decision making.

9. This statement is Denied as stated. The DOC has a public safety responsibility to offer programs to inmates that are likely to reduce the chance of re-offending, and the DOC's programming therefore addresses the criminogenic factors that caused individuals to commit criminal acts. Involvement in religious activities is certainly a positive pursuit, which is also supported by staff and may help the individual adopt a more pro-social lifestyle upon release (although such activity does not address the criminogenic factors that caused individuals to commit crimes). Thus, there is no mandate that overall "rehabilitation" be accomplished only via a single program, route or activity.

10. This statement is Denied as stated for the reasons stated in responses 7 and 9.

ATTACHMENT "A"

11. This statement is Denied as stated for the reasons stated in responses 7 and 9.

12. This statement is Denied as stated for the reasons stated in 7, 8 and 9. As stated, while DOC's prescriptive programs are not religion based programs, religious activity is a positive pursuit and is supported.

13. This statement is Denied. Defendants have not denied plaintiff any right to observe the tenets of his religion. Further, the DOC's prescriptive programs serve valid DOC security and operational interests as well as interests of public safety.

14. This statement is Denied.

15. This statement is Denied. Department Policies are created generally to further the mission of the Department which is to protect the public by confining persons committed to our custody to safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens, while respecting the rights of crime victims. Plaintiff's actions or inactions led to his custody level change. While I generally authorize all Department policies, I have no personal knowledge of plaintiff's custody level change.

16. This statement is Denied. See response to number 15 above.

17. This statement is Denied as stated. While I generally authorize all Department policies and the quoted language is contained in the 2005 Edition of the Inmate Handbook, I do not believe it appears on page 61.

18. This statement is Objected to as an improper admission request. It improperly seeks agreement, not with statements of fact, but with plaintiff's ultimate arguments and conclusions. See response to number 8 above. In fact, inmates can and do choose not to participate in

prescriptive programs and could do so during their entire incarceration. In doing so, these inmates may impede their ability to obtain parole, but parole in Pennsylvania is not a right, constitutional or otherwise, possessed by any inmate.

19. This statement is Denied.

20. This statement is Denied.

21. This statement is Denied.

22. This statement is Objected to as an improper admission request. It improperly seeks agreement, not with statements of fact, but with plaintiff's ultimate arguments and conclusions. By way of further response, defendants incorporate their response to No. 2 and 8.

23. This statement is Objected to as an improper admission request. It improperly seeks agreement, not with statements of fact, but with plaintiff's ultimate arguments and conclusions. By way of further response, defendants incorporate their response to No. 2 and 8.

24. This statement is Objected to as an improper admission request. It improperly seeks agreement, not with statements of fact, but with plaintiff's ultimate arguments and conclusions.

25. This statement is Objected to as an improper admission request. It improperly seeks agreement, not with statements of fact, but with plaintiff's ultimate arguments and conclusions. Without waiving this objection, the statement is also denied for the reasons stated in response to Nos. 2, 8 and 9.

26. This statement is Objected to as an improper admission request. It improperly seeks agreement, not with statements of fact, but with plaintiff's ultimate arguments and conclusions. Without waiving this objection, the statement is also denied for the reasons stated in response to Nos. 2, 4, 8 and 9.

ATTACHMENT "A"

27. This statement is Objected to as an improper admission request. It improperly seeks agreement. not with statements of fact. but with plaintiff's ultimate arguments and conclusions. Without waiving this objection. the statement is also denied for the reasons stated in response to Nos. 2, 4, 8 and 9.

28. This statement is Objected to as an improper admission request. It improperly seeks agreement, not with statements of fact, but with plaintiff's ultimate arguments and conclusions. Without waiving this objection, the statement is also denied for the reasons stated in response to Nos. 2, 4, 8 and 9.

29. This statement is Objected to as an improper admission request. It improperly seeks agreement, not with statements of fact, but with plaintiff's ultimate arguments and conclusions. Without waiving this objection, the statement is also denied for the reasons stated in response to Nos. 2, 4, 8 and 9. Further, no defendants (and no DOC programs) have required plaintiff to violate or abandon his religious faith.

30. This statement is Denied as stated. Plaintiff is himself non-specific when he speaks of specific teachings, principles, practices and traditions of Islam. While clearly not being an expert, I have a general familiarity with, and understanding of, this religion.

31. This statement Denied. We do not consult with any specific religious advisors when drafting and creating programs dealing with the criminogenic factors of inmates' past conduct and our attempt to reduce recidivism. In thirty years of participating in this work. I have never been advised by an recognized adherent or official that any of our programs violate or are in conflict with any religious belief or tenet.

ATTACHMENT "A"

32. This statement is Admitted only insofar as the documents reflect exhaustion of the claims raised in Grievance 58644.

33. This statement is Admitted.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

Christian D. Bareford / MLF

Christian D. Bareford
Deputy Attorney General
Attorney I.D. No. 83982

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA 15219
Phone: (412) 565-3570
Fax:    (412) 565-3019

Susan J. Forney
Chief Deputy Attorney General

Date: January 9, 2007

6

ATTACHMENT "A"

VERSES

## AYATS THAT WARN AGAINST LISTENING TO AND OBEYING OTHER THAN ALLAH

You (alone) do we worship and Your aid (alone) we Seek (1:5) Say: The Guidance of
Allah, that is the (only) guidance, if you follow their desires after knowledge
has reached you, then you will find no helper nor protector against Allah (2:120)
But if anyone, after Allah's Favor has come to him, substitutes (something else)
Allah is strict in punishment (2:211) Unbelievers call you to the Fire (2:221)
Whoever holds on to Allah will be shown a way that is straight (3:101) O you who
believe! Take not into your intimacy those outside your ranks: they will not fail
to corrupt you. They only desire for you to suffer:  rank hatred has already
appeared from their mouths: what their hearts conceal is far worse. We have made
plain to you the Signs, if you have wisdom (3:118) O you who believe! If you obey
the unbelievers, they will drive you back on your heels and you will turn back
(from faith) to your own loss (3:149) Any who denies Allah, His Angels, His Books,
His Messengers, and the Day of Judgment has gone far, far astray (4:136) Follow
not their vain desires...to each among you We have prescribed a law and an open
way...to test you in what He has given you (5:48) Follow not their vain desires,
but beware of them lest they beguile you from any of that (teaching) which Allah
has sent down to you (5:49) O you who believe! Take not for friends and protectors
those who take your religion for a mockery or sport (5:57) Say: I would, if I
disobey my Lord, indeed have fear of the chastisement of a Mighty Day (6:15) Say:
I am forbidden to worship those, other than Allah, whom you call upon. Say: I will
not follow your vain desires: if I did, I would stray from the Path, and be not of
the company of those who receive guidance. Say: For me, I am on a Clear Sign from
my Lord, but you reject Him...(6:56-7) Sit not in the company of those who do wrong
(6:68) So leave them and what they forge (6:112) And if you were to follow the
common run of those on earth, they will lead you away from the Way of Allah. They
follow nothing but conjecture. They do nothing but lie (6:116) If you were to obey
them, you would be pagans (6:121) ...nor follow the vain desires of such as treat
Our Signs as falsehood, and such as believe not in the Hereafter (6:150) Verily
this is My Way leading straight: follow it, follow not (other) paths; they will
scatter you from His Path (6:153) Follow (O Men!) the Revelation given to you from
your Lord, and follow not, as friends or protectors, other than Him (7:3) Fight
those who believe not in Allah nor the Last Day, nor hold that forbidden which has
been forbidden by Allah and His Messenger, nor acknowledge the Religion of Truth,
from among the People of the Book until they pay the jizya with willing submission
and feel themselves subdued (9:29) O you who believe! Fight the unbelievers who
are near to you and let them find harshness in you (9:123) Thus have We revealed
it to be a judgment of authority in Arabic. If you follow their (vain) desires
after the knowledge which has reached you, then you will find neither a protector
nor a defender against Allah (13:37) Verily this Qur'an guides to that which is
most right (17:9) And keep yourself content with those who call on their Lord
morning and evening, seeking His Face: and let not your eyes pass beyond them
seeking the pomp and glitter of this life: nor obey any whose heart  We have
permitted to neglect the remembrance of Us, one who follows his own desires, and
his affair has become all excess (18:28) Say: Obey Allah, and obey the Messenger:
but if you turn away, he is only responsible for the duty placed on him and you
for that placed on you. If you obey Him you shall be on Guidance (24:54) Therefore
listen not to the unbelievers, but strive against them with the utmost
strenuousness, with the  (Qur'an) (25:52) ...know that they only follow their
desires: and who is more astray than one who follows his desires, without guidance
from Allah? (28:50)  ...therefore lend not your support in any way to those who
reject (Allah's Message) (28:86) Let no one turn you away from Allah's Revelations
after they have been revealed to you (28:87) Do men think that they will be left

*ATTACHMENT "B"*

alone on saying, "We believe," and that they will not be tested? (29:2) And the unbelievers say to those who believe "follow our path, and we will bear (the consequences) of your faults (29:12) And obey not (the behest) of the unbelievers and the hypocrites, and disregard their insolence but put your trust in Allah (33:48) ...nor follow the lusts (of your heart) for it will mislead you from the Path of Allah (38:26) Now then, for that (reason) call (them to faith), and stand steadfast as you are commanded, nor follow their vain desires; but say: I believe in whatever Book Allah has sent down... (42:15) Then We put you on the (right) Way of Religion: so follow that (way) and follow not the desires of those who know not (45:18) Then do you see one who takes as his god his own desires? Allah has, knowing (him as such) left him astray...will you not then receive admonition? (45:23) Those who turn back as apostates after Guidance was clearly shown to them - Shaytan has instigated them and buoyed them up with false hopes. This because they said to those who hate what Allah has revealed, "We will obey you in part of (this) matter." But Allah knows their inner secrets (47:25-6) Verily your Lord knows best which (among men) has strayed from His Path: and He knows best those who receive (true) Guidance. So obey not those who deny (truth). Their desire is that you should be pliant: so they would be pliant (68:7-9) But verily this is a Message for the God-fearing. And We certainly know that there are among you those that reject (it). But truly (Revelation) is a cause of sorrow for the unbelievers (68:48-50) It is We Who have sent down the Qur'an to you by stages. Therefore be patient with constancy to the command of your Lord, and obey not the sinner or ingrate among them (76:23-4) Say: O you that reject Faith! I worship not that which you worship. Nor will you worship that which I worship. And I will not worship that which you have been wont to worship. Nor will you worship that which I worship. To you be your way and to me be mine (109:1-5)

ATTACHMENT "B"

LEONARD C. JEFFERSON, CL-4135
10745 RT. 18
ALBION, PA 16475-0002
JANUARY 16, 2007

CLERK'S OFFICE
U.S. DISTRICT COURT
P.O. BOX 1820
ERIE, PA 16507

RE: JEFFERSON V. WOLFE, ET AL., C.A. No. 04-44 ERIE

DEAR CLERK:

WOULD YOU PLEASE FILE THE ENCLOSED PLAINTIFF'S
01/16/07 RULE 37 MOTION, AND ITS ATTACHMENTS "A"
& "B", IN THE ABOVE-CAPTIONED CASE.

THANK YOU FOR YOUR ATTENTION TO THIS REQUEST.

RESPECTFULLY

Leonard C. Jefferson