**DC-ADM 804, Inmate Grievance System**
**DC-804**
**Part 3**

**Attachment C**
**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Albion**

**DATE:**      02/27/03

**SUBJECT:**      **Grievance Rejection Form**

**TO:**      **Leonard Jefferson**
               **CL-4135  A/A 59**

| FOR OFFICIAL USE ONLY |
| :---: |
| **41961** |
| GRIEVANCE NUMBER |

*M. Barr*

**FROM:**      **Mr. Barr**
               **Facility Grievance Coordinator**

The attached grievance is being returned to you because you have failed to comply with the provision(s) of DC-ADM 804, Inmate Grievance System:

1.  _____      Grievances related to the following issues shall be handled according to procedures specified in the policies listed and shall not be reviewed by the Facility Grievance Coordinator.

       a.      DC-ADM 801 – Inmate Disciplinary and Restricted Housing Unit Procedures
       b.      DC-ADM 802 – Administrative Custody Procedures
       c.      Other policies not applicable to DC-ADM 804.

2.  _____      Block B must be completed, as per the Instruction #3 of the Official Inmate Grievance Form.

3.  _____      The grievance does not indicate that you were personally affected by a Department or facility action or policy.

4.  _____      Group grievances are prohibited.

5.  _____      The grievance was not signed and/or dated.

6.  _____      Grievances must be legible and presented in a courteous manner.

7.  _____      The grievance exceeded the two (2) page limit.  Description needs to be brief.

8.  _____      Grievances based upon different events shall be presented separately.

9.  _____      The grievance was not submitted within fifteen (15) working days after the events upon which claims are based.

10.  _____      You are currently under grievance restriction.  You are limited to one grievance each 10 working days.  You filed a grievance on _____.

11.  _____      Grievance involves matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility.

12.  __X_      **The issue(s) presented on the attached grievance has been reviewed and addressed previously.**

**Mr. Jefferson, I have forwarded this matter to Mr. Boeh and he will review it.  Mr. Boeh is on the PRC and also supervises Religious Services staff.**

cc:      Mr. Boeh
         Deputy Kormanic
         Mr. Piotrowski
         Ms. McKissock
         DC-15
         File (41961)

*SUMMARY JUDGMENT ATTACHMENT*        *47*

DC-ADM 804, Inmate Grievance System                                    **Attachment B**
DC-804
Part 2                                    **COMMONWEALTH OF PENNSYLVANIA**
                                          **DEPARTMENT OF CORRECTIONS**
                                          **P.O. BOX 598**
                                          **CAMP HILL, PA 17001**

**OFFICIAL INMATE GRIEVANCE**                          **GRIEVANCE NO. 41961**
**INITIAL REVIEW RESPONSE**

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| JEFFERSON, Leonard   CL-4135 | SCI-ALBION | A/A | 02/27/03 |

The following is a summary of my findings regarding your grievance:

You indicated that while on your job as a clerk you provided Minister Anderson with a copy of a newspaper article regarding the incarceration rate in Pennsylvania. You further indicated that the newspaper article had a copy of two of your poems on the opposite side and that you only intended to provide him with the newspaper article. When I discussed this transaction with Minister Anderson, he advised that you had offered your poetry to him, not the article. He advised that there was a newspaper article on the opposite side. Therefore, his description of the matter was completely opposite of yours.

You were dismissed from your employment as a chaplain clerk because of the fact that you distributed your poetry which was racially inciteful and completely inappropriate to be distributed in the correctional setting.

It is my finding that the dismissal from your employment was appropriate and should stand.

RESOLVED: _____    DATE:_____
                    Inmate Signature

UNRESOLVED  *Leonard C. Jefferson*    DATE: 3/7/03
                    Inmate Signature

Cc: Grievance Officer
    Inmate
    DC-15

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| | | 03/07/03 |
| Robert J. Boeh, C.C.P.M. | | |

SUMMARY JUDGMENT ATTACHMENT

48

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution at Albion**
(814) 756-5778
March 20, 2003

**SUBJECT:**   **APPEAL TO SUPERINTENDENT**
**GRIEVANCE #41961**

*5 9*

**TO:**      Leonard Jefferson
CL-4135
A/A

*W. J. Wolfe*

**FROM:**    William J. Wolfe
Superintendent

I have reviewed the original grievance, the Grievance Officer's response, and your appeal to this office.

You have provided no additional evidence to support your claims, and it appears to me that your grievance has been dealt with appropriately by staff.

As I have review the issues you raise, I will stand by the decision that you are not appropriate for the clerks position in the Religious Services area. We must all strive to remove hatred, not encourage it. The poetry you tried to pass is inappropriate. The Religious Services area is a place for people of all faiths and ethnic backgrounds to practice their beliefs. I will not tolerate <u>any</u> behavior at SCI Albion that promotes racism.

After thorough review and evaluation, I must sustain the Grievance Officer's decision.

WJW/dls

cc:    Deputy Marquardt
Deputy Kormanic
Major Neiswonger
Mr. Barr
Mr. Boeh
DC-15
File

**"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"**

SUMMARY JUDGMENT ATTACHMENT

49

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**2520 LISBURN ROAD, P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

April 9, 2003

Leonard Jefferson, CL-4135
SCI- Albion

Re:    DC-ADM 804 – Final Review
Grievance No. 38293

Dear Mr. Jefferson:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective May 1, 2002, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. In this grievance you presented the same argument that you presented in grievance # 41961. The assigning of the grievance officer in this case was not the reason for you being terminated and therefore, the results would have been the same no matter whom the grievance was assigned.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures. Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ:jk

cc:    Superintendent Wolfe
Grievance Office
Central File

SUMMARY JUDGMENT ATTACHMENT

50

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
2520 LISBURN ROAD, P.O. BOX 598
CAMP HILL, PA 17001-0598

THE SECRETARY'S OFFICE OF
INMATE GRIEVANCES AND APPEALS

April 9, 2003

Leonard Jefferson, CL-4135
SCI- Albion

Re:    DC-ADM 804 – Final Review
Grievance No. 41961

Dear Mr. Jefferson:

This is to acknowledge receipt of your appeal to final review of the above numbered grievance.

In accordance with the provisions of DC-ADM 804, effective May 1, 2002, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. I have taken the liberty of reviewing grievance # 38293 concerning Chaplain McGuown being assigned as the grievance officer. The intent of this provision in the 804 is to encourage objectivity and eliminate staff from investigating issue that solely relates to them. In this case, the Support team made the decision to terminate you from your job. This action is certainly within the discretion of the unit management team. I further have determined the results of this decision would in all probability not have changed has it been assigned to another management level staff.

The responses provided at the institutional level are appropriate and in accordance with Department of Corrections policies and procedures. Accordingly, your appeal to final review must be denied.

Sincerely,

Thomas L. James
Chief Grievance Coordinator

TLJ:jk

cc:    Superintendent Wolfe
Grievance Office
Central File

"Our mission is to protect the public by confining persons committed to our custody in safe secure facilities, and to provide opportunities to inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."

SUMMARY JUDGMENT ATTACHMENT

51

*F/B*

# STATE CORRECTIONAL INSTITUTION AT ALBION
## JOB ASSIGNMENT NOTICE

NAME: _Jefferson_                    NUMBER: _CL- 4135_

HAS BEEN ASSIGNED AS FOLLOWS:                    HOUR: _✓_

JOB: _Chap /Clerk_        RATE: _.33_    DAY: _____

STARTING DATE: _4/5/04_            DAYS OFF: _____

REPORT TO: _Chaplain McQuown_ , WHO IS YOUR SUPERVISOR,

ON OR BEFORE: _0800_        THE STARTING DATE SHOWN ABOVE.

RELEASED FROM _GLP_                PAYROLL

## ***FAILURE TO REPORT WILL RESULT IN DISCIPLINARY ACTION.***

APPROVED BY: _C. Mitchell_

### MS. C. MITCHELL
### CORRECTIONS EMPLOYMENT AND
### VOCATIONAL COORDINATOR

****LISTED BELOW IS A JOB ORIENTATION ACKNOWLEDGEMENT FORM FOR JOB DUTIES AND SAFETY POLICIES. JOB SUPERVISOR SHOULD REVIEW JOB DESCRIPTION AND SAFETY POLICIES WITH THE ABOVE NAMED INMATE. BOTH THE WORK SUPERVISOR AND INMATE MUST SIGN AND RETURN THE ENTIRE FORM TO THE INMATE EMPLOYMENT OFFICE AS SOON AS POSSIBLE. THANK YOU FOR YOUR COOPERATION.

### ORIENTATION ACKNOWLEDGEMENT FORM

I HAVE RECEIVED INSTRUCTIONS FOR JOB DUTIES AND SAFETY POLICIES FOR THE JOB ASSIGNMENT LISTED BELOW.

_Chap. Clerk_
JOB ASSIGNMENT

_Leonard C. Jefferson_                    _____ 4/05/04_
INMATE'S SIGNATURE – DATE            SUPERVISOR'S SIGNATURE - DATE

APR - 5

_SUMMARY JUDGMENT ATTACHMENT_

52

COMMONWEALTH OF PENNSYLVANIA
**Department of Corrections**
**State Correctional Institution at Albion**
(814) 756-5778
November 30, 2005

**SUBJECT:    BATTERERS GROUP HOUSING UNIT C/A**

**TO:**        All Concerned

**FROM:**    *Sara J. Crawford*
Sara J. Crawford
Psychological Services Associate

The Batterers program at SCI-Albion is currently undergoing some changes. The program is in the process of transitioning to C/A Unit and will be phased out of the Centralized Services Building in the future. All individuals who have not yet successfully completed the program at least once will be required to take the program on C/A Unit.

**Only those inmates who have been attending the group <u>and</u> completed the group will be offered programming in Centralized Services**. The only exceptions will be individuals housed on the Special Needs Unit, currently in the Sex Offender program on D Unit, or the Therapeutic Community on G/B Unit at the time Batterers treatment is offered.

In preparing for the next set of Batterers Groups to begin, a list has been compiled of individuals to be placed on C/A Unit to attend the group. It has come to the program's attention that some individuals have declined moving to C/A Unit for the group. It should be made clear that if an individual declines transfer to C/A Unit when offered, **he will not be offered the program elsewhere**. He will be considered to be refusing to participate in the program at that time.

You are scheduled to participate in the next Batterers Group. Moves will be made prior to the beginning of the group. Exceptions, other than those stated above, will not be considered.

Individual appointments to discuss the move will not be offered. If you have concerns about the move to C/A, please address them with your current unit management team.

***The attached consent form must be completed and returned to me as soon as possible***.

SJC/dsw
Attachment (consent form)

cc:    Inmate
        File

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."

# BATTERERS GROUP – CONSENT FORM

*Return to Ms. Crawford, Psychology Department, Upon Completion*

☐ **I AGREE** to participate in the next Batterers Group and understand that includes moving to C/A Unit.

☑ **I REFUSE** to attend Batterers Group and move to C/A Unit. **(Below, please state reason why you refuse to move to C/A Unit.)**

IF I AM ORDERED TO MOVE TO C/A I WILL COMPLY WITH THAT ORDER BECAUSE THE DOC HAS THE AUTHORITY TO HOUSE ME IN ANY FACILITY, ON ANY UNIT, OR IN ANY CELL IT DEEMS APPROPRIATE. HOWEVER, I REFUSE TO PARTICIPATE, ON RELIGIOUS GROUNDS, IN BATTERERS GROUP AND ALL OTHER DOC PRESCRIPTIVE PROGRAMS WHICH ARE NOT PRESENTED FROM AN ISLAMIC POINT OF VIEW.

Name: LEONARD C. JEFFERSON          DOC #: CL-4135

Current Housing Unit assignment: F/B-30

Are you a smoker?    ☐ YES          ☑ NO

Do you have any housing restrictions?

☑ Single cell
☐ Bottom Tier
☑ Bottom Bunk
☐ Other: _____

_____

| | |
|---|---|
| REFUSED TO SIGN | DECEMBER 5, 2005 |
| **Inmate Signature** | **Date** |

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."

54

COMMONWEALTH OF PENNSYLVANIA
**Department of Corrections**
**State Correctional Institution at Albion**
(814) 756-5778
July 27, 2006

**SUBJECT:    VIOLENCE PREVENTION – GROUP C**

**TO:**        All Concerned

**FROM:**    Shannon Randall
Corrections Counselor II

The following inmates have been approved to attend Violence Prevention Group to fulfill Correctional Plan criteria.  The group will begin on **Tuesday August 8th from 1:30 pm to 3:00 pm, in Room 8.148** in the Centralized Services building.  The group will meet every Tuesday for approximately five months.  The anticipated completion date is December 19, 2006.

| INMATE NAME | | DOC # | UNIT | JOB/SUPERVISOR |
|---|---|---|---|---|
| Squires | Marvin | GJ2188 | A/B | GLP |
| Tallman | Theodore | FR2266 | A/B | GLP |
| Sampson | David | DN3461 | B/A | Food Service |
| Carroll | Jerry | EM3447 | B/B | Block worker |
| Morris | Terrance | CA2938 | B/B | Food Service |
| Johnson | Steven | GM6961 | B/B | Food Service |
| Bishop | Maurice | GF6711 | C/A | Food Service |
| Serrano-Serrano | Alexander | GM0455 | E/A | Yard worker |
| Segarra | Angel | CZ2591 | E/B | Vocational Tutor |
| Jackson | Robert | GG4929 | E/B | Food Service |
| Campbell | Steven | GK1788 | F/A | Block worker |
| Harris | Victor | EM4389 | F/A | Unassigned |
| Powley | Joseph | DC4504 | F/A | Maint/Repair Shop |
| Yonkofski | Matt | GG8327 | F/A | Food Service |
| Jefferson | Leonard | CL4135 | F/B | GLP |
| Wallace | Alameen | FC3589 | F/B | Block worker |
| Perez | Jose | FB0893 | **HD** | Unassigned |
| Davis | Shawn | FB5382 | I/A | Block worker |
| Martin | Kashimer | GJ1365 | I/A | Food Service |
| Sanders | Isaiah | GL0612 | I/A | Food Service |
| James | Michael | FH8608 | I/B | GLP |
| Carter | Lee | GK3120 | I/B | GLP |
| Grier | James | GF4313 | J/B | Unassigned |

SC/dsw
cc:  Inmates, Unit Manager, Unit Counselors, Unit Officers, Work Supervisors, CS Lobby Officers,
      Violence Prevention Coordinator, File

**"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."**

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1. To: (Name and Title of Officer)<br>Ms. Randall, Counselor | 2. Date:<br>07/28/06 |
|---|---|

| 3. By: (Print Inmate Name and Number)<br>Leonard C. Jefferson, CL-4135<br><br>*Leonard C. Jefferson*<br><center>Inmate Signature</center> | 4. Counselor's Name<br>Ms. Gamble |
|---|---|
| | 5. Unit Manager's Name<br>Mr. Lautz |

| 6. Work Assignment<br>NONE | 7. Housing Assignment<br>F/B-30 |
|---|---|

8. Subject: State your request completely but briefly. Give details.

PLEASE BE ADVISED THAT -- IN RESPONSE TO YOUR 07/27/06 MEMO WHICH

INFORMED ME THAT I HAVE BEEN APPROVED TO ATTEND VIOLENCE PREVENTION

GROUP C -- I HAVE RELIGIOUS-BASED OBJECTIONS TO ATTENDING ANY/ALL

GROUPS AND/OR PROGRAMS WHICH ARE NOT TAUGHT FROM THE ISLAMIC

PERSPECTIVE; AND, THEREFORE, I WILL NOT BE ATTENDING YOUR GROUP.

THANK YOU FOR YOUR ATTENTION TO THIS MATTER.

9. Response: (This Section for Staff Response Only)

Thank you for letting me know.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name    S. Randall    /    S. Randall    Date    09/01/06
<center>Print        Sign</center>

Revised July 2000

56

## Pennsylvania Department of Corrections
### Correctional Plan - Evaluation

Production

**Name** JEFFERSON,        **Inmate #** CL4135    **DOB** 02/28/1948    **Evaluator** Randall, Shannon

**Program Category** Violence/Aggression (2006)

        **Program Name** Violence Prevention

| **Start Date** | **End Date** | **Status** |
|---|---|---|
| 08/08/2006 | 08/08/2006 | Failed |

**Reason for Failure to Complete the Program**
Self Removal

**Attendance**
Poor  (Missed more than 10% of the sessions)

**Knowledge Acquired**
Poor  (Score of 69% or below on teaching objectives)

**Integrated the information into his/her lifestyle: (Subjective Assessment)**

**Overall Assessment**
Failure

**Comments**
Inmate sent a request slip to facilitator stating that he would not be attending the group.  He stated that he has "religious-based objections to attending any/all groups and/or programs which are not taught from the Islamic perspective".  He will need to contact his counselor if he wants to be placed back on the waiting list.

57

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
State Correctional Institution at Albion
(814) 756-5778
September 14, 2006

SUBJECT:   BATTERERS PROGRAM COORDINATOR

TO:        All Concerned

FROM:      Sara Crawford
           Psychology Services Specialist

We are currently beginning to evaluate individuals who are recommended for Batterers Group according to their Correctional Plan. Please complete the following questionnaire in regards to your interest in group participation and return the questionnaire to Ms. Crawford, Psychology Department within one week.

The group is offered on C/A unit with overflow/special needs being accommodated in the Centralized Services building.

Inmate Name: _LEONARD C. JEFFERSON_          DOC #: _CL-4135_

_PLEASE ALLOW ME TO RESPECTFULLY INFORM OR REMIND YOU THAT YOU DO NOT HAVE ANY LEGAL OR MORAL AUTHORITY TO TELL ME HOW I SHOULD LIVE MY LIFE._

Check the box that represents your inclination for group participation:

☑ I choose not to participate in the Batterers Program at this time.

Reason: _I BELIEVE THAT THERE IS NO GOD OTHER THAN ALLAH AND THAT MUHAMMAD IS GOD'S MESSENGER THEREFORE I WILL NOT PARTICIPATE IN ANY GROUP THAT IS NOT TAUGHT ON THE PRINCIPLES STATED IN THE HOLY QUR'AN AND/OR IN THE SUNNAH OF THE PROPHET. PBUH_

☐ I want to be considered for the next group and understand

The criteria for Batterers Group participation is as follows:

- Current/past offense against an intimate partner.
- Parole violation involving an intimate partner
- Violation of a PFA
- Active PFA at the time of your current offense or while on parole supervision
- Any other collaborating evidence of a history of abuse (verbal, emotional, physical, etc.) in the past or current relationships

**"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."**

58

Batterers Program Coordinator
September 13, 2006
Page 2

Please describe the incident(s) and or situation(s) that meet any of the criteria listed above:

AND THOSE WHO
REJECT AND DENY THE
REVELATIONS AND SIGNS OF GOD,
THEY ARE THE PEOPLE OF THE HELLFIRE.
THEY WILL DWELL THEREIN FOR ETERNITY. A
TERRIBLE END OF LIFE'S JOURNEY. HOLY QUR'AN
64:10

I understand that the group in which I am scheduled to participate is not under my control and is based solely on institutional need and availability. The Batterers Program staff determines all group assignments.

Inmate Signature: _REFUSED TO SIGN_    Date: _10 RAMADAAN 1427 A.H._
_10 - 9 - 06_

SJC/dsw

cc:    Superintendent Brooks
       Deputy Giroux
       Mr. Clark
       Mr. Reilly

**"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."**

59

**Pennsylvania Department of Corrections**
**Correctional Plan - Evaluation**

1/9/2006 11:43:56 AM                                                                 Production

**Name**  JEFFERSON,          **Inmate #**  CL4135      **DOB**  02/28/1948    **Evaluator**  Crawford, Sara Jean

**Program Category**   \ Violence/Aggression

      **Program Name**  Batterers Group

| Start Date | End Date | Status |
|---|---|---|
| 10/02/2006 | 11/09/2006 | Failed |

**Reason for Failure to Complete the Program**
      Self Removal

**Attendance**
      Poor  (Missed more than 10% of the sessions)

**Knowledge Acquired**
      Poor  (Score of 69% or below on teaching objectives)

**Integrated the information into his/her lifestyle: (Subjective Assessment)**
      Poor  (Lack of effort to understand and apply the concepts to his/her lifestyle.)

**Overall Assessment**
      Failure

**Comments**
      Mr. Jefferson stated in writing that he chooses not to participate in Batterers Group at this time adding "Please allow me to respectfully inform or remind you that you do not have any legal or moral authority to tell me how I should live my life.  I believe that there is not God other than Allah and that Muhammad is God"s messenger therefore I will not participate in any group that is not taught on the principles stated in the Holy Qur"an and/or in the Sunnah of the Prophet."

      According to the DOC he does meet the criteria for recommendation for Batterers Group and is considered to be refusing the program at this time.  He must write to the Batterers Program Coordinator or his counselor in order to be placed back on the waiting list if he so chooses.

F1B

| DC - 46 (Rev. 7/95) | **VOTE SHEET** | | | **Commonwealth of Pennsylvania** Department of Corrections | |
|---|---|---|---|---|---|
| Facility SCI-ALBION | Date 11/5/02 | Number CL-4135 | | Name JEFFERSON | Cus. Lev. & Code (s) 2 |
| Purpose REMOVE FROM JOB - CONDUCT | | | | | |

| | YES | NO | COMMENTS |
|---|---|---|---|
| Counselor GAMBLE | ✓ | | PROMOTING RACISM / POTENTIALLY INFLAMATORY POETRY (POSSIBLE INTENT TO DISTRIBUTE) |
| Work Supervisor McQUOWN | ✓ | | Acknowledges he is angry at correctional system & asserts his right to speak & write his truth. Creating disruption to orderly management of the institution. |
| Corrections Officer | | | |
| Psychologist | | | |
| Unit Mgr., Couns. Supv., CCC Dir. SNIDER | ✓ | | Sensitive material that could prevent a volatile situation. |
| Inmate Program Mgr. | | | |
| BENTLEY C.E.V.C | X | | REMOVE FROM JOB - DISTRIBUTION OF INFLAMATORY MATERIAL AFRAID AT |
| **Votes Recorded** | | | |

| **STAFF RECOMMENDATIONS** |
|---|
| Mr. Jefferson had in his possession inflammatory information, specifically poetry of racism, promoting racism and hatred. Inmate has access to the presentation of a potential serious situation |
| |
| |
| |
| |
| |
| |
| |

| Deputy - Centralized Services | Yes ☐ | No ☐ | Deputy - Facility Management | Yes ☐ | No ☐ |
|---|---|---|---|---|---|
| Comments | | | Comments | | |
| | | | | | |
| | | | | | |

| Sign. of Supt., DCC Dir., Reg. Dir., Commander | | **Approved** | **Disapproved** |
|---|---|---|---|
| Comments | | | |
| | | | |

61

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,
                Plaintiff,

        V.                                        C.A. NO. 04-44 ERIE

WILLIAM WOLFE, ET AL.,
                Defendants.

### DECLARATION OF RONALD JOHNSON

1. My name is Ronald Johnson, PA DOC # FA-0522. I am confined at the
State Correctional Institution at 10745 Rt. 18, Albion, PA 16475-0002.

2. I am fully competent to make this declaration because I have personal
knowledge of the facts stated herein, and the facts are true and correct to
the best of my knowledge.

3. I have been convicted of a crime.

4. I have been in custody of the PA DOC for the past thirteen (13) years
and three (3) months.

5. I have had inmate employment since my arrival at SCI-Albion, except
for the last twenty-one (21) months due to health problems.

6. During my periods of employment at SCI-Albion I have taken various
personal items to work, such as food, reading material, legal work, etc..

7. My supervisors observed me occupying myself with the above-mentioned
personal items but never warned, reprimanded nor punished me in any way for
bringing said personal items to the job.

8. The DC-43 that I received at my Yearly Review in 1999 recommended that
I participate in the following prescriptive programs: Victims' Awareness,
Crime Prevention, Citizenship, Drug & Alcohol Group, and Anger Management.

62

9. I had successfully completed each of the above-mentioned groups by June of 2002.

10. In June, 2002, Ms. Cheek, unit-counselor on B/A, informed me that I was "program compliant."

11. As a reward for being program compliant: my Custody Level was reduced from CL-3 to CL-2; I received a promotional transfer in October of 2002 from SCI-Albion to SRCF-Mercer which was closer to my family; and my name was placed on the waiting list at Mercer for the O.R.R. Program.

12. On 09/03/04 the Parole Board issued a Green Sheet that informed me my application for release on parole was denied. This denial included a recommendation that I participate in a Batterers' Group.

13. I did not enroll to participate in a Batterers' Group.

14. On 02/01/05 the F-Unit Manager informed me that I was no longer program complaint and I received a new DC-43 Prescriptive Program Plan which required that I be transferred back to Albion, further away from my family. I was returned to Albion on 03/29/05.

15. Between receiving the 09/03/04 Green Sheet and this present day I have been involved in administrative requests and civil litigation attempting to have erroneous information (which indicates I was convicted of a domestic violence offense forty (40) years ago when, in fact, I have never been charged or convicted of a domestic offense in my life) removed/expunged from my PA DOC and P.B.P.P. records.

16. On 10/18/06 the Parole Board issue a Green Sheet that informed me my application for release on parole was denied as a result of my failure to participate in a Batterers Program; i.e., because I was not "program compliant."

17. I routinely pass though the Education Lobby Area of SCI-Albion about ten (10) or more times each week.

18. While passing through the Ed. Lobby it is not uncommon for me to see inmates, who I know are employed as Chapel Clerks, sitting in the Ed. Lobby during their working hours.

19. It is not unusual for me to converse with the clerks, whom I am acquainted with, when I see them in the Ed. Lobby.

20. It is not uncommon for me to see the Chapel Clerks sitting in chairs at tables with books, newspapers, magazines, typewriters and/or tape players when I pass through the Lobby.

21. On several occasions the Correctional Officers, at their post in the Ed. Lobby, deemed I was talking with the clerks too long, and they told me to move on to my destination; at those times I never heard any officer tell the clerk he was not authorized to remain in the Ed. Lobby.

I HEREBY SWEAR THE FOREGOING IS TRUE AND CORRECT UPON MY PERSONAL KNOWLEDGE UNDER PENALTY OF PERJURY PURSUANT TO U.S.C.A. § 1746.

Ronald Johnson, FA-0522E
10745 Rt. 18
Albion, PA 16475-0002

Dated: February 3, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,
            Plaintiff,

      V.                                    C.A. NO. 04-44 ERIE

WILLIAM WOLFE, ET AL.,
            Defendants.

## DECLARATION OF THOMAS TWILLIE

1. I have been in PA DOC custody since September 19, 1987.

2. I have been confined at SCI-Albion from July 21, 1993 til this present day.

3. I have been employed as a Chapel Assistant from some time around 2001 until this present day.

4. My Chapel Assistant duties require me to be on call to be present in the Chapel Area between 0800 and 1600 hours each day of the week.

5. My normal work schedule causes me to spend several hours each week in the Chapel with no work to perform.

6. I have taken my own personal Holy Bible, and other books, to the job to read during the times when there is no Chapel Assistant work that needs done.

7. Staff members have routinely seen me coming and going to work with my personal books and staff members, on occasion, have discussed issues with me that were the subject matter of the personal books and papers while I was reading them on the job.

8. While reading in my cell I have found written articles that I thought might be useful or of interest to Chaplains McQuown, Finkbeiner and Jones and I have taken these articles to work and gave them to Chaplains Finkbeiner and Jones; these articles included addresses for obtaining free Bibles and information for edification.

9. None of the above-named chaplains, nor any other staff member who saw me with or actually reading my personal books and/or papers, told me that I should not bring personal books and/or papers to the job.

10. It is a common necessity for me and other Chapel Clerks and Assistants to set up chairs and tables in the Education Lobby Area while performing our normal work duties.

11. It is common for us to have typewriters, books, papers, magazines and tape players on the tables in the Ed. Lobby.

12. It is a common practice for me and other clerks and assistants to sit in the Lobby area and read personal books and papers; especially when a faith group other than mine is using the Chapel Sanctuary for a service, program or other function.

13. The Officers in the Lobby have talked to me on many occasions while I was sitting in the Lobby reading, writing, talking with other clerks and/or assistants but no Officer has ever told me I was not authorized to be in the Ed. Lobby during my working hours.

I HEREBY SWEAR THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE UNDER PENALTY OF PERJURY PURSUANT TO U.S.C.A. § 1746.

Thomas Twillie
10745 Rt. 18
Albion, PA 16475-0002

Dated: February 5, 2007

66

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,
        Plaintiff,

V.                                 C.A. NO. 04-44 ERIE

WILLIAM WOLFE, ET AL.,
        Defendants.

## DECLARATION OF ALONZO ROBINSON

1. I am a prisoner in custody of the PA DOC at SCI-Albion.

2. I have been confined at SCI-Albion from 11/17/95 to this present day.

3. During my confinement at SCI-Albion I have held several institutional jobs, including positions as RHU Janitor, A/A-Unit Janitor, E/A-Unit Clerk, Laundry Worker, and Activities Worker.

4. There has been a lot of idle time, time when there is no work to be performed, on each of the jobs I've had at SCI-Albion.

5. It has been my common practice on an almost daily basis to take books, and/or newspapers to work with me to read during the idle time when there is nothing else to do.

6. I have often discussed the material that I was reading on the job with my work supervisors.

7. My supervisors were aware of the fact that the books and papers that they saw me with were my personal property or the property of other inmates.

8. None of my supervisors ever told me to stop bringing books and/or newspapers to work with me.

9. I am aware that DC-ADM 816 contains language that prohibits inmates from bringing personal property to work but I know from personal experience that said prohibition is not usually enforced by staff when staff members see inmates reading personal books and papers during idle time in the work place.

10. I routinely pass through the Education Lobby area of SCI-Albion about ten (10) times or more each week.

11. While passing through the Ed. Lobby it is not uncommon for me to see inmates, who I know to be employed as Chapel Clerks, sitting in the Ed. Lobby during their working hours.

12. It is not unusual for the Chapel Clerks to have set up chairs and tables, whereupon are books, newspapers, magazines, typewriters and/or tape players, in the Ed. Lobby.

13. It is not unusual for me to greet and/or to briefly converse with the clerks that I know when I see them in the Ed. Lobby.

14. All of the activities described above in numbers 10 - 13 take place in an open area under the observant eyes of the correctional officers who have a post, with a door-control panel, inside the Ed. Lobby.

15. The officers have told me to keep moving on several occasions when they deemed my conversations with the clerks were too long, but I never heard any C.O. tell a clerk the clerk was not authorized to remain in the Lobby Area.

I HEREBY SWEAR THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE UNDER PENALTY OF PERJURY PURSUANT TO U.S.C.A. § 1746.

Alonzo Robinson, AY-6937
10745 Rt. 18
Albion, PA 16475-0002

Dated; February 3, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,
      Plaintiff,

    V.                               C.A. NO. 04-44 ERIE

WILLIAM WOLFE, ET AL.,
      Defendants.

## DECLARATION OF NANYA RASHIYD Z. EL

1. I am a prisoner at SCI-Albion in Pennsylvania.

2. I have been incarcerated at SCI-Albion since March 24, 2004.

3. I have attended Nation of Islam (N.O.I.) services and classes for the past two years.

4. Minister Michael Anderson has been the DOC Chaplain for N.O.I. Services from the time of my arrival at SCI-Albion.

5. I have watched video tapes of Minister Louis Farakhan at almost every N.O.I. Service that I attended.

6. During his speeches Min. Farakhan often addresses racial disparity and injustices against Blacks in American Society and in it's Justice System.

7. Some European-American prison guards appear, to me, to be annoyed and/or to feel threatened by the presence of African-American prisoners in the Chapel watching Farakhan's speeches.

8. When passing through the Education Lobby on my way to and from N.O.I. programs and the Library I often see Chapel Clerks and Chapel Assistants sitting in the Education Lobby Area reading books, papers, magazines and talking amongst themselves and to others.

9. I have seen Chapel Clerks set up chairs, tables typewriters and tape players in the Education Lobby in plain view of the C.O.s desk.

64

10. I have never seen or heard a C.O. tell a Chapel Clerk that he was not authorized to be present in or to talk with others in or to read in the Education Lobby Area.

11. I have been a Muslim for thirty-one (31) years.

12. I find the idea of being forced to attend non-Islamic programs to be at least as repulsive as non-Christians find the idea of being forced to drink the blood and to eat the flesh of Christ and to be at least as offensive as non-Muslims find the idea of being forced to prostrate to Allah in a Mosque with a group of worshipping Muslims.

13. My studies of the Religion of al-Islam, and especially the teachings which warn against adopting the ways of non-believers, cause me to know that, in practice, Islam is a comprehensive system of guidance which provides instructions on how I should conduct myself, in a manner that pleases Allah, in each and every situation that I might possibly encounter in life.

14. My studies of the Religion of al-Islam, and especially the teachings which warn against adopting the ways of non-believers, cause me to recognize the requirement that I participate in non-Islamic programs as being part of a systematic attempt to supplant the moral teachings of so-called secular programs in the place of the moral teachings of the Theistic religions, including Islam, concerning proper human conduct.

I HEREBY SWEAR THE FOREGOING IS TRUE AND CORRECT FROM MY PERSONAL KNOWLEDGE UNDER PENALTY OF PERJURY PURSUANT TO U.S.C.A. § 1746.

Nanya Rashiyd Z. El, FQ-0779
10745 Rt. 18
Albion, PA 16475-0002

Dated: February 11, 2007

*Nanya Rashiyd Zodoy El*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,
            Plaintiff,

        V.                              C.A. NO. 04-44 ERIE

WILLIAM WOLFE, ET AL.,
            Defendants.

## DECLARATION OF CHRIS IRELAND

1. I have been confined at SCI-Albion from 01/18/05 to the day of this Declaration.

2. I normally pass through the Education Lobby about ten times each week.

3. When I pass through the Ed. Lobby it is not unusual for me to see inmates, whom I personally know to be Chapel Clerks, sitting in the Ed. Lobby reading books and/or papers, typing and/or doing other clerical work.

4. It is not unusual for the Clerks to set up tables and chairs in the Lobby whereupon they type, read, write, etc..

5. All of the above-mentioned activities are performed in the open and in plain view of the Correctional Officers who have a Control-desk in that area.

6. I often see the Officers at their desk while the Clerks are in the Lobby reading, typing, etc. and the Officers never appeared (to me) as though they were concerned that the Clerks were engaging in unauthorized activities.

I SWEAR THE FOREGOING IS TRUE AND CORRECT FROM MY PERSONAL KNOWLEDGE UNDER PENALTY OF PERJURY PURSUANT TO U.S.C.A. § 1746.

Chris Ireland, GB-6366
10745 Rt. 18
Albion, PA 16475-0002

Dated: February 6, 2007

7,

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,
      Plaintiff,

    V.                    C.A. NO. 04-44 ERIE

WILLIAM WOLFE, ET AL.,
      Defendants.

## DECLARATION OF GEORGE ELLIOTT

1. I have been confined at SCI-Albion from 01/18/05 to the day of this Declaration.

2. I normally pass through the Education Lobby about ten times each week.

3. When I pass through the Ed. Lobby it is not unusual for me to see inmates, whom I personally know to be Chapel Clerks, sitting in the Ed. Lobby reading books and/or papers, typing and/or doing other clerical work.

4. It is not unusual for the Clerks to set up tables and chairs in the Lobby whereupon they type, read, write, etc..

5. All of the above-mentioned activities are performed in the open and in plain view of the Correctional Officers who have a Control-desk in that area.

6. I often see the Officers at their desk while the Clerks are in the Lobby reading, typing, etc. and the Officers never appeared (to me) as though they were concerned that the Clerks were engaging in unauthorized activities.

I SWEAR THE FOREGOING IS TRUE AND CORRECT FROM MY PERSONAL KNOWLEDGE UNDER PENALTY OF PERJURY PURSUANT TO U.S.C.A. § 1746.

                          *G. G— Elliott*

                          George Elliott, AP-3240
                          10745 Rt. 18
                          Albion, PA 16475-0002

Dated: February 6, 2007

FORM **DC-141**   **PART 1**
Rev 3/00

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS

**A** 453158

☒ MISCONDUCT REPORT   ☐ OTHER   ☐ DC-ADM 801  INFORMAL RESOLUTION

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| CL 4135 | Jefferson Leonard | SCI-A | 1045 | 5/12/04 | 5/12/04 |

| Quarters | Place of Incident |
|---|---|
| FB-62 | Centralized Services Lobby |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| STAFF | Ofcn Clement | ✓ | | STAFF | LT EDDY | | ✓ |
| | SGT Eliason | ✓ | | | Ins. Brannon | | ✓ |
| | Ofcn Collingwood | ✓ | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** Class 1 No. 1 Assault Class 1 No. 35 Refusing To obey an order.

**STAFF MEMBER'S VERSION** On 5/12/04 AT 1045 hrs Inmate Jefferson was sitting in The Lobby reading a Koran, I asked Jefferson why he was in The Lobby and not in The chapel where he works He said the music's To Loud and his work supervisor said its his work area. I told when The music was over I gave Jefferson several direct orders To go in The chapel. He became very Argumentive and refused all my orders, He pushed me with his shoulder and chest To enter The chaplin's office; AT This Time I ordered him To place's his hands on The wall To pat search him. During The search he Took his hands off The wall, officer clement ordered Jefferson To place his hands back on The wall until he was ordered To remove his hands, He was hand cuffed and escorted To RHU by LT EDDY and SGT Eliason.

**IMMEDIATE ACTION TAKEN AND REASON** Inmate placed in RHU, AC status pending hearing.

**PRE-HEARING CONFINEMENT**

**IF YES**

| ☒ YES | TIME | DATE |
|---|---|---|
| ☐ NO | 1056 | 5-12-04 |

**FORMS GIVEN TO INMATE**
☒ REQUEST FOR WITNESSES AND REPRESENTATION   ☒ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| B. Fitchell CO1 | Capt. Crowe | DATE 05/13/04   TIME 24 HOUR BASE 1305 |

**YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER**

| DATE | TIME | MISCONDUCT CATEGORY | Signature of Person Serving Notice |
|---|---|---|---|
| 05/13/04 | 1325 | ☒ CLASS 1   ☐ CLASS 2 | |

### NOTICE TO INMATE
You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, If this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15      YELLOW — Inmate      PINK — Reporting Staff Member      GOLDENROD — Deputy Superintendent Facility Management

**DC-ADM 801 Inmate Discipline Policy; Attachment B**   SUMMARY JUDGMENT ATTACHMENT B   73



<div align="center">

**POLICY STATEMENT**
**Commonwealth of Pennsylvania • Department of Corrections**

</div>

| Policy Subject:<br><br>INMATE DISCIPLINE | | Policy Number:<br><br>DC-ADM 801 |
|---|---|---|
| Date of Issue:<br><br>March 8, 2000 | Authority:<br><br>*[signature]*<br>**Martin F. Horn** | Effective Date:<br><br>April 17, 2000 |

## I.    AUTHORITY

The Authority of the Secretary of Corrections to direct the operations of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.    PURPOSE

The purpose of this policy is to establish procedure for addressing inmate violations of Department of Corrections rules and regulations.

## III.    APPLICABILITY

This policy is applicable to all inmates and staff in all facilities under the jurisdiction of the Department of Corrections.[1]

## IV.    DEFINITIONS

### A. Administrative Custody (AC)

A status of confinement for non-disciplinary reasons, which provides closer supervision, control, and protection than provided in general population.

### B. Calendar Days

Any number of consecutive days, including weekends and holidays.

---

[1] 3-4217, 3-ACRS-3C-01

**S. Unit Management Team**

The individuals assigned to operate a housing unit with the responsibility for security, risk management, and program delivery.

**T. Videoconference**

A conference carried via television.

**U. Working Days**

The normal work days of the Department, Monday through Friday, excluding holidays.

## V.   POLICY

It is the policy of the Department to operate a disciplinary process that provides clear notice of prohibited behavior, outlines a fundamentally fair hearing process, and establishes consistent sanctions for violations of Department rules and regulations.[2]  It is also the policy of the Department that information concerning an inmate's criminal acts will be forwarded to appropriate court or law enforcement officials for consideration for prosecution.[3]

## VI.   PROCEDURES

All inmates under the jurisdiction of the Department are expected to follow Department rules and regulations.  In the event that an inmate violates Department rules and regulations, the violation shall be reported and disposed of either by an informal or formal process.  The informal resolution process shall be used for those violations that are considered less serious in nature, while the formal resolution process shall be used for violations of a more serious nature.  This section provides a list of prohibited behavior that may result in the commencement of disciplinary procedures.  As explained in **Section VI (D)** of this policy, only Class I charges #35 through #46 and Class II charges are subject to informal resolution by the Unit Management Team.  Class I charges #1 through #34 must be disposed of formally by the Hearing Examiner.  **(See Attachment A for a list of misconduct charges)**[4]

### A. Misconduct/Rule Violation Reports

All rule violations are to be reported via a **DC-141, "Misconduct Report," Part I (See Attachment B).**  Any inmate charged with any of the listed violations will receive a copy of the report.[5]

1.  The misconduct report is to be used to give notice to the inmate of the rule violations with which he/she has been charged and report the facts upon which the charges

---

[2] 3-4214, 3-ACRS-3C-01
[3] 3-4219, 3-ACRS-3C-03
[4] 3-4216, 3-ACRS-3C-02
[5] 3-4224, 3-ACRS-3C-06

DC-121 Part 3
Revised 5/99
Attachment D 8.7.8

**Pennsylvania Department of Corrections**
**Employee Report of Incident**

☐ Use of Force Occurrence

| To: Cpt. Bartlett | Title: Shift Commander | Date 10/28/02 | Time 1437 |
| From (Name Printed) McQuown | Title: FCPD | Location of Incident Chapel office |

Employee Signature: Glenn McQuown

Type of Incident: Inflammatory material

| Inmates Involved (Name and Number) | Staff Involved (Name and Title) | Witnesses |
| Jefferson, C. CC-4135 | Brennan, Barbara Anderson, Michael | Abdalla, Elhafiz |

**CONFIDENTIAL**
EYES ONLY OF ADDRESSEE
NOT FOR DISTRIBUTION
PROPERLY SECURE THIS DOCUMENT

1. **Detailed description of the occurrence.**

Minister Anderson requested Clerk Brennan make a copy of the attached document while no attempt has been made to disseminate this material, it is of an inflammatory nature. Inmate Jefferson reports to Imam Abdalla that he was reading the document when Minister Anderson requested first to read it and then gained permission & material to copy. Inmate Jefferson was informed that the material was inappropriate – the poetry portion and that it is NOT to be distributed.

OCT 2 9 2002

02 OCT 28 PM 4 18

cc: MR. Britt

SUMMARY JUDGMENT ATTACHMENT

ONE OF FOUR

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,
        Plaintiff,

    V.                            C.A. No. 04-44 ERIE

WILLIAM WOLFE, et al,
        Defendants.

### DECLARATION OF WAYNE BAIR

I, WAYNE BAIR, hereby declare the following:

    1. On October 24, 2004 I was in the Chapel Office at SCI-Albion.

    2. While in the office that day I observed and heard Min. Michael Anderson ask the secretary to: (1) make a single copy of the newspaper article (which he gave to her at that time), and (2) to return the original copy of the article to Leonard Jefferson.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED AT ALBION, PA ON THIS 21ST DAY OF OCTOBER, 2004.

Wayne Bair III

Wayne Bair, CQ-0475
SCI-Albion
10745 Rt. 18
Albion, PA 16475-0002

SUMMARY JUDGMENT ATTACHMENT