IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD C. JEFFERSON,
       Plaintiff,

v.     '07 FEB 26  A9:53   C.A. NO. 04-44 ERIE

WILLIAM WOLFE, et al.,
       Defendants.

### PLAINTIFF'S STATEMENT OF DISPUTED FACTS

Defendants have moved for summary judgment on Plaintiff's claims concerning the Establishment, Free Exercise and Free Speech Clauses of the First Amendment; and on the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. Plaintiff submits the following list of genuine issues of material fact that require the denial of Defendants' Motion.

### PLAINTIFF'S RELIGIOUS CLAIMS

1. Whether participation in PA DOC prescriptive programs is mandatory (or is Plaintiff being retaliated against for his refusal to participate in voluntary/recommended programs). See: (a) ¶ 80 of Plaintiff's Third Amended Complaint, Doc. 39, which Defendants denied the truth of in their Answer To Plaintiff's Third Amended Complaint (hereinafter Defendants' Answer), Doc. 86; (b) Plaintiff's Appendix (hereinafter P.A.) pps. 2 & 11 whereon Supt. Wolfe and Defendant Hametz describe program participation as being "required," and (c) Plaintiff's Brief (hereinafter P.B.) pps. 3 - 19.

2. Whether prison officials' responses, to Plaintiff, state the "PA DOC's contempt, disdain and scorn of/for plaintiff's assertion of U.S. Constitutional rights. To wit: that government may not coerce anyone to participate in religion ... and which also prohibits government bodies from acting in ways that tend to establish a state religion." See: (a) ¶ 82 of the Third Amended Complaint, Doc. 39; (b) Defendants' denial of the claim in Defendants' Answer, Doc. 86; and P.B. pps. 3 - 19.

3. Whether prison officials have established a "...DOC/State-sponsored religion, which it compels its prisoners to adopt..." as Plaintiff has alleged in ¶ 83 of his Third Amended Complaint, Doc. 39, and Defendants have denied the truth of said allegation in Defendants' Answer, Doc. 86. See: P.B. pps. 3 - 19.

4. Whether "plaintiff has been punished ... for asserting his constitutional right to free exercise of religion by adhering to the principles, practices and beliefs of the Religion of al-Islam..." as Plaintiff has alleged in ¶ 83 of his Third Amended Complaint, Doc. 39, and Defendants have denied the

truth of said allegation in Defendants' Answer, Doc. 86. See: P.B. pps. 3 - 19.

5. Whether "PA DOC officials have established a de facto State Doc sponsored religion which they claim provides the 'values necessary to become productive law abiding citizens.'" as Plaintiff has alleged in ¶ 84 of his Third Amended Complaint, Doc. 39, and Defendants have denied the truth of said allegation in Defendants' Answer, Doc. 86. See: P.B. pps. 3 - 19.

6. Whether the alleged "...State/DOC sponsored religion is made up of Religious and secular programs..." as Plaintiff has alleged in ¶ 84 of the Third Amended Complaint, Doc. 39, and Defendants have denied the truth of said allegation in Defendants' Answer, Doc. 86. See: P.B. pps. 3 - 19.

7. Whether the existing PA DOC prescriptive programs "...present values and principles which are offensive to plaintiff's Islamic values and principles..." as Plaintiff has alleged in ¶ 84 of his Third Amended Complaint, Doc. 39, and Defendants have denied the truth of said allegation in Defendants' Answer, Doc. 86. See: P.B. 3 - 19 and Plaintiff's Declaration (hereinafter P.D.) ¶¶ 18 & 24.

8. Whether prison officials "...have attempted to impose...[the DOC/State sponsored religion] ...upon plaintiff in the guise of a prescriptive program." as Plaintiff has alleged in ¶ 84 of his Third Amended Complaint, Doc. 39, and Defendants have denied the truth of said allegation in Defendants' Answer, Doc. 86. See: P.B. pps. 3 - 19 and P.D. ¶¶ 18 & 25.

9. Whether the "...array of seven Islamic-based programs, programs which plaintiff believes provide the values necessary to make one a productive law abiding citizen ... could easily be adapted to fulfill any so-called 'prescriptive programming' need the PA DOC may deem appropriate for plaintiff in a manner which neither opposes nor offends plaintiff's Islamic beliefs," as Plaintiff has alleged in ¶ 85 of his Third Amended Complaint, Doc. 39, and Defendants have denied the truth of said allegation in Defendants' Answer, Doc. 86. See: P.B. pps. 3 - 19 and P.D. ¶¶ 18 & 24.

10. Whether "...the PA DOC continues to unnecessarily interfere with plaintiff's right to free exercise of religion." as Plaintiff has alleged in ¶ 85 of his Third Amended Complaint, Doc. 39, and Defendants have denied the truth of said allegation in Defendants' Answer, Doc. 86. See: P.B. pps. 3 - 19.

11. Whether Ms. Burks denied Plaintiff's Grievance (# 58644) Appeal to Final Review In The Secretary's Office, which asserts Plaintiff's view that the PA DOC has established a State/DOC sponsored religion and "that plaintiff has been subjected to punitive actions for no reason other than (a) he refuses to abandon his Islamic beliefs and practices, and (b) he refuses to subject himself to and/or to embrace the DOC/State sponsored religion" as Plaintiff has alleged in ¶ 91 of his Third Amended Complaint, Doc. 39, and Defendants denied the truth of said allegation in Defendants' Answer, Doc. 86. See: P.A. p. 16 and P.B. p. 19.

12. Whether the statements in Ms. Burks' 10/06/03 Memo, including the statement: "Your rationale for non-participation has no bearing on department policy and the resulting change in your housing status." are true and correct as Plaintiff alleged in ¶ 92 of his Third Amended Complaint, Doc. 39, and

Defendants denied the truth of said allegation in Defendants' Answer, Doc. 86. See: P.B. pps. 3 - 19.

    13. Whether PA DOC policy fails to make "... exceptions for prisoners, such as plaintiff, who exercise their rights to refuse to participate in (1) State/DOC secular activities which are offensive to an individual's religious beliefs." as Plaintiff has alleged in ¶ 93 of his Third Amended Complaint, Doc. 39, and Defendants have denied the truth of said allegation in Defendant's Answer, Doc. 86. See: P.B. pps. 3 - 19; Admissions of Beard #'s 4 - 6; and P.A. pps. 1 & 2.

    14. Whether the goal of PA DOC policy is to have inmates participate in prescriptive programs or to "permanently replace the inmates' criminal behavior with non-criminal behaviors." See: Plaintiff's Interrogatories and Request for Production of Documents (hereinafter First Request) #'s 2 & 4; and Admissions of Beard # 7; and P.B. pps. 3 - 19.

    15. Whether the criminal behaviors which the PA DOC intends to eliminate via its prescriptive programs are described and identified as sinful behaviors in the Holy Qur'an, in the Holy Bible, and in religious discourse generally. See: Admission of Beard # 8; and P.B. pps. 6 & 7.

    16. Whether "PA DOC policy, at the times relevant to this action, indicated the rehabilitation of plaintiff must be accomplished via the prescriptive programs listed on his DC-43." See: Admission of Beard # 9; and P.B. pps 3 - 19).

    17. Whether "PA DOC policy, at the times relevant to this action, implied the rehabilitation of plaintiff could not be accomplished via the teachings and practices of the Religion of al-Islam." See: Admission of Beard # 10; and P.B. pps. 3 - 19.

    18. Whether "the essence of Defendants' position on Plaintiff's religious claim is the Defendants' asserted belief that the total rehabilitation of Plaintiff cannot be accomplished by the Religion of al-Islam but his total rehabilitation can be accomplished by the prescriptive programs listed on his DC-43." See: Admission of Beard # 11; and P.B. 6 - 7.

    19. Whether "the PA DOC endorses non-religious programs, over religious programs, for accomplishing the rehabilitation of prisoners." See: Admission of Beard # 12; ¶ 4 of First Request; and P.A. pps. 1 & 2.

    20. Whether "the denial of Plaintiff's rights to observe the tenets of his faith at issue is not based upon any potential threat to the security and/or orderly operation of the prison." See: Admission of Beard # 13; and P.B. pps. 3 - 19.

    21. Whether "The correctional goal, to Plaintiff's religious claims, can be easily fulfilled by having the state-employed Imam at SCI-Albion address (with plaintiff) any area of conduct which prison officials perceive a need to address, in the same manner that unacceptable conduct is addressed in the existing PA DOC prescriptive programs. See: Admission of Beard # 14; Defendants' Appendix pps. 1 - 100.

    22. Whether "PA DOC policy coerced Plaintiff to attend prescriptive

programs, which are offensive to his religious beliefs, since Defendants failed to provide alternative programs whereby Plaintiff could obtain the same benefits that are available to those whose religious beliefs were not offended by the offered/prescribed programs." See: Admission of Beard # 19; and P.B. 3 - 19.

23. Whether "PA DOC policy, as an unintended consequence, discriminates against Plaintiff by failing to provide prescriptive programming that does not offend his religious beliefs while, simultaneously, providing prescriptive programming that does not offend the religious beliefs of the PA DOC's non-Muslim prisoners. See: Admission of Beard # 20; Defendants' Appendix pps. 1 - 100; and P.B. 3 - 19.

24. Whether "PA DOC policy, as it relates to Plaintiff's religious claims, causes Plaintiff to be treated differently than his similarly situated peers." See: Admission of Beard # 21; Defendants' Appendix pps. 1 - 100; and P.B. pps. 3 - 19.

25. Whether PA DOC prescriptive programs address fundamental questions and moral issues such as what is right and/or wrong. See: P.B. pps. 12 - 13.

26. Whether PA DOC prescriptive programs are intended to be or are actually "comprehensive" as "comprehensiveness" is defined in Malnak v. Yogi, 597 F.2d 197, 209 (3rd Cir. 1979). See: P.B. pps. 14 - 15.

27. Whether the hierarchy of the PA DOC constitutes an "external sign" as the phrase "external sign" is defined in Malnak, Supra. See: P.B. pps. 16 - 17.

28. Whether Defendants violated Plaintiff's rights to free exercise by conditioning his continued residence on an Honor Unit upon his abandonment, or violation, of his sincerely held religious beliefs. See: P.B. pps. 17 - 20.

29. Whether "the full array of PA DOC prescriptive programs is aimed at providing answers to questions concerning the nature of the inmate, the nature of the world the inmate lives in and must interact with, and the way to a successful and productive life." See: ¶ 2 a - e of the Declaration of Mike Clark at pps. 55 - 57 of Defendants Appendix; Admission of Beard # 23; P.B. pps. 3 - 19; and Defendants' Appendix pps. 1 - 100 generally.

30. Whether "PA DOC policy as it relates to prescriptive programs propagates the idea ... that one's belief in God, and religious teachings, is not enough." See: Admission of Beard # 25; ¶ 4 of Defendants' Response to Plaintiff's Interrogatories and Request for Production of Documents; and P.A. pps. 1 & 2.

31. Whether "the PA DOC prescriptive programs are based upon a belief system which includes the belief that the originators of the programs have found the right way, the truth, the straight path. See: P.B. pps. 3 - 19; and Admission of Beard # 26.

32. Whether "Plaintiff has been, and continues to be, subjected to adverse consequences as a result of his refusal to accept faith in, and submit to the moral teachings of, the men and women who (believing they could improve upon the code of conduct and the system of morals revealed by Allaah) created

the prescriptive programs that are listed on Plaintiff's DC-43. See: Admission of Beard # 27; P.A. pps. 1 & 2 (front and back) and 32 - 33.

33. Whether "faith in man," as opposed the "faith in God" is the belief system from which PA DOC prescriptive programs flow. See: Admission of Beard # 28; and Defendants' Response to Plaintiff's Interrogatories #'s 2 - 7; P.B. pps. 3 - 19.

34. Whether Plaintiff has been punished for professing beliefs which prohibited him from participating in non-Islamic programs. See: P.B. pps. 3 - 5.

35. Whether Plaintiff has been punished for exercising his constitutional right to refuse to participate in programs that are offensive to his religious beliefs. See: P.B. pps. 3 - 5.

36. Whether the PA DOC's assessment process is flawed. See: P.B. pps. 7 - 9.

37. Whether Plaintiff's refusal to participate in prescriptive programs pose any genuine threat to the security of orderly operation on the institution. See: P.B. pps. 8 - 9.

38. Whether the PA DOC's goals are the same goals as those of traditional and recognized religions. See: P.B. p. 12.

39. Whether the PA DOC has acted in a way that "establishes a [state] religion or religious faith, or tends to do so," as that phrase is defined in Lee v. Weisman, 505 U.S. 577, 587, 112 S.Ct. 2649, 2655, 120 L.Ed.2d 467 (1992). See: P.B. pps 3 - 19.

## PLAINTIFF'S RETALIATION CLAIM

40. Whether Defendants have presented a valid reason, independent from the protected conduct, for their decision to fire Plaintiff. See. P.B. pps. 20 - 29.

41. Whether Defendants fabricated pretexts (for firing Plaintiff) and memorialized their fabricated pretexts in writing on PA DOC documents. See: P.A. pps. 37 - 39, 44, and 48 - 51; and P.B. pps. 20 - 29.

42. Whether there was a legitimate penological need to take any action against Plaintiff concerning his poetry. See: P.B. pps. 20 - 29.

43. Whether removing Plaintiff from the Chapel Clerk job, and doing nothing more, would reduce, or eliminate, the alleged-threat to security fabricated by prison officials. See: P.A. pps. 37 - 39, 44, 48 & 49; and P.B. pps. 20 - 29.

44. Whether any purpose was served by firing Plaintiff other than retaliation for exercising his Constitutional right to Free Speech which annoyed prison officials but did not violate any prison rule or regulation. See: P.B. pps. 20 - 29.

45. Whether it "was the reading material (the newspaper article with the poetry reproduced on the back), handed over to Minister Anderson, which Plaintiff attempts to establish as constitutionally protected conduct." as Defendants assert at p. 20 of Defendants' Memo, Doc. 116; See also P.B. pps. 23 - 25.

46. Whether prison officials in the Chapel Area of SCI-Albion permitted inmate Chapel Clerks to bring personal reading material to their work place. See: P.B. p. 24: ¶¶ 16, 32, 50 - 52, 62 - 63, 76 and 90 of Plaintiff's Declaration; and the Declarations of Ronald Johnson, Thomas Twillie and Alonzo Robinson at pps. 62 - 68 of Plaintiff's Appendix.

47. Whether Plaintiff, and other Chapel Clerks, had permission from supervisors, including Defendant McQuown and Imams Almasri and Abdalla, to bring personal reading material to work. See: P.B. pps. 24 - 25; ¶¶ 16, 32, 50 - 52, 62 - 63, 76, and 90 of Plaintiff's Declaration; and Declarations of Ronald Johnson, Thomas Twillie, Alonzo Robinson, Nanya Rashiyd Z. El, Chris Ireland and George Elliott at pps. 62 - 72 of Plaintiff's Appendix.

48. Whether it is appropriate to fire Plaintiff for engaging in an activity that was expressly approved by his supervisors. See: Id.

49. Whether prison officials' failure to issue a Misconduct Report to Plaintiff on 10/24/02, or at any other time, concerning his poetry indicates Plaintiff and/or his poetry had not run afoul of any prison rule or regulation. See: Defendants' Amended Response To Plaintiff's Interrogatories and Request for Production of Documents # 12; P.D. ¶ 41; and P.B. pps. 25 - 26.

50. Whether prison officials failure to confiscate any and/or all copies of the poetry at issue indicates the poetry did not pose an unacceptable threat to the security of the prison. See: P.B. pps 25 - 26; and P.D. ¶ 42.

51. Whether Plaintiff's poems are "nothing more than Ebonic Echoes of well-documented and commonly-known historical facts." See: P.B. at p. 26; and P.A. p. 34 (front and back).

52. Whether Plaintiff "had previously been warned regarding voicing concerns about racial injustices in prison..." See: P.B. p. 26; Defendants' Appendix p. 138; and Admission of McQuown # 22.

53. Whether the First Amendment provides protection for Plaintiff to write and to possess poetry, about racism in the courts, which prison officials may be offended by but which does not pose an unacceptable threat to prison security.

54. Whether Plaintiff has been subjected to "adverse actions" which were sufficient to deter a person of ordinary firmness from exercising his Constitutional right to write poetry concerning racial injustice in the courts. See: P.B. pps. 28 - 29.

> Respectfully Submitted
>
> *Leonard C. Jefferson*
>
> Leonard C. Jefferson, CL-4135
> 10745 Rt. 18
> Albion, PA 16475-0002

Dated: February 22, 2007