**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEONARD C. JEFFERSON, | } |
| Plaintiff, | } |
| | } No. 1:04-cv-44 |
| Vs. | } |
| | } Chief Magistrate Judge Baxter |
| WILLIAM WOLFE, et al., | } |
| Defendants. | } |

**DEFENDANTS' REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

AND NOW, come the defendants, by their attorneys, Tom Corbett, Attorney General, Christian D. Bareford, Deputy Attorney General, Susan J. Forney, Chief Deputy Attorney General, Chief Litigation Section, and respectfully submit the following Reply Brief to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment:

**I. RELIGION CLAIMS**

Plaintiff's claims are premised upon the construct that any general requirement to participate in treatment programs developed by the Bureau of Inmate Services violates his rights under the Establishment Clause and the Free Exercise Clause. See, Plaintiff's Brief in opposition to Defendants' Motion for Summary Judgment. Defendants contend that there is no evidence that Plaintiff's constitutional rights have been violated under either.

With his reply brief, Plaintiff presents argument under the heading of claims arising under the Establishment Clause that are more accurately described as claims under the Free Exercise Clause. It is the free exercise of his religion, to wit, Plaintiff's religiously professed desire to not be taught how to behave by non-believers, that Plaintiff is actually describing in the Establishment Clause Arguments I and II of his Response to Defendant's Motion for Summary

Judgment. There is, however, nothing in Plaintiff's opposition brief to oppose the Defendants' position regarding the claims under the Free Exercise Clause as articulated in Defendants' Motion for Summary Judgment. See Doc. ## 115, 116, and 117.

With respect to the Establishment Clause, Plaintiff originally claimed that participation in prescriptive programming with religious overtones, such as Alcoholics Anonymous, violates his rights. See Paragraphs 83 and 91 of the Amended Complaint, Doc. # 39 ("prisoners who participate in religious programs which the PA DOC has given its stamp of approval, such as A/A & N/A and others, are rewarded for their participation in religious programs.") Defendants have demonstrated without any objection from Plaintiff that Plaintiff's constitutional rights under the Establishment Clause have not been violated. The programs recommended for Plaintiff are secular in nature and do not have a religious component. Concise Statement of Material Fact, paragraphs 1 - 34. More specifically, at different times, it was recommended to Plaintiff to maintain a prison work assignment, and attend programs related to long term offenders, stress and anger management, citizenship, and batterers intervention. Id. at paragraphs 19 – 34. None of these programs are religious in nature; there is no reference to a higher authority; nor is there a requirement to subscribe to a particular manner of worship. Doc. # 117 at no. 34. Furthermore, to the extent that religious programs are offered by the Department of Corrections, see Appendix pp. 4 - 24 and pp. 25 – 51, many other secular alternatives are provided.

Plaintiff's argument III in his Brief in Opposition to the Defendants' Motion for Summary Judgment is an attempt to cast the Department of Corrections policies regarding inmate rehabilitation and treatment as a construct for a state-religion. To that end, he cites a 1979 case, Malnak v. Yogi, 592 F.2d 197 (1979). Malnak was an action brought to enjoin teaching of course called the Science of Creative Intelligence Transcendental Meditation in New

2

Jersey public high schools. The United States District Court for the District of New Jersey, had issued an injunction, and appeal was taken. The Court of Appeals held that teaching of course, which was offered as elective at five high schools and which involved religious activity, constituted establishment of religion proscribed by the First Amendment.  Not only is this an entirely new theory of recovery under the Establishment Clause, but the flaw in this rationale is that it fails to take into consideration in context of Plaintiff's situation.  More specifically, any constitutional claim by an inmate must be considered within the context of incarceration itself. To this end, the Supreme Court has noted:

> "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." (citation omitted)  The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security. (citations omitted)

O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987).

Further, the Supreme Court recognized that "courts are ill-equipped to deal with the increasingly urgent problems of prison administration and reform" in light of the fact that "the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." Procunier v. Martinez, 416 U.S. 396, 404-405, 94 S.Ct. 1807 (1974).  Given the fact that the construct of Plaintiff's claim under the Establishment Clause is one of Qur'anic interpretation, the Defendants should be afforded due deference to prison officials, as was briefed in Defendants' Motion for Summary Judgment.  Doc. ## 115, 116, and 117.  It is not even clear in the record provided by Plaintiff, specifically the verses of the Holy Qur'an contained in Doc. # 127 at pp. 23-30, which verses instruct Plaintiff to disavow

any prescriptive treatment offered by the Department of Corrections.[1]  It is also important to note that the premise of Plaintiff's claim, that his beliefs require his refusal to participate in any non-Muslim program, is little more than his own subjective interpretation of the Islamic faith.  See Exhibit attached herein.  The Islamic faith does not discourage secular educational programs.  On the contrary, pursuing knowledge is given obligatory importance in the Islamic tradition.  Id.

## II. RETALIATION CLAIM

With his record, Plaintiff actually establishes two positions presented by the Defendants: that bringing the poetry into the job site does not constitute protected activity, and that the removal from the job site was reasonably related to legitimate penological interests.

As briefed previously, Waters v. Churchill, 511 U.S. 661, 114 S.Ct. 1878 (1994) permits a government employer to fire an employee for speaking on a matter of public concern if: (1) the employer's prediction of disruption is reasonable; (2) the potential disruptiveness is enough to outweigh the value of the speech; and (3) the employer took action against the employee based on this disruption and not in retaliation for the speech.  See Waters, 511 U.S. at 674, 677 – 680.  The Waters holding thus supplements and broadens the Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684 (1983), rule to take into consideration also the potential that the employee's speech has to disrupt the employer's operations, whether or not the harm remains inchoate.  Pages 37, 48-50, and 61 of Docket entry number 127, Appendix to Plaintiff's Brief, articulate the Defendants' positions regarding the potential disruptiveness of the speech in question.  It was the

---

[1] As a matter of fact, an ordinary reading of the material provided by Plaintiff would suggest quite the contrary. From verse 59 of the excerpt contained on page 26 of Doc. # 127:
"Obey Allah, and obey the Messenger, and those charged with authority over you. FN 580.
FN 580: Uli al amr = those charged with authority or responsibility or decision, or the settlement of affairs.  All ultimate authority rests in Allah. Prophets of Allah derive their authority from Him.  As Islam makes no sharp division between sacred and secular affairs, it expects governments to be imbued with righteousness.  Likewise Islam expects Muslims to respect the authority of such governments for otherwise there can be no order or discipline."

potential for disruption that was the basis for the removal – something that Plaintiff has not only failed to controvert, but he has gone so far as to actually establish.

By the same token, Plaintiff has demonstrated that the decision to remove him from his position is reasonably related to a legitimate penological interest, as per <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001).

WHEREFORE, Defendant respectfully requests summary judgment of all claims be granted in favor of the Defendants.

                Respectfully submitted:

                Tom Corbett
                Attorney General

                <u>\s\ Christian D. Bareford</u>
                Christian D. Bareford
                Deputy Attorney General
                PA. I.D. No. 83982

                Susan J. Forney
                Chief Deputy Attorney General
                Litigation Section

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

Date: March 8, 2007

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD C. JEFFERSON, | } |
| | } |
| Plaintiff, | } |
| | } No. 1:04-cv-44 |
| vs. | } |
| | } Chief Magistrate Judge Baxter |
| WILLIAM WOLFE, et al., | } |
| | } |
| Defendants. | } |

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within **Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment** was electronically filed with the Court and served upon the following via first-class mail:

LEONARD JEFFERSON
CL-4135
SCI-Albion
10745 Route 18
Albion, PA 16475-0001

                                                 /s/ Christian D. Bareford
                                               CHRISTIAN D. BAREFORD
                                               Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

(412) 565-3570

Date:   March 8, 2007